ROBERT W. FERGUSON
WSBA #26004
Attorney General
NOAH G. PURCELL
WSBA #43492
Solicitor General
COLLEEN M. MELODY
WSBA #42275
Civil Rights Unit Chief
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-464-7744

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>          Plaintiff,<br><br>     v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the Department of Homeland Security; TOM SHANNON, in his official capacity as Acting Secretary of State; and the UNITED STATES OF AMERICA,<br><br>          Defendants. | CIVIL ACTION NO.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I.     INTRODUCTION

1.     The State of Washington ("State") brings this action to protect the State—including its residents, its employers, and its educational institutions—against illegal actions of the President and the federal government. The President's Executive Order of January 27, 2017 ("the Executive Order"), is separating Washington families, harming thousands of Washington residents, damaging Washington's economy, hurting Washington-based companies, and

COMPLAINT                                                    1

undermining Washington's sovereign interest in remaining a welcoming place for immigrants and refugees. The Court should invalidate the portions of the Executive Order challenged here.

## II.   JURISDICTION AND VENUE

2.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a).

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e)(1). Defendants are United States agencies or officers sued in their official capacities, and a substantial part of the events or omissions giving rise to this claim occurred in King County, within the Western District of Washington.

## III.   PARTIES

4.      The Governor is the chief executive officer of the State. The Governor is responsible for overseeing the operations of the State and ensuring that its laws are faithfully executed.

5.      The Attorney General is the chief legal adviser to the State. The Attorney General's powers and duties include acting in federal court on matters of public concern.

6.      The State has declared that practices that discriminate against any of its inhabitants because of race, creed, color, or national origin are matters of public concern that threaten the rights and proper privileges of the State and harm the public welfare, health, and peace of the people. *See* Wash. Rev. Code 49.60.010.

7.      The State's interest in protecting the health, safety, and well-being of its residents, including protecting its residents from harms to their physical or economic health, is a quasi-sovereign interest.

8.      The State also has an interest in ensuring that its residents are not excluded from the benefits that flow from participation in the federal system, including the rights and privileges provided by the U.S. Constitution and federal law.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

9.      The State's interest in preventing and remedying injuries to the public's health, safety, and well-being extends to all of the State's residents, including individuals who suffer indirect injuries and members of the general public.

10.      According to the most current American Community Survey data from the U.S. Census Bureau, as of 2015, approximately 7,280 non-citizen immigrants from Iran, Iraq, Syria, Somalia, Sudan, Libya, and Yemen reside in the State of Washington—1,409 Iranian immigrants, 2,275 Iraqi immigrants, 360 Libyan immigrants, 2,883 Somalian immigrants, 165 Sudanese immigrants, and 187 Syrian immigrants.

11.      Immigration is an important economic driver in Washington. Many workers in Washington's technology industry are immigrants, and many of those immigrant workers are from Muslim-majority countries. Immigrant and refugee-owned businesses employ 140,000 people in Washington. Many companies in Washington are dependent on foreign workers to operate and grow their businesses.

12.      The technology industry relies heavily on the H-1B visa program, through which highly skilled workers like software engineers are permitted to work in the United States. Washington ranks ninth in the U.S. by number of applications for high-tech visas. Microsoft, a corporation headquartered in Redmond, Washington, is the State's top employer of high-tech—or H-1B—visa holders and employs nearly 5,000 people through the program. Other Washington-based companies, including Amazon, Expedia, and Starbucks, employ thousands of H-1B visa holders.

13.      The market for highly skilled workers and leaders in the technology industry is extremely competitive. Changes to U.S. immigration policy that restrict the flow of people may inhibit these companies' ability to adequately staff their research and development efforts and recruit talent from overseas. If recruiting efforts are less successful, these companies' abilities to develop and deliver successful products and services may be adversely affected.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

14.     Microsoft's U.S. workforce is heavily dependent on immigrants and guest workers. At least 76 employees at Microsoft are citizens of Iran, Iraq, Syria, Somalia, Sudan, Libya, or Yemen and hold U.S. temporary work visas. There may be other employees with permanent-resident status or green cards. These employees may be banned from re-entering the U.S. if they travel overseas or to the company's offices in Vancouver, British Columbia.

15.     Seattle-based company Amazon also employs workers from every corner of the world. Amazon's employees, dependents of employees, and candidates for employment with Amazon have been impacted by the Executive Order that is the subject of this Complaint. Amazon has advised such employees currently in the United States to refrain from travel outside the United States.

16.     Bellevue-based company Expedia operates a domestic and foreign travel business. At the time of this filing, Expedia has approximately 1,000 customers with existing flight reservations in or out of the United States who hold passports from Iran, Iraq, Syria, Somalia, Sudan, Libya, or Yemen. The Executive Order will restrict business, increase business costs, and impact current employees and customers.

17.     The University of Washington and Washington State University are the two largest public research universities in the State. More than 95 students from Iran, Iraq, Syria, Somalia, Sudan, Libya, and Yemen attend the University of Washington, based in Seattle. More than 135 students from those countries attend Washington State University, based in Pullman.

18.     Up to 13 individuals were detained at Seattle-Tacoma International Airport ("Sea-Tac Airport") one day after President Trump issued the Executive Order that is the subject of this Complaint.

19.     An unknown number of Washington residents from the affected countries may have been prevented from, or may be prevented from, traveling to Washington through air,

COMPLAINT                                        4

land, and sea ports of entry across the United States. It is unknown how many additional Washington residents will reach United States ports across the country and be prevented from returning to Washington while the Executive Order in question remains in effect.

20.     As a result, Washington residents have been separated from their families. One Somali refugee, who has lived in Seattle for 12 years, went to Sea-Tac Airport to pick up her husband who was flying from Somalia through Vienna, but never saw him before he was sent back on a flight to Vienna. Another individual who was detained is related to a Sea-Tac Airport worker. A third detainee, a sister of a blind Iraqi man who lives in Seattle, was prevented from seeing him after 15 years apart.

21.     Other Washington residents will be unable to travel to Canada to visit family. An Iraqi-born software engineer, who works in Facebook's Seattle office and was in Canada watching his little brother perform in a high school play, received a phone call from his immigration attorney shortly before the Executive Order took effect, advising him to rush back across the border.

22.     Still other Washington residents will be prevented from being reunited with family members. One Syrian family who recently resettled in Seattle is waiting for an older child still in a refugee camp who was set to arrive next week, but for the Executive Order.

23.     Defendant Donald Trump is the President of the United States, and issued the January 27, 2017, Executive Order on which Defendants rely for authority to detain and/or remove non-citizen immigrants from Iran, Iraq, Syria, Somalia, Sudan, Libya, and Yemen who are traveling or returning to Washington via air, land, and sea ports across the United States, including Sea-Tac Airport. He is sued in his official capacity.

24.     Defendant U.S. Department of Homeland Security ("DHS") is a federal cabinet agency responsible for implementing and enforcing the Immigration and Nationality Act. DHS is a Department of the Executive Branch of the United States Government, and is an agency

COMPLAINT                                5                ATTORNEY GENERAL OF WASHINGTON
                                                              800 Fifth Avenue, Suite 2000
                                                                Seattle, WA 98104-3188
                                                                    (206) 464-7744

within the meaning of 5 U.S.C. § 552(f). The U.S. Customs and Border Protection is an Operational and Support Component agency within DHS. The U.S. Customs and Border Protection is responsible for detaining and/or removing non-citizen immigrants from Iran, Iraq, Syria, Somalia, Sudan, Libya, and Yemen arriving at air, land, and sea ports across the United States, including Sea-Tac Airport.

25.     Defendant John F. Kelly is the Secretary of the Department of Homeland Security. He is responsible for implementing and enforcing the Immigration and Nationality Act ("INA"), and oversees the U.S. Customs and Border Protection. He is sued in his official capacity.

26.     Defendant Tom Shannon is the Acting Secretary of State. The Secretary of State has authority to determine and implement certain visa procedures for non-citizens. He is sued in his official capacity.

27.     Defendant the United States of America includes all government agencies and departments responsible for the implementation of the INA and detention and/or removal of non-citizen immigrants from Iran, Iraq, Syria, Somalia, Sudan, Libya, and Yemen who are traveling to or returning to Washington via air, land, and sea ports across the United States, including Sea-Tac Airport.

## IV.     ALLEGATIONS

28.     Prior to his election, Donald Trump campaigned on the promise that he would ban Muslims from entering the United States.

29.     On December 7, 2015, candidate Trump issued a press release calling for "a total and complete shutdown of Muslims entering the United States." As of the date of this filing, the press release remains available on Trump's campaign website and is attached hereto as Exhibit 1.

COMPLAINT                                      6                    ATTORNEY GENERAL OF WASHINGTON
                                                                           800 Fifth Avenue, Suite 2000
                                                                              Seattle, WA 98104-3188
                                                                                 (206) 464-7744

30.     In defending his decision shortly thereafter, candidate Trump compared the Muslim ban to former President Franklin Roosevelt's decision to intern Japanese Americans during World War II, and stated, "This is a president highly respected by all, [Roosevelt] did the same thing." A media report of this interview is attached hereto as Exhibit 2.

31.     On June 14, 2016, candidate Trump reiterated his promise to ban all Muslims entering this country until "we as a nation are in a position to properly and perfectly screen those people coming into our country." A transcript of this speech is attached hereto as Exhibit 3.

32.     Asked during a July 24, 2016, interview about whether he was "backing off on his Muslim ban[]," candidate Trump stated, "I actually don't think it's a pull-back. In fact, you could say it's an expansion." A transcript of this interview is attached hereto as Exhibit 4.

33.     In a foreign policy speech delivered on August 15, 2016, candidate Trump noted that the United States could not "adequate[ly] screen[]" immigrants because it admits "about 100,000 permanent immigrants from the Middle East every year." Trump proposed creating an ideological screening test for immigration applicants, which would "screen out any who have hostile attitudes towards our country or its principles – or who believe that Sharia law should supplant American law." During the speech, he referred to his proposal as "extreme, extreme vetting." A copy of the prepared remarks is attached hereto as Exhibit 5. A video link to the delivered speech is available at: https://www.c-span.org/video/?413977-1/donald-trump-delivers-foreign-policy-address (quoted remarks at 50:46).

34.     On January 20, 2017, Donald Trump was inaugurated as the President of the United States. In his first television interview as President, he again referred to his plan for "extreme vetting." A transcript of this interview is attached hereto as Exhibit 6.

35.     On January 27, 2017, one week after being sworn in, President Trump signed an executive order entitled, "Protecting the Nation from Foreign Terrorist Entry into the United

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

States." The Executive Order directs a series of changes to the manner in which non-citizens may seek and obtain entry to the United States. The Executive Order is attached hereto as Exhibit 7.

36.    Section 3(c) of the Executive Order proclaims that entry of immigrants and nonimmigrants from countries referred to in section 217(a)(12) of the Immigration and Nationality Act, 8 U.S.C. § 1187(a)(12), i.e., Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen, "would be detrimental to the interests of the United States." The Executive Order "suspend[s] entry into the United States, as immigrants and nonimmigrants, of such persons for 90 days from the date of this order."

37.    Sections 5(a)–(b) of the Executive Order suspend the U.S. Refugee Admissions Program in its entirety for 120 days and then, upon its resumption, direct the Secretary of State to prioritize refugees who claim religious-based persecution, "provided that the religion of the individual is a minority religion in the individual's country of nationality."

38.    Section 5(c) of the Executive Order proclaims that entry of Syrian refugees is "detrimental to the interests of the United States" and suspends their entry indefinitely.

39.    In a January 27, 2017, interview with the Christian Broadcasting Network, President Trump confirmed his intent to prioritize Christians in the Middle East for admission as refugees. A copy of the report of this interview is attached hereto as Exhibit 8.

40.    During a signing ceremony for the Executive Order on January 27, 2017, President Trump stated that the purpose of the Executive Order was to "establish[] new vetting measures to keep radical Islamic terrorists out of the United States of America." He continued, "We don't want them here." A media report of these statements is attached hereto as Exhibit 9.

## V.    FIRST CAUSE OF ACTION
### (Fifth Amendment – Equal Protection)

41.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

42.     The Due Process Clause of the Fifth Amendment prohibits the federal government from denying equal protection of the laws.

43.     Sections 3 and 5 of the Executive Order, together with statements made by Defendants concerning their intent and application, target individuals for discriminatory treatment based on their country of origin and/or religion, without lawful justification.

44.     The Executive Order was motivated by animus and a desire to harm a particular group.

45.     The discriminatory terms and application of the Executive Order are arbitrary and cannot be sufficiently justified by federal interests.

46.     Through their actions above, Defendants have violated the equal protection guarantee of the Fifth Amendment.

47.     Defendants' violation causes ongoing harm to Washington residents.

## VI.     SECOND CAUSE OF ACTION
### (First Amendment – Establishment Clause)

48.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

49.     The Establishment Clause of the First Amendment prohibits the federal government from officially preferring one religion over another.

50.     Sections 3 and 5 of the Executive Order, together with statements made by Defendants concerning their intent and application, are intended to disfavor Islam and favor Christianity.

51.     Through their actions above, Defendants have violated the Establishment Clause of the First Amendment.

52.     Defendants' violation causes ongoing harm to Washington residents.

## VII.     THIRD CAUSE OF ACTION
### (Fifth Amendment – Procedural Due Process)

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

53.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

54.     The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving individuals of their liberty interests without due process of law.

55.     Where Congress has granted statutory rights and authorized procedures applicable to arriving and present non-citizens, minimum due process rights attach to those statutory rights.

56.     Sections 3 and 5 of the Executive Order conflict with the statutory rights and procedures directed by Congress. In issuing and implementing the Executive Order, Defendants have violated the procedural due process guarantees of the Fifth Amendment.

57.     Defendants' violation causes ongoing harm to Washington residents.

## VIII.   FOURTH CAUSE OF ACTION
### (Immigration and Nationality Act – Discriminatory Visa Procedures)

58.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

59.     The Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A), prohibits discrimination in the issuance of immigrant visas on the basis of race, nationality, place of birth, or place of residence.

60.     Sections 3 and 5 of the Executive Order, together with statements made by Defendants concerning their intent and application, discriminate on the basis of race, nationality, place of birth, and/or place of residence in the issuance of visas, in violation of the Immigration and Nationality Act.

61.     Defendants' violation causes ongoing harm to Washington residents.

## IX.   FIFTH CAUSE OF ACTION
### (Immigration and Nationality Act – Denial of Asylum and Withholding of Removal)

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

62.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

63.     The Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1231(b)(3), entitles certain non-citizens arriving at Washington ports of entry to apply for asylum and withholding of removal.

64.     As implemented, the Executive Order suspends all immigrant and nonimmigrant entry into Washington by individuals from seven countries and forecloses their ability to apply for asylum and withholding of removal.

65.     Defendants' violation causes ongoing harm to Washington residents.

## X.     SIXTH CAUSE OF ACTION
### (Foreign Affairs Reform and Restructuring Act – Denial of Convention Against Torture Relief)

66.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

67.     The Foreign Affairs Reform and Restructuring Act of 1998, 8 U.S.C. § 1231 note, implements the United Nations Convention Against Torture, which the United States ratified in 1994. Pub. L. 105-277, div. G, subdiv. B, title XXII, § 2242. Under the Convention Against Torture, the United States may not involuntarily return any person to a country where there are substantial grounds for believing the person would be in danger of being subjected to torture.

68.     As implemented, the Executive Order suspends all immigrant and nonimmigrant entry into Washington by individuals from seven countries and forecloses their ability to apply for relief under the Convention Against Torture.

69.     Defendants' violation causes ongoing harm to Washington residents.

## XI.     SEVENTH CAUSE OF ACTION
### (Religious Freedom Restoration Act)

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

70.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

71.     The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(a), prohibits the federal government from substantially burdening the exercise of religion, even if the burden results from a rule of general applicability.

72.     Section 3 of the Executive Order, if implemented, will result in substantial burdens on the exercise of religion by non-citizen immigrants by, for example, preventing them from exercising their religion while in detention, returning to their religious communities in Washington, and/or taking upcoming, planned religious travel abroad. Such burdens on religion violate the Religious Freedom Restoration Act.

73.     Defendants' violation causes ongoing harm to Washington residents.

### XII.     EIGHTH CAUSE OF ACTION
#### (Procedural Violation of the Administrative Procedure Act)

74.     The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

75.     The Administrative Procedure Act, 5 U.S.C. §§ 553 and 706(2)(D), requires that federal agencies conduct formal rule making before engaging in action that impacts substantive rights.

76.     In implementing Sections 3 and 5 of the Executive Order, federal agencies have changed the substantive criteria by which individuals from affected countries may enter the United States. Federal agencies did not follow the procedures required by the Administrative Procedure Act before taking action impacting these substantive rights.

77.     Through their actions above, Defendants have violated the Administrative Procedure Act.

78.     Defendants' violation causes ongoing harm to Washington residents.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## XIII.   NINTH CAUSE OF ACTION
### (Substantive Violation of the Administrative Procedure Act)

79.    The State realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

80.    The Administrative Procedure Act, 5 U.S.C. § 706(2), prohibits federal agency action that is arbitrary, unconstitutional, and contrary to statute.

81.    In implementing Sections 3 and 5 of the Executive Order, federal agencies have taken unconstitutional and unlawful action, as alleged herein, in violation of the Administrative Procedure Act.

82.    In implementing Sections 3 and 5 of the Executive Order, federal agencies have applied provisions arbitrarily, in violation of the Administrative Procedure Act.

83.    Defendants' violation causes ongoing harm to Washington residents.

## XIV.   PRAYER FOR RELIEF

84.    Wherefore, the State of Washington prays that the Court:

a.    Declare that Sections 3(c), 5(a)–(c), and 5(e) of the Executive Order are unauthorized by and contrary to the Constitution and laws of the United States;

b.    Enjoin Defendants from implementing or enforcing Sections 3(c), 5(a)–(c), and 5(e) of the Executive Order, including at all United States borders, ports of entry, and in the issuance of visas, pending further orders from this Court;

c.    Pursuant to Federal Rule of Civil Procedure 65(b)(2), set an expedited hearing within fourteen (14) days to determine whether the Temporary Restraining Order should be extended; and

d.    Award such additional relief as the interests of justice may require.

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   DATED this 30th day of January, 2017.

2

3                                     Respectfully submitted,

4

5                                     Bob Ferguson, WSBA #26004

6                                     Attorney General
                                      Noah G. Purcell, WSBA #43492

7                                     Solicitor General
                                      Colleen M. Melody, WSBA #42275

8                                     Civil Rights Unit Chief
                                      Office of the Attorney General

9                                     800 Fifth Avenue, Suite 2000
                                      Seattle, WA  98104

10                                    (206) 464-7744

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT                             14                    ATTORNEY GENERAL OF WASHINGTON
                                                                  800 Fifth Avenue, Suite 2000
                                                                   Seattle, WA 98104-3188
                                                                      (206) 464-7744