THE HONORABLE JAMES L. ROBART

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>       Plaintiff,<br><br>  v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the Department of Homeland Security; TOM SHANNON, in his official capacity as Acting Secretary of State; and the UNITED STATES OF AMERICA,<br><br>       Defendants. | NO. 2:17-cv-00141-JLR<br><br>PLAINTIFF STATE OF WASHINGTON'S SUPPLEMENTAL BRIEF REGARDING STANDING |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT .......................................................................................................1

    A. Washington Is Suffering Injuries From the Order ............................................1

        1. Washington is Suffering Injuries to its Proprietary Interests .....................2

        2. Washington Is Suffering Injury As *Parens Patriae* ..................................3

    B. Causation and Redressability Are Clear ...........................................................5

III. CONCLUSION ....................................................................................................6

# I. INTRODUCTION

The State of Washington has standing to challenge the Executive Order on at least two independent grounds. First, the State has standing to sue to redress injuries to its proprietary interests. The Order will reduce state tax revenue, harm the educational mission of state universities, make it impossible for state employees and students to travel, and impose significant costs on state agencies. The State also has standing to sue to protect the well-being of its residents. Washington has a profound interest in protecting its residents from the harms caused by the irrational discrimination embodied in the Order. The Order is causing these harms, and invalidating the portions challenged here will redress them. The State has standing.

# II. ARGUMENT

To have standing, a plaintiff must generally show (1) an "injury in fact" that is concrete and particularized and actual or imminent; (2) that the injury is fairly traceable to the challenged action; and (3) that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The State can show all three.[1]

## A. Washington Is Suffering Injuries From the Order

In proving injury, states "are not normal litigants." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Like any party, states can invoke federal jurisdiction to protect proprietary interests. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601-02 (1982) (explaining proprietary interests); *Davis v. EPA*, 348 F.3d 772, 778 (9th Cir. 2003). But States also have broad authority to sue as *parens patriae* to protect "quasi-sovereign" interests, including interests in the well-being of residents. *Snapp*, 458 U.S. at 602-04. Washington has standing here on both independent grounds.

---

[1] To the extent the Court addresses Washington's standing as a jurisdictional issue, at this early stage in the proceedings all plausible allegations in the complaint must be taken as true and all reasonable inferences drawn in the State's favor. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). For purposes of its underlying TRO motion, Washington must show a "substantial likelihood" of standing. *Id*. As set out herein, Washington amply demonstrates a substantial likelihood of establishing standing.

### 1. Washington is Suffering Injuries to its Proprietary Interests

Washington is currently suffering concrete, adverse impacts to its proprietary interests from the Order that will continue in the absence of the requested relief.

As an initial matter, the level of economic injury necessary to establish a State's proprietary standing is low. Courts have repeatedly found that any non-trivial economic impacts constitute a concrete, particularized injury sufficient to show standing. For example, in *Texas v. United States*, 787 F.3d 733 (5th Cir. 2015), the Fifth Circuit held that Texas could challenge a federal immigration directive based solely on the cost of issuing driver's licenses to the beneficiaries (approximately $130 per license).[2] *Id.* at 748. The Ninth Circuit found a sufficient economic interest for proprietary standing in lost tourist revenues caused by "aesthetic damage" from increased traffic. *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004).

Here, the harms to Washington's proprietary interests are significant and wide-ranging.

First, Washington will lose significant tax revenue because of the Order. Washington receives substantial sales tax revenue every year from travelers from the countries impacted by the Order's travel ban. Ex. A, ¶¶ 3-8 (Decl. of Oline). Washington also stands to lose tax revenue from Washington businesses harmed by the Order, *id.* ¶ 6; ECF No. 7, ¶¶ 9, 11-12 (Decl. of Dzielak), as well as revenue from legal, non-citizen residents who are being prevented from returning to their homes and jobs, *see* ECF No. 8, ¶¶ 6-14 (Decl. of Chiang). Losing these tax revenues is a real, tangible, and immediate harm, even putting aside the Order's longer-term consequences for Washington's economy. Amended Comp. ¶¶ 12-17, 24-25.

Washington also operates several world-class public universities that are suffering adverse impacts from the Order. Several hundred faculty, staff, and students at state higher

---

[2] For purposes of the standing inquiry, the Court also flatly declined to weigh any "countervailing economic benefits" created by the challenged program that might offset injury. *Texas*, 787 F.3d at 750.

education institutions are here on visas from the listed countries, while others are long-term permanent residents from the affected countries. *See* ECF No. 9, ¶¶ 5, 7-8 (Decl. of Riedinger); ECF No. 5, ¶ 5 (Decl. of Chaudhry); Ex. B, ¶¶ 4-10 (Second Decl. of Riedinger); Ex. C, ¶¶ 4, 6 (Decl. of Boesenberg). The order has stranded a member of the WSU faculty overseas, Ex. D, ¶ 6 (Second Decl. of Chaudhry), and will prevent a member of the UW faculty from serving as the keynote speaker at a conference overseas. Ex. B, ¶ 5. Both universities have expended significant resources to sponsor scholars from the affected countries to perform research and teaching, and the Order will prevent several of those individuals from coming to the universities or staying there. Ex. B, ¶¶ 9-10; Ex. D, ¶ 7. Students and faculty from the listed countries will be prevented from participating in planned travel outside the country to conduct research and attend conferences. ECF No. ¶ 7; Ex. D, ¶¶ 3-4; Ex. B, ¶¶ 6, 8. These harms to faculty, staff, and students damage the universities' missions and reduce their attractiveness to international students. ECF No. 5, ¶¶ 2, 9-10.[3]

In sum, these (and other[4]) direct impacts cement the injury-in-fact required for proprietary standing. Far from being speculative, these impacts are occurring *now*. Indeed, the impacts shown here likely understate the State's proprietary harm, as they reflect only what the State has been able to document in the three business days since the Order was issued. *See, e.g.*, Ex. B, ¶ 7.

### 2. **Washington Is Suffering Injury As *Parens Patriae***

Washington's interests go beyond the proprietary. Under the doctrine of *parens patriae*, States have standing to protect "quasi-sovereign" interests, including "the health and well-

---

[3] *See also, e.g.*, *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1487 (9th Cir.1995) (holding that school had standing to challenge harm to students that impacted school); *Ohio Ass'n of Indep. Schs. v. Goff*, 92 F.3d 419, 422 (6th Cir. 1996) (same). It is irrelevant that the suit might also benefit some other than Washington and its residents. *See, e.g.*, *Sprint Commc'ns Co. v. APCC Servs., Inc*, 554 U.S. 269, 287 (2008) ("[F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit.").

[4] For example, the State expects the Order to reduce its ability to recruit employees for key positions in the State workforce. Ex. E, ¶¶ 7-8 (Decl. of Schumacher). The State also expects the Order to increase costs in its child welfare system by needlessly separating children from their parents and making it more difficult for the State to reunify families. Ex. F, ¶¶ 6-19 (Decl. of Strus).

being" of their residents, whether "physical [or] economic." *Snapp*, 458 U.S. at 607. To invoke *parens* jurisdiction, a state must articulate a "quasi-sovereign" interest, identify an interest apart from those of particular private parties, and allege injury to a "sufficiently substantial" segment of its population. *Snapp*, 485 U.S. at 593. That standard is met here.[5]

First, the health and well-being of residents is a quasi-sovereign interest. *Snapp*, 458 U.S. at 607. There can be no question that many state residents are suffering grievous harms to their well-being, including those originally from the listed countries who: were temporarily overseas at the time of the ban and are being prevented from returning to their homes, jobs, and families in Washington; live here and wish to travel overseas for work or to visit family; or live here and are unable to receive visits from their friends and family. ECF No. 8, ¶¶ 6-14; Amended Complaint ¶¶ 18-23, 31-36. The ban is also affecting those who live here as refugees and whose family members are now being barred from joining them, as well as religious nonprofits here that serve refugees as part of their religious mission and are being denied that ability. *Id.* ¶¶ 11, 18, 21, 23, 31, 33, 36.

Washington's goal in ending these harms extends well beyond those of a "nominal" party. Washington has a *profound* interest in preventing the very real harms—both physical and economic—caused by discriminatory treatment. This interest is uniquely represented by

---

[5] Washington anticipates that the United States may assert that *Massachusetts v. Mellon*, 262 U.S. 447 (1923), bars *parens patriae* actions against the federal government. This argument fails for two reasons. First, *Mellon*'s supposed bar on *parens* actions was all but eradicated by the Supreme Court's *Massachusetts v. EPA* decision. There, the Court affirmed States' "special solicitude" in matters of standing and rebuffed the dissent's *Mellon* arguments by pointing out "the long development of cases permitting States 'to litigate as *parens patriae* to protect quasi sovereign interests . . . .'" *Massachusetts v. EPA*, 549 U.S. at 520 & n.17. The Court also stated that "*Mellon* itself disavowed any such broad reading," because it expressly noted it had not been called upon to determine whether claims involving quasi-sovereign interests were barred. *Id.*, 549 U.S. at 520 n.17. In rejecting the federal government's argument based on *Mellon* just months ago, the Eastern District of Washington held that it "cannot ignore" *Massachusetts v. EPA*'s rebuff of *Mellon*. *See Hanford Challenge v. Moniz*, __ F.Supp.3d __, 2016 WL 6902416, at *3 (E.D. Wash. Nov. 3, 2016). Second, even if *Mellon* would otherwise apply, its limitations on standing are prudential only and can be overridden by Congress. *Maryland People's Counsel v. F.E.R.C.*, 760 F.2d 318, 322 (D.C. Cir. 1985). Here, Washington's claims include two statutory causes of action expressly allowing States to sue the federal government. *See* Amended Comp. ¶¶ 91-105; 5 U.S.C. § 702 (granting the right to sue the United States based on adverse agency actions); 42 U.S.C. § 2000bb-1(a) (granting the right to sue the United States based upon alleged burdens on the exercise of religion).

the State, which has a strong "state interest in securing residents from the harmful effects of discrimination." *Snapp*, 458 U.S. at 609; *see also* Wash. Rev. Code 49.60.010 ("The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, [or] national origin . . . are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state."); *People v. Peter & John's Pump House, Inc.*, 914 F. Supp. 809, 813 (N.D.N.Y. 1996).

Finally, the impacts here are sufficiently broad to support *parens* standing. There are no "definitive limits on the proportion of the population" that a state must allege to be adversely affected. *Snapp*, 458 U.S. at 607. And states can establish sufficient impacts by reference to the "indirect effects of the injury" implicating a group broader than just those residents directly involved.[6] *See id.* Here, the Order's impacts are extremely broad. Washington is home to thousands of immigrants from the affected countries and refugees. Amended Comp. ¶¶ 11, 31. The Order affects not just those individuals, but also their friends, families, neighbors, and employers. *Id.* ¶¶ 15-17, 21-23, 31-36. It also affects all Washingtonians, who have emphatically rejected the discrimination embodied in the Order. *See, e.g.*, Wash. Rev. Code 49.60.010.

### B. Causation and Redressability Are Clear

There can be no meaningful dispute that the harms described above are being caused by the Executive Order. It is because of the violations of the equal protection, due process, and establishment clauses, as well as the statutory violations, embodied in that Order that Washington is suffering these harms. The harms cannot be traced to any other source.

---

[6] This is especially true in cases of discrimination. *See, e.g.*, *Commonwealth of Mass. v. Bull HN Info. Sys., Inc.*, 16 F. Supp. 2d 90, 98 (D. Mass. 1998) ("Discrimination of any kind . . . corrodes the social fabric and fosters intolerance and inequality."); *Peter & John's Pump House*, 914 F. Supp. at 813 (finding jurisdiction where "[t]he State alleges discrimination that has a destructive societal effect").

There can also be no meaningful dispute that this Court has power to redress these harms. Invalidating the challenged aspects of the Executive Order would restore the status quo, allowing State residents to return home, travel for work and to visit family, and reunite with loved ones, and would prevent the ongoing proprietary harms the State is suffering. *See, e.g.*, *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2010) (restoration of status quo establishes causation and redressability elements of standing).

### III. CONCLUSION

Washington has established standing. The State is suffering harm to its proprietary interests and as *parens patriae*. The Order is causing the harm. This Court can redress it. The State respectfully asks this Court to enjoin this harm as soon as possible.

DATED this 1st day of February, 2017.

Respectfully submitted,

 s/ Robert W. Ferguson  
ROBERT W. FERGUSON  
Attorney General  
WSBA #26004  
NOAH G. PURCELL  
WSBA #43492  
Solicitor General  
COLLEEN M. MELODY  
WSBA #42275  
Civil Rights Unit Chief  
Office of the Attorney General  
800 Fifth Avenue, Suite 2000  
Seattle, WA 98104  
206-464-7744