# EXHIBIT A

Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                     Plaintiff,<br><br>     v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the Department of Homeland Security; TOM SHANNON, in his official capacity as Acting Secretary of State; and the UNITED STATES OF AMERICA,<br><br>                     Defendants. | No. 2:17-cv-00141<br><br>BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON |

## I.    INTRODUCTION

The United States Constitution forbids the government from discriminating on the basis of national origin or religion. And yet, on January 27, 2017, President Donald J. Trump (the "President") issued an Executive Order (the "Order") that banned from entering the United States all individuals from seven Muslim-majority countries: Iraq, Iran, Libya, Somalia, Sudan,

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 1
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Syria, and Yemen—and gave preference to the processing of Christian refugees from these countries over Muslim refugees. Order §§ 3(c), 5(b). The Order also suspends indefinitely the entry of all Syrian refugees. Order § 5(d). The Order is driven by animus toward Muslims, as confirmed by the President's own public statements and the lack of any rational justification for the categorical exclusion of individuals from the seven identified nations, where approximately 96% of the citizens practice Islam.[1]

The Order, and its implementation by DHS, profoundly, directly, and irreparably harms Washington residents. The blanket ban on all individuals from the affected countries has destabilized and fundamentally altered the lives of many Washington residents and their families, including those seeking to visit, study, work, or secure refuge in Washington. U.S. citizens and legal permanent residents are unable to maintain and secure their relationships with their families out of fear they or their families will be detained or denied entry at our borders. Washington workers and students with valid H1-B, F-1, and J-1 visas will lose their right to live, work, and study here if they travel abroad. And the ban will obstruct the resettlement and reunification of refugee families.

In light of the substantial nature of the injuries at stake, amicus curiae the American Civil Liberties Union of Washington ("ACLU-WA") respectfully urges the Court to grant the State's motion for a Temporary Restraining Order and spare Washington residents and families from further irreparable harm.

---

[1] *See* Central Intelligence Agency, The World Factbook, Religions, *available at* https://www.cia.gov/library/publications/the-world-factbook/fields/2122.html.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 2
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

## II. INTEREST OF AMICUS CURIAE

ACLU-WA is a statewide, nonpartisan, nonprofit organization of over 50,000 members, dedicated to preserving civil liberties. ACLU-WA's interests in joining as *amici curiae* are described in its concurrently filed Motion for Leave to Participate as Amicus Curiae.

ACLU-WA has become a focal point to which many people harmed by the Executive Order have turned in Washington State. ACLU-WA has set-up a special email address to allow persons affected by the travel ban to communicate the impacts of the ban on their lives.[2] ACLU-WA has also reached out to ask Washingtonians to thank and support the State's action in filing its lawsuit to overturn the ban.[3] To date, over 12,000 people have signed the thank you letter.[4]

## III. ARGUMENT

### A. The Order's Discrimination on the Basis of Religion and National Origin Irreparably Harms Washington Residents.

Since the President issued the Executive Order on January 27, its effects have reverberated across our community. Numerous individuals have contacted ACLU-WA to report or seek advice on how best to curtail harm to themselves, their families, and their loved ones directly impacted by the Order. Washington residents feel uncertain about the future and question the stability of their employment, education, and right to travel freely. It is in the public interest to issue interim injunctive relief to prevent this substantial and ongoing harm to Washington residents and their families. *See Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (courts consider the public interest in determining whether to issue interim injunctive relief).

---

[2] *See* http://www.aclu-wa.org/.
[3] *See* https://action.aclu.org/secure/thank_bob_ferguson.
[4] *Id.*

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON - 3
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

**1. The Order Affects Large and Diverse Cross-Sections of Washington Residents and Visitors.**

The Order is far-reaching and destructive. It impacts over 21,000 Washington residents, including 14,953 from King County alone.[5] Specifically, the Order causes direct serious injury to the following categories of people:

- **U.S. citizens with family or loved ones abroad**. The Order impedes the ability of U.S. citizens to have friends and family from the seven affected countries come visit or live with them in Washington. Under the ban, U.S. citizens cannot secure CR-1 or CR-2 visas to have their spouses or stepchildren join them in the United States. Family or loved ones from the seven affected countries cannot secure tourist, work, or student visas to come to Washington, nor can they be sponsored for immigrant visas by their U.S. citizen relatives.

- **Legal permanent residents with family or loved ones abroad**. The ban similarly obstructs the ability of legal permanent residents to have their family or loved ones visit or join them in Washington.

- **Legal permanent residents who wish to travel abroad for vacation, work, study, or to reconnect with family or loved ones**. Although Defendants have—as of today—officially ended application of the Order to legal permanent residents, many Washingtonians were adversely affected prior to the changes, the Order has been inconsistently applied and enforced as to legal permanent residents, and legal permanent residents continue to live in fear that they will not be permitted to return to the country should they leave.

- **Employees of Washington companies with H-1B visas whose employment requires international travel.** The ban also restricts the ability of individuals working in

---

[5] Gene Falk, "More than 21,000 Washington residents are from countries banned by Trump," Seattle Times (Feb. 1, 2017), *available at* http://www.seattletimes.com/seattle-news/data/trumps-travel-ban-affects-more-than-21000-state-residents/.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON - 4
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Washington pursuant to H-1B to travel as needed for their employment. This has a profound effect on Washington companies, including Amazon and Expedia, which employ a significant number of skilled workers under the H-1B visa program in positions that require international travel. It also denies these H-1B visa-holders the opportunity to visit their families and loved ones in the seven affected countries.

- **Students with F-1 visas studying at Washington schools who desire to travel abroad.** The ban similarly impacts the ability of F-1 visa-holders to travel abroad for study, travel, or to reconnect with their families.[6]

- **Individuals currently participating in J-1 visa exchange visitor programs in Washington**. The ban also restricts the ability of individuals currently experiencing and engaging with U.S. society and culture through the J-visa exchange program to travel abroad.[7]

- **Refugees residing in Washington who wish to reconnect with their families abroad.** The ban impedes the right of refugees residing in Washington to either have their families join them or to travel abroad to reconnect with their families.

- **Refugees fleeing persecution and conflict who wish to resettle in Washington.** As the State asserted, it is the policy of the State of Washington to provide refuge to those fleeing persecution and conflict. The blanket ban on all refugees for a period of time, on refugees from the seven affected countries, and on refugees from Syria indefinitely is inconsistent with that policy. The ban also creates uncertainty and instability for refugees

---

[6] The F-1 visa program permits individuals to enter the United States to attend private elementary school, high school, seminary, conservatory, or university or college. State Dept., U.S. Visas, Student Visa, *available at* https://travel.state.gov/content/visas/en/study-exchange/student.html.

[7] For-profit, non-profit, and state and local government entities in Washington sponsor exchange visitors through that program. J-1 visa-holders contribute to our communities, including as professors, research scholars, teachers, au pairs, and physicians. State Dept., J-1 Visa: Exchange Visitor Program, *available at* https://j1visa.state.gov/wp-content/uploads/2016/06/FactSheet_J1Visa.pdf.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 5
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

currently residing in Washington who have and are eligible for or have begun the process of applying for asylum.

### 2. The Order Separates and Destabilizes Washington Families.

The Order harms U.S. citizens and legal permanent residents who have family or loved ones abroad.  ACLU-WA has been contacted by many Washington residents who as a result of the Order are now unable to see their families and loved ones.  *See* Declaration of Emily Chiang ("Chiang Decl."); Second Declaration of Emily Chiang ("Second Chiang Decl.").  The people reaching out to ACLU-WA reflect the serious harm the Order has had on real people in Washington State and will continue to have until and unless it is enjoined.

For example, one citizen residing in Washington contacted ACLU-WA to express that the ban was obstructing her ability to reunite with her husband and her stepdaughter, who after two years of vetting had finally obtained CR-1 and CR-2 visas to join her in Washington.[8]  Second Chiang Decl. ¶ 5.  Her husband and stepdaughter are from Iran.  *Id*.  She fears that the ban will force her to leave the United States to start a life with her family elsewhere.  *Id*.  She is torn between her husband and stepdaughter, who are banned from entering the United States, and her ailing mother, who is in Washington and unable to travel.  *Id*.

Another individual feared for his mother, who was returning on January 30, 2017 from a trip abroad to see his grandfather in light of a recent cancer diagnosis.  Chiang Decl. ¶ 11.  His mother is a Syrian national and has lived in Washington since 2011.  *Id*.  She changed her return flight from Seattle to Vancouver, British Columbia for fear of being denied reentry due to the ban.  *Id*.  Due to his mother's age, the individual saw no option but to join his mother in

---

[8] A CR-1 visa provides conditional permanent resident status to foreign citizens who have been married to a U.S. citizen for less than two years.  Dept. of State, U.S. Visas, Directory of Visa Categories, *available at* https://travel.state.gov/content/visas/en/immigrate/family/immediate-relative.html.  A CR-2 visa provides conditional permanent resident status to the foreign national children or stepchildren of a U.S. citizen.  *Id*.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 6
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Vancouver if she is not soon permitted to re-enter the United States. *Id*. This would require him to leave his family in Washington behind and would jeopardize his employment, which will not accommodate long-term telecommuting. *Id*.

By way of further example, ACLU-WA was contacted by a U.S. citizen and her husband, a Syrian citizen who holds a CR-1 visa. Second Chiang Decl. ¶ 6. The couple is currently in Germany after finishing graduate education programs in Europe. *Id*. They had planned to return to the United States on February 4, 2017, but now fear that they will be denied entry to the United States and will be unable to reunite with their family, all of whom live in Washington. *Id*. They are uncertain where they will work or live because their work contracts have ended and they moved out of their residence in anticipation of their return to the United States. *Id*.

Another individual called seeking legal help for his brother, who had a flight from Vancouver International Airport arriving at Seattle-Tacoma International Airport on January 28, 2017. Second Chiang Decl. ¶ 7. His brother holds an Iranian passport but is a Canadian permanent resident and had obtained a work visa to join his family in the United States. *Id*.

On January 28, a Yemeni citizen, a pharmacist, born in Saudi Arabia, who was coming to visit his wife and three children in the United States was nearly deported upon his arrival. Only through the legal intervention of this Court was the pharmacist able to be released to the waiting arms of his wife and children.[9]

The risks imposed by the ban are heightened for legal permanent residents, who are unable to visit family or loved ones because they rightfully fear that they will be denied entry if they travel abroad and then attempt to re-enter the United States. One individual contacted

---

[9] Nina Shapiro, "'I actually wept:' Lawyers' frantic efforts stop a plane, allow 2 men to enter U.S. at Sea-Tac," *Seattle Times* (Jan. 31, 2017), *available at* http://www.seattletimes.com/seattle-news/frantic-effort-at-sea-tac-to-stop-flight-allow-2-men-to-enter-us/.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 7
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

ACLU-WA regarding her ailing mother, who is a legal permanent resident but has been undergoing cancer treatment in Iraq, where it is less expensive. Second Chiang Decl. ¶ 8. Her mother's health has improved and she had hoped that her mother could rejoin her in the United States. *Id*. She had planned to travel abroad in two weeks to visit her mother and bring her home to the United States, but due to the ban she is fearful that they will be denied re-entry because they were both born in Iraq. *Id*. Her fear is compounded by her concern for her young daughter, who planned to stay behind in Washington and would be entirely alone if her mother and grandmother were unable to return. *Id*.

A legal permanent resident from Iran contacted ACLU-WA with similar concerns. Chiang Decl. ¶ 13. She was expecting a visit in three weeks from her mother, who had obtained the necessary visa. *Id*. Her mother is now unable to visit due to the ban. *Id*. She was also planning to visit her elderly grandmother in Iran this summer, but she is now afraid to leave the country out of fear that, even though she is a lawful permanent resident, she might not be allowed reentry. *Id*.

Refugees who have obtained refuge in Washington also fear that the ban will impede their ability to have their families rejoin them. A Syrian refugee family reached out to ACLU-WA to seek help for their son, daughter, and son-in-law who had obtained the necessary approval to rejoin their family in Washington on January 30, 2017. Second Chiang Decl. ¶ 9. They were turned away at the airport in Turkey due to the Order. *Id*. They had already given up their housing and employment in anticipation of their move to the United States. *Id*. They are from Aleppo, Syria and are afraid to return due to the conflict there, especially because the daughter is pregnant. *Id*.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON - 8
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Another Syrian refugee was also concerned that she would be unable to reunite with her family. Chiang Decl. ¶ 10. Some of her family members live in Washington but her mother, father, and three siblings are currently in Jordan. *Id.* They have recently filed a reunification petition to come to the United States. *Id.* She had planned to visit them in Jordan in the interim, but is now afraid to leave the United States out of fear that she will not be allowed to return and would therefore be separated from her family members already in Washington State. *Id.* The Order is separating other Syrian refugee families as well.[10] Another Iraqi refugee contacted ACLU-WA who had planned to travel abroad in March to visit her fiancée, who she has not seen since she resettled in Washington two years ago. Chiang Decl. ¶ 12. She is now very concerned that she will be denied re-entry to the United States if she leaves. *Id.*

For each of these heartbreaking stories, there are no doubt countless other families in Washington being torn apart by the Order. While purporting to advance national security, the ban in fact advances only invidious discrimination and the irreparable disruption of Washingtonians' lives. The State's Motion for a temporary restraining order should be granted.

**3.  The Order Harms Washington's Students and Universities.**

As detailed in the Declarations of Asif Chaudhry and Jeffrey Reidinger, there are at least 232 students from the seven identified countries who are studying at the State's premier public universities under valid student visas. Although these students have been accepted by Washington's universities, pay their tuition, and possess lawful student visas, their rights to travel freely have been arbitrarily rescinded by the Order. These students now face the untenable choice of foregoing their rights to see their families for years, or risking that they may not be

---

[10] Vernal Coleman, "Syrian refugee couple's fear came true: President Trump's ban blocks their children," Seattle Times (Jan. 31, 2017), *available at* http://www.seattletimes.com/seattle-news/politics/syrian-refugee-couples-fear-came-true-president-trumps-ban-blocks-their-children/.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON - 9
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

able to continue their studies if they travel and are not allowed to re-enter. Their research and study opportunities will be limited as they are unable to leave the country without fear of being banned from returning, despite their possession of valid visas. The uncertainty and fear of these Washington students is substantial and irreparable, and supports entry of a temporary restraining order.

**B. There is No Evidence That the Order Will Reduce or Prevent Terrorism.**

Though the Order invokes the September 11, 2001 attacks as a justification for the ban, no one from the seven identified countries was involved in those attacks. *See* Order § 1.[11] Indeed, no individual from the affected countries has been implicated in any terror attack on the United States since.[12] Moreover, the Order does not exclude individuals from the countries whose citizens are known to have perpetrated the September 11 attacks, countries considered a higher threat to national security by the State Department, or countries where individuals who have in fact carried out terrorism in the United States are from. Of the ten countries with the most terrorist attacks in 2015, eight—Afghanistan, Pakistan, India, Nigeria, Egypt, the Philippines, and Bangladesh—are not affected by the Order.[13] Three of the countries with the "most active" branches of the Islamic State of Iraq and the Levant ("ISIL")—Afghanistan, Pakistan, and Egypt—are also unaffected by the Order.[14]

"Preventing terrorism" is but a pretext for the Order's true purpose of excluding Muslims from the United States. In the face of these facts, there is no countervailing public interest in

---

[11] Charlez Kurzman, "Muslim-American Involvement with Violent Extremism, 2016," Dept. of Sociology, Univ. of North Carolina, Chapel Hill (Jan. 26, 2017), *available at* https://sites.duke.edu/tcths/files/2017/01/Kurzman_Muslim-American_Involvement_in_Violent_Extremism_2016.pdf.
[12] *Id.*
[13] National Consortium for the Study of Terrorism and Responses to Terrorism, Country Reports on Terrorism 2015, at *5 (June 2016), *available at* https://www.state.gov/documents/organization/257738.pdf.
[14] *Id.* at *3.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 10
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

"national security" advanced by the Order that would counsel against an injunction. To the contrary, the only evidence before the Court is of the substantial public interest in restoring the constitutional rights of Washingtonians and enjoining the Order.

### IV.  CONCLUSION

The Constitution's guarantee of equality "must at the very least mean that a bare [government] desire to harm a politically unpopular group cannot" justify disparate treatment of that group. *United States v. Windsor*, 133 S. Ct. 2675, 2693, 186 L. Ed. 2d 808 (2013) (*quoting Department of Agriculture v. Moreno,* 413 U.S. 528, 534–535, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973)). Here, the Executive Order violates the Constitution's guarantee of equality and significantly harms a politically unpopular group: Muslims from the seven identified countries. That harm is felt by hundreds if not thousands of individuals in Washington. And that harm is profound and irreparable.

Accordingly, ACLU-WA respectfully requests that the Court enter a temporary restraining order enjoining the enforcement of the Order to protect from irreparable harm Washington residents, companies, and individuals seeking to visit, study, work, or secure refuge in Washington.

DATED this 2nd day of February, 2017.

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 11
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Respectfully submitted,

By */s     Paul J. Lawrence*
Paul J. Lawrence, WSBA No. 13557
Kymberly K. Evanson, WSBA No. 39973
Alanna E. Peterson, WSBA No. 46502
PACIFICA LAW GROUP LLP
1191 Second Avenue, Suite 2000
Seattle, Washington 98101
(206) 245-1700
paul.lawrence@pacificalawgroup.com
kymberly.evanson@pacificalawgroup.com
alanna.peterson@pacificalawgroup.com

*Cooperating Attorneys for Amicus Curiae the American Civil Liberties Union of Washington*

By */s     Emily Chiang*
Emily Chiang, WSBA No. 50517
ACLU OF WASHINGTON FOUNDATION
901 Fifth Avenue, Suite 630
Seattle, Washington 98164
(206) 624-2184
echiang@aclu-wa.org

*Counsel for Amicus Curiae the American Civil Liberties Union of Washington*

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL
LIBERTIES UNION OF WASHINGTON - 12
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February, 2017, I electronically filed the foregoing document with the United States District Court ECF system, which will send notification of such filing to the following:

Robert W. Ferguson  
Marsha J. Chien  
Anne E. Egeler  
Patricio A. Marquez  
Colleen M. Melody  
Noah Guzzo Purcell  
WASHINGTON STATE OFFICE OF THE ATTORNEY GENERAL  
1125 Washington Street SE  
PO Box 40100  
Olympia, WA 98504-0100  
Phone: 360.753.7085 - DD  
Email:  bobf@atg.wa.gov  
Email:  marshac@atg.wa.gov  
Email:  AnneE1@atg.wa.gov  
Email:  PatricioM@atg.wa.gov  
Email:  colleenm1@atg.wa.gov  
Email:  noahp@atg.wa.gov  

☐ via facsimile  
☐ via overnight courier  
☐ via first-class U.S. mail  
☐ via email service agreement  
☒ via electronic court filing  
☐ via hand delivery  

*Attorneys for Plaintiff*

Arjun Garg  
Michelle R. Bennett  
US Department of Justice  
Civil Division, Federal Programs Branch  
20 Massachusetts Ave. NW  
Washington, DC 20530  
Phone: 202-305-8613  
Email: Arjun.garg@usdoj.gov  
Email: michelle.bennett@usdoj.gov  

☐ via facsimile  
☐ via overnight courier  
☐ via first-class U.S. mail  
☐ via email service agreement  
☒ via electronic court filing  
☐ via hand delivery  

*Attorneys for Defendants Donald J. Trump, U.S. Department of Homeland Security, John F. Kelly, Tom Shannon, and United States of America*

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 13  
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP  
1191 SECOND AVENUE  
SUITE 2000  
SEATTLE, WASHINGTON  98101-3404  
TELEPHONE: (206) 245.1700  
FACSIMILE: (206) 245.1750

| | |
|---|---|
| Angelo J. Calfo<br>Kristin W. Silverman<br>Calfo Eakes & Ostrovsky, PLLC<br>1301 Second Avenue, Suite 2800<br>Seattle, WA 98101-3808<br>Phone: 206-407-2200<br>Email: angelic@calfoeakes.com<br>Email: kristins@calfoeakes.com | ☐ via facsimile<br>☐ via overnight courier<br>☐ via first-class U.S. mail<br>☐ via email service agreement<br>☒ via electronic court filing<br>☐ via hand delivery |

*Attorneys for Amicus Americans United for Church and State*

Signed at Seattle, Washington this 2nd day of February, 2017.

_____
Katie Dillon

BRIEF OF AMICUS CURIAE THE AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON - 14
(Cause No. 2:17-cv-00141)

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750