**EXHIBIT A**

THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

STATE OF WASHINGTON,

        Plaintiff,

  v.

DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the Department of Homeland Security; TOM SHANNON, in his official capacity as Acting Secretary of State; and the UNITED STATES OF AMERICA,

        Defendants.

Case No. 2:17-cv-00141-JLR

**PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS ON THE SUBJECT OF STATE STANDING**

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING
Case No. 2:17-cv-00141-JLR

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

## I.   INTERESTS OF AMICUS CURIAE

The non-party law professors are Todd Aagaard of Villanova University, Robin Kundis Craig of the University of Utah, Lincoln L. Davies of the University of Utah, Noah Hall of Wayne State University, F. Andrew Hessick of the University of North Carolina, Zygmunt J. B. Plater of Boston College, Alexander T. Skibine of the University of Utah, Lisa Grow Sun of Brigham Young University, Joseph P. Tomain of University of Cincinnati, and Amy J. Wildermuth of the University of Utah ("the Law Professors"). The Law Professors research, teach, and write on federal courts, constitutional law, and administrative law. They are scholars who have spent considerable time studying the question of state standing. As such, the Law Professors have a strong interest in ensuring that the Court's decision on standing is consistent with this complicated, evolving body of law.

## II.   ARGUMENT[1]

### A.  State Standing Basics

Under Article III of the U.S. Constitution, a federal court must examine whether a plaintiff has standing to bring a case before turning to the merits. In this case, the State of Washington has brought suit against a number of federal officials, a federal agency, and the federal government, asserting claims under the U.S. Constitution as well as several federal statutes, including the Administrative Procedure Act. A relevant question in this case is thus whether the State of Washington has Article III standing to sue.

Increasingly, courts are faced with the question of whether states have standing to sue the federal government. This question was less common before the advent of the modern

---

[1] This brief draws from two of the principal drafter's articles: Amy J. Wildermuth, *Why State Standing in* Massachusetts v. EPA *Matters*, 27 J. LAND, RESOURCES, & ENVTL. L. 273 (2007), http://epubs.utah.edu/index.php/jlrel/article/view/53/46, and Kathryn A. Watts and Amy J. Wildermuth, Massachusetts v. EPA: *Breaking New Ground on Issues Other Than Global Warming*, 102 NW. U. L. REV. 1029 (2008), 102 NW. U. L. REV. COLLOQUY 1 (2007), available at http://www.law.northwestern.edu/lawreview/Colloquy/2007/17/LRColl2007n17Watts.pdf.

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 1
Case No. 2:17-cv-00141-JLR

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

administrative state, but now arises more frequently because, as the relations between states and the federal government have become more intertwined, there are more disagreements between them. *See* Comment, *State Standing To Challenge Federal Administrative Action: A Re-Examination of the* Parens Patriae *Doctrine*, 125 U. PA. L. REV. 1069, 1086 (1977). Moreover, states often have a strong interest in ensuring that the federal government complies with statutory and constitutional mandates, particularly given the overlapping nature of many regulatory burdens. *See* Jacob E. Gersen, *Overlapping and Underlapping Jurisdiction in Administrative Law*, 2006 SUP. CT. REV. 201, 203, 207–08.

The Supreme Court has provided only limited guidance regarding state standing for these cases. The key starting point is *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592 (1982). In *Snapp*, the question before the Court was whether Puerto Rico had standing to sue a number of Virginia apple growers on behalf of its residents, based on allegations that the growers were discriminating against Puerto Rican migrant workers in favor of foreign workers. *Id.* at 598. The Court began its state standing discussion by dividing the potential interests of a sovereign into three categories:

(1) proprietary interests,

(2) quasi-sovereign interests, and

(3) sovereign interests.

*Id.* at 601–02. The Court then determined that Puerto Rico's interest in the case was properly characterized as a quasi-sovereign interest and concluded that Puerto Rico could bring the suit on that basis. *Id.* at 608–09.

What is most important about these three categories of interests is that the standing analysis is quite different for each. It is therefore essential in a case involving state standing that the analysis begin with correctly identifying the type of categories at stake.

### B. Proprietary Interests

Proprietary interests are direct interests, such as ownership of land or participation in a business venture. *Id.* at 601–02. These interests are the same kind of interest that a private party

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 2
Case No. 2:17-cv-00141-JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

would assert in litigation. *Id.* As a result, when a state asserts an injury to—or interference with—this kind of interest in litigation, the state should be treated just as a private party would when determining whether Article III standing exists. *Cf.* Snapp, 458 U.S. 592, 611 (1982) (Brennan, J., concurring) ("At the *very* least, the prerogative of a State to bring suits in federal court should be commensurate with the ability of private organizations. A private organization may bring suit to vindicate its own concrete interest in performing those activities for which it was formed.").

Courts therefore consistently require that sovereigns asserting a proprietary interest satisfy the well-known requirements of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992): In order to have standing to bring suit in federal court under Article III, a state must show that (1) it has any injury that is actual and concrete, (2) the injury is traceable to the conduct of the defendant, and (3) a favorable decision will likely redress the injury. *Id.* at 560–61.

Courts often apply *Lujan* to determine whether a state has standing when proprietary interests are at stake.[2] For example, in *Hodges v. Abraham*, 300 F.3d 432 (4th Cir. 2002), the question was whether the governor of South Carolina—acting in his official capacity on behalf of the state—had standing to bring suit against the Department of Energy for allegedly failing to follow the requirements of the National Environmental Policy Act when it approved the transfer of surplus plutonium. *Id.* at 436. After reciting the *Lujan* requirements, the Fourth Circuit took note that the governor's claimed interest was "not simply in protecting the well-being of South Carolinians," but rather in preventing injury to the "land, streams, and drinking water of South Carolina." *Id.* at 444. Because it was "uncontroverted that at least one state highway runs through [the proposed storage site], and that several streams and wildlife habitats are located near [the proposed storage site]," the court concluded that the alleged injury to the

---

[2] *See, e.g.*, *Idaho By and Through Idaho PUC v. ICC*, 35 F.3d 585, 591–92 (D.C. Cir. 1994) (concluding that the state had standing because it alleged that proposed salvage activities would pollute land owned by the state); *California ex rel. Lockyer v. U.S. Dep't of Agric.*, 459 F. Supp. 2d 874, 889 (N.D. Cal. 2006) (holding *Lujan* requirements were satisfied where the state's injury was to its "natural resources and . . . specific lands whose resources would be affected by roadless policies").

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 3
Case No. 2:17-cv-00141-JLR

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

state's proprietary interests was sufficient to establish standing under *Lujan*. *Id.* at 445. Courts have also found standing when a federal law forces a state to pay money, *United States v. Texas*, 809 F.3d 134, 155 (5th Cir. 2015) (cost of issuing driving licenses to undocumented aliens), as well as when a federal law deprives a state of expected revenue, *Davis v. EPA*, 348 F.3d 772, 778 (9th Cir. 2003) (loss of federal highway funds).

### C.  Quasi-Sovereign Interests

Of the three categories, quasi-sovereign interests are the most difficult to describe. The Court has never precisely defined these interests, leading several scholars to characterize them as "admittedly vague." 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE JURIS. 2D § 3531.11, at 31 (1984).

What is clear from *Snapp* is that when a sovereign brings suit based on quasi-sovereign interests, "the State must articulate an interest apart from the interests of particular private parties." *Snapp*, 458 U.S. at 607. This separate interest is then generally described as the State's interest "in the well-being of its populace." *Id.* at 602.

In *Snapp*, the Court gave two examples of quasi-sovereign interests: (1) a sovereign's interest in protecting the health and well-being—"both physical and economic"—of its citizens from injuries such as transboundary pollution;[3] and (2) a sovereign's interest in seeing that its "residents are not excluded from the benefits that flow from participation in the federal system," such as when railroads conspire to fix freight rates in a manner that discriminates against a particular state's shippers in violation of federal antitrust law. *Id.* at 607–08 (citing, among others, *Georgia v. Pennsylvania R. Co.,* 324 U.S. 439 (1945)).

---

[3] *See* Thomas W. Merrill, *Global Warming as a Public Nuisance*, 30 COLUM. J. ENVTL. L. 293, 303 n.44 (2005) (listing the following transboundary cases that fit this mold: "North Dakota v. Minnesota, 263 U.S. 365 (1923) (flooding); New York v. New Jersey, 256 U.S. 296 (1921) (water pollution); Georgia v. Tennessee Copper Co., 206 U.S. 230 (1907) (air pollution in Georgia caused by discharge of noxious gases from the defendant's plant in Tennessee); Kansas v. Colorado, 185 U.S. 125 (1902) (diversion of water), [sic] Missouri v. Illinois, 180 U.S. 208 (1901) (sought to enjoin defendants from discharging sewage in such a way as to pollute the Mississippi river in Missouri)").

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 4
Case No. 2:17-cv-00141-JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

According to *Snapp*, "the roots" of state quasi-sovereign interests are found "in the common-law concept of the 'royal prerogative,'" which "included the right or responsibility to take care of persons who 'are legally unable, on account of mental incapacity.'" *Id.* at 600 (quoting J. CHITTY, PREROGATIVES OF THE CROWN 155 (1820)). As it developed in U.S. law, this prerogative became known as *parens patriae* standing. If the concept had remained consistent with its common-law roots, the connection to the state's residents would be quite easy to understand: *Parens patriae* suits would be permitted because the individuals are unable to bring suit on their own. Modern *parens patriae*, however, is no longer consistent with the original common-law concept on which it was based. In fact, as the Supreme Court made clear in *Snapp*, a state may not bring suit as *parens patriae* to represent persons who are unable to represent themselves. *Id.* at 600. Accordingly, it is now understood that a sovereign may bring suit as *parens patriae* on the basis of an injustice to its populace: It may bring suit either to protect the health and well-being of its populace, or it may bring suit based on the denial of benefits assured to its residents by federal law. *Snapp*, 458 U.S. at 602, 607.

This, however, raises another question: If the federal government has a similar duty to protect those same residents, does a state have the right to sue to protect the well-being of its residents <u>from</u> the federal government? Previously, the decision in *Massachusetts v. Mellon*, 262 U.S. 447 (1923), was understood to have erected a bar to such suits: States could not sue the federal government based on their *parens patriae* interests unless Congress had waived the restriction. *See Maryland People's Counsel v. FERC*, 760 F.2d 318, 322 (D.C. Cir. 1985) (Scalia, J.).

In *Massachusetts v. EPA*, 549 U.S. 497 (2007), however, the Court appeared to lift the bar to a state litigating against the federal government when a quasi-sovereign interest is at stake. In doing so, The Court explained:

> there is a critical difference between allowing a State "to protect her citizens from the operation of federal statutes" (which is what *Mellon* prohibits) and allowing a State to assert its rights under federal law (which it has standing to do). Massachusetts does not here dispute that the Clean Air Act *applies* to its citizens; it rather seeks to assert its rights under the Act.

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 5
Case No. 2:17-cv-00141-JLR

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

*Id.* at 520 n.17. Although many commentators have noted that this passage seems to confuse the different interests a state might have, there has never been any further clarification of the point from the Court. As a result, although *Massachusetts v. EPA* offered little explanation, it appears that a state can assert Article III standing based on a quasi-sovereign interest of ensuring that its citizens are provided the benefits of federal law, such as when the federal government acts or fails to act in a way that violates federal statutory or constitutional law. *See, e.g.,* Bradford Mank, *Should States Have Greater Standing Rights Than Ordinary Citizens?:* Massachusetts v. EPA's *New Standing Test for States*, 49 WM. & MARY L. REV. 1701, 1769–74 (2008); Calvin Massey, *State Standing After* Massachusetts v. EPA, 61 FLA. L. REV. 249, 264–66 (2009).

Once a state asserts a quasi-sovereign interest, the next issue is what further showing, if any, is required in order to establish standing. The Court's most recent articulation of what is required is found in *Massachusetts v. EPA*. The Court began by reciting the three *Lujan* factors—injury-in-fact, causation, and redressability—and went on to analyze each requirement. As the dissenting opinion was quick to point out, however, the Court's analysis appeared to substantially "[r]elax[]Article III standing requirements." *Massachusetts*, 549 U.S. 536–37 (Roberts, C.J., dissenting). Instead of a more rigid, traditional analysis of the *Lujan* factors, the Court provided a "*Lujan*-lite" analysis, finding that Massachusetts had standing even though its injury—the loss of coastal lands—was remote and whether it would be remedied by the proposed regulations was less than certain. The Court partially acknowledged its "lite" analysis, explaining that states are entitled to "special solicitude" when they assert quasi-sovereign interests. *Id.* at 520.

Although the Court provided few tips on how "lite" the analysis should be, it appears that, following *Massachusetts v. EPA*, some relaxation in application of the *Lujan* test is in order. In addition, when determining the appropriate injury for this lighter analysis, it seems that either (a) a resident's interest or (b) a state's proprietary interest may be used (such as the loss of coastal lands in *Massachusetts*).

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 6
Case No. 2:17-cv-00141-JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

### D. Sovereign Interests

Sovereign interests sufficient for state standing include a state's "power to create and enforce a legal code, both civil and criminal," as well as the power to demand "recognition from other sovereigns." *Snapp*, 458 U.S. at 601. These are interests unique to the state, not based on injuries that a private party could suffer (proprietary standing), and not based on injuries to the well-being of a state's populace (quasi-sovereign standing). For example, in *West Virginia v. EPA*, 362 F.3d 861 (D.C. Cir. 2004), West Virginia and Illinois sought review of the EPA's rules requiring the states to revise their state implementation plans under the Clean Air Act. *Id.* at 864. In concluding that there was standing, the D.C. Circuit explained that, because the rules might interfere with the states' sovereign interest in creating law, the states were not suing as *parens patriae* but "as states." *Id.* at 868.

### III. APPLICATION TO THIS CASE

Based on our review of the preliminary record in this case, we want to offer some general ideas about possible applications. In doing so, we note that the State of Washington is the home to two world-class, research-intensive public institutions of higher education, the University of Washington ("UW") and Washington State University ("WSU"). Because we are employed by universities like those, and we believe that these examples best illustrate the standing principles in this case, we offer a few thoughts on the state standing analysis when the state's interest is reflected in its institutions of higher education.

One straightforward path to finding standing is under a proprietary interest analysis. Much like the coastal land in *Massachusetts*, the State of Washington's interest in its institutions of higher education and their functioning is best viewed as proprietary. As an institution and employer, like other institutions in Washington, the state may have lost revenue, both because students can no longer enroll (thus costing institutions tuition dollars) and because of cancelled trips and events of those within the university. As proprietary interests, these injuries should be analyzed under the traditional *Lujan* framework. Moreover, if there was a showing of actual financial harm to WU or WSU, as arms of the state, such an injury would be

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 7
Case No. 2:17-cv-00141-JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

sufficient under the traditional *Lujan* analysis to find standing on the part of the state to bring the case.

On the other end of the spectrum, it does not appear on the face of the complaint that the State of Washington has asserted a sovereign interest in this case. That is, there does not appear to us to be any claim of preemption of state law, or an assertion of interference with the creation or enforcement of state law. As such, at this time, this is an unlikely ground on which to find standing.

A less certain but perhaps possible path for finding standing is for the state to claim impacts on its residents in an effort to assert a quasi-sovereign interest. This is a more complicated route because, as discussed above, *Massachusetts v. EPA* appears to change much with little explanation. Building on what the Court did provide, with a particular focus again on the potential impact on institutions of higher education as an example, a few routes to standing may be possible. First, residents of Washington attending UW and WSU may have had their education impacted by the federal government's actions. When the federal government restricted the entry of those from listed countries, it reduced the ability of the institutions to attract and retain students and faculty from certain countries. This in turn diminished and devalued the rich and diverse learning environment that is core to the mission of higher education. As the Court held in *Grutter*, "student body diversity promotes learning outcomes, and better prepares students for an increasingly diverse workforce and society, and better prepares them as professionals." *Grutter v. Gratz*, 539 U.S. 306, 330 (2003) (internal citations omitted). In so holding, the Court noted that it has "repeatedly acknowledged the overriding importance of preparing students for work and citizenship, describing education as pivotal to sustaining our political and cultural heritage with a fundamental role in maintaining the fabric of society." *Id.* at 331 (internal citations omitted). Actions that impede a Washington resident student's preparation could create standing if they are found to harm the well-being of the state's residents.

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 8
Case No. 2:17-cv-00141-JLR

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107

Another possibility is the impact on the ability of those residents at the university to do important, often life-saving research. Many researchers must travel to present their work at conferences, which is critical to the progress of research. Even more important, however, is the ability to physically travel to sites where raw data or information is located that is the subject of their research. They also often travel to other labs around the globe to learn new techniques and processes.

Any restrictions on travel—particularly this kind of travel, which requires a great deal of advance planning—would slow the progress of research dramatically. While this certainly impacts the world in delaying the progress on life-altering medical research, it directly impacts one's job performance as a faculty member. If a faculty member cannot perform his research, the ability to attract grant funding to support his work is jeopardized. In addition to the potential loss of salary from the loss of grant funding, the inability of a faculty member to perform the research required for their employment could result in lowered earnings in terms of any base salary provided by the university. If the inability to conduct one's research continues for a long period, it might also result in termination. *See, e.g.*, Henry Fountain, *Science Will Suffer Under Trump's Travel Ban, Researchers Say*, N.Y. TIMES (Jan. 30, 2017), https://www.nytimes.com/2017/01/30/science/scientists-donald-trump-travel-ban.html?_r=0.

Both of these examples illustrate possible considerations that a court should analyze as a state's quasi-sovereign interests, as they reflect the state's interest in the well-being of its residents. In addition, because the suit asserts federal government violations of law, *Massachusetts v. EPA* suggests that there is no prohibition—no *Mellon* bar—to the state bringing the suit against the federal government.

As a result, if a state were to assert these injuries and a court accepted them as quasi-sovereign interests, they would be subjected to relaxed requirements with respect to injury-in-fact, causation, and redressability factors under *Lujan*. And when compared to the standing analysis in *Massachusetts*—an injury to coastal lands many years in the future, a more attenuated causal chain, and unclear redressability in connecting emissions from new motor

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 9
Case No. 2:17-cv-00141-JLR

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

vehicles to solving the global climate change problem—the injuries of the sort described above to a student's learning environment and to a researcher's ability to do her work would satisfy the special standing requirements for a state asserting quasi-sovereign interests.

### IV.    CONCLUSION

Although *amici curiae* offer no recommendation on the ultimate outcome of this case, we hope the Court will find the foregoing analysis and examples helpful when resolving the issue of state standing.

DATED:  February 2, 2017

LANE POWELL PC

By   *s/Claire Loebs Davis*
Claire Loebs Davis, WSBA No. 39812
Tiffany Scott Connors, WSBA No. 41740
Jessica N. Walder, WSBA No. 47676
1420 5th Avenue, Suite 4200
Seattle, WA 98111
Telephone: 206.223.7000
Facsimile: 206.223.7107
Attorneys for Proposed *Amicus Curiae* Law Professors

PROPOSED BRIEF OF AMICUS CURIAE LAW PROFESSORS
ON THE SUBJECT OF STATE STANDING - 10
Case No. 2:17-cv-00141-JLR

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA  98111-9402
206.223.7000  FAX: 206.223.7107