UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | CASE NO. C17-0141JLR<br><br>TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

Before the court is Plaintiffs State of Washington and State of Minnesota's (collectively, "the States") emergency motion for a temporary restraining order ("TRO"). (TRO Mot. (Dkt. ## 3, 19 (as amended)).) The court has reviewed the motion, the complaint (Compl. (Dkt. # 1)), the amended complaint (FAC (Dkt. # 18)), all the submissions of the parties related to the motion, the relevant portions of the record, and the applicable law. In addition, the court heard the argument of counsel on February 3,

//

ORDER - 1

1  2017. (*See* Min. Entry (Dkt. # 51).) Having considered all of the foregoing, the court

2  GRANTS the States' motion as set forth below.

## II. PROCEDURAL BACKGROUND

On January 30, 2017, the State of Washington filed a complaint seeking declaratory and injunctive relief against Defendants Donald J. Trump, in his official capacity as President of the United States, the United States Department of Homeland Security ("DHS"), John F. Kelly, in his official capacity as Secretary of DHS, Tom Shannon, in his official capacity as Acting Secretary of State, and the United States of America (collectively, "Federal Defendants"). (*See* Compl.) On February 1, 2017, the State of Washington filed an amended complaint adding the State of Minnesota as a plaintiff. (*See* FAC.) The States seek declaratory relief invalidating portions of the Executive Order of January 27, 2017, entitled "Protecting the Nation from Foreign Terrorist Entry into the United States" ("Executive Order") (*see* FAC Ex. 7 (attaching a copy of the Executive Order)), and an order enjoining Federal Defendants from enforcing those same portions of the Executive Order. (*See generally* FAC at 18.)

The States are presently before the court seeking a TRO against Federal Defendants. (*See generally* TRO Mot.) The purpose of a TRO is to preserve the status quo before the court holds a hearing on a motion for preliminary injunction. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers Local No. 70 of Alameda City*, 415 U.S. 423, 439 (1974); *Am. Honda Fin. Corp. v. Gilbert Imports, LLC*, No. CV-13-5015-EFS, 2013 WL 12120097, at *3 (E.D. Wash. Feb. 22, 2013) ("The purpose

//

of a TRO is to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction . . . .") (internal quotation marks omitted).

Federal Defendants oppose the States' motion. (*See generally* Resp. (Dkt. # 50).)

### III. FINDINGS OF FACT & CONCLUSIONS OF LAW

As an initial matter, the court finds that it has jurisdiction over Federal Defendants and the subject matter of this lawsuit. The States' efforts to contact Federal Defendants reasonably and substantially complied with the requirements of Federal Rule of Civil Procedure 65(b). *See* Fed. R. Civ. P. 65(b). Indeed, Federal Defendants have appeared, argued before the court, and defended their position in this action. (*See* Not. of App. (Dkt. ## 20, 21); Min. Entry; *see generally* Resp.; )

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20).

As an alternative to this test, a preliminary injunction is appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply in

the plaintiff's favor," thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). However, the "serious questions" approach supports the court's entry of a TRO only so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135. The moving party bears the burden of persuasion and must make a clear showing that it is entitled to such relief. *Winter*, 555 U.S. at 22.

The court finds that the States have satisfied these standards and that the court should issue a TRO. The States have satisfied the *Winter* test because they have shown that they are likely to succeed on the merits of the claims that would entitle them to relief; the States are likely to suffer irreparable harm in the absence of preliminary relief; the balance of the equities favor the States; and a TRO is in the public interest. The court also finds that the States have satisfied the "alternative" *Cottrell* test because they have established at least serious questions going to the merits of their claims and that the balance of the equities tips sharply in their favor. As the court noted for the *Winter* test, the States have also established a likelihood of irreparable injury and that a TRO is in the public interest.

Specifically, for purposes of the entry of this TRO, the court finds that the States have met their burden of demonstrating that they face immediate and irreparable injury as a result of the signing and implementation of the Executive Order. The Executive Order adversely affects the States' residents in areas of employment, education, business, family relations, and freedom to travel. These harms extend to the States by virtue of

their roles as *parens patriae* of the residents living within their borders. In addition, the States themselves are harmed by virtue of the damage that implementation of the Executive Order has inflicted upon the operations and missions of their public universities and other institutions of higher learning, as well as injury to the States' operations, tax bases, and public funds. These harms are significant and ongoing. Accordingly, the court concludes that a TRO against Federal Defendants is necessary until such time as the court can hear and decide the States' request for a preliminary injunction.

## IV. TEMPORARY RESTRAINING ORDER

It is hereby ORDERED that:

1. Federal Defendants and all their respective officers, agents, servants, employees, attorneys, and persons acting in concert or participation with them are hereby ENJOINED and RESTRAINED from:

   (a) Enforcing Section 3(c) of the Executive Order;

   (b) Enforcing Section 5(a) of the Executive Order;

   (c) Enforcing Section 5(b) of the Executive Order or proceeding with any action that prioritizes the refugee claims of certain religious minorities;

   (d) Enforcing Section 5(c) of the Executive Order;

   (e) Enforcing Section 5(e) of the Executive Order to the extent Section 5(e) purports to prioritize refugee claims of certain religious minorities.

2. This TRO is granted on a nationwide basis and prohibits enforcement of Sections 3(c), 5(a), 5(b), 5(c), and 5(e) of the Executive Order (as described in

the above paragraph) at all United States borders and ports of entry pending further orders from this court. Although Federal Defendants argued that any TRO should be limited to the States at issue (*see* Resp. at 30), the resulting partial implementation of the Executive Order "would undermine the constitutional imperative of 'a *uniform* Rule of Naturalization' and Congress's instruction that 'the immigration laws of the United States should be enforced vigorously and *uniformly*.'" *Texas v. United States*, 809 F.3d 134, 155 (5th Cir. 2015) (footnotes omitted) (quoting U.S. CONST. art. I, § 8, cl. 4 (emphasis added) and Immigration and Reform Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100 Stat. 3359, 3384 (emphasis added)).[1]

3. No security bond is required under Federal Rule of Civil Procedure 65(c).

4. Finally, the court orders the parties to propose a briefing schedule and noting date with respect to the States' motion for a preliminary injunction no later than Monday, February 6, 2017 at 5:00 p.m. The court will promptly schedule a hearing on the States' motion for a preliminary injunction, if requested and necessary, following receipt of the parties' briefing.

## V. CONCLUSION

Fundamental to the work of this court is a vigilant recognition that it is but one of three equal branches of our federal government. The work of the court is not to create policy or judge the wisdom of any particular policy promoted by the other two branches.

---

[1] An equally divided Supreme Court affirmed *Texas v. United States*, 809 F.3d 134, in *United States v. Texas*, --- U.S. ----, 136 S. Ct. 2271 (2016) (per curiam).

ORDER - 6

1  That is the work of the legislative and executive branches and of the citizens of this
2  country who ultimately exercise democratic control over those branches.  The work of the
3  Judiciary, and this court, is limited to ensuring that the actions taken by the other two
4  branches comport with our country's laws, and more importantly, our Constitution.  The
5  narrow question the court is asked to consider today is whether it is appropriate to enter a
6  TRO against certain actions taken by the Executive in the context of this specific lawsuit.
7  Although the question is narrow, the court is mindful of the considerable impact its order
8  may have on the parties before it, the executive branch of our government, and the
9  country's citizens and residents.  The court concludes that the circumstances brought
10 before it today are such that it must intervene to fulfill its constitutional role in our tripart
11 government.  Accordingly, the court concludes that entry of the above-described TRO is
12 necessary, and the States' motion (Dkt. ## 2, 19) is therefore GRANTED.

13    Dated this 3rd day of February, 2017.

JAMES L. ROBART
United States District Judge