The Honorable James L. Robart

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

8

9  STATE OF WASHINGTON and
10 STATE OF MINNESOTA,

No. 2:17-cv-00141 (JLR)

11                          Plaintiffs,

12             v.                                  **NOTICE OF FILING**
                                                   **OF EXECUTIVE ORDER**
13 DONALD TRUMP, in his official capacity as
   President of the United States; U.S.
14 DEPARTMENT OF HOMELAND
   SECURITY; JOHN F. KELLY, in his official
15 capacity as Secretary of the Department of
   Homeland Security; REX W. TILLERSON, in
16 his official capacity as Secretary of State; and
   the UNITED STATES OF AMERICA,
17
18                          Defendants.
19

20        Defendants hereby provide Notice that, on March 6, 2017, the President signed an

21 Executive Order titled "Protecting the Nation from Foreign Terrorist Entry into the United

22 States" ("New Executive Order," submitted herewith as Exhibit A).  The New Executive Order,

23 by its own terms, will not take effect until March 16, 2017.  *See* New Executive Order § 14.  It

24 revokes Executive Order No. 13,769, *see id.* § 13, which has been the subject of litigation in this

25 case.  As explained below, the New Executive Order sets forth policies substantially different

26 from the policies in Executive Order No. 13,769.  Accordingly, the Government is preparing to

27 enforce the provisions of this New Executive Order beginning on its effective date.

28

NOTICE OF FILING OF EXECUTIVE ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1

## BACKGROUND

On January 27, 2017, the President issued Executive Order No. 13,769, titled "Protecting the Nation From Foreign Terrorist Entry Into the United States."  *See* 82 Fed. Reg. 8977 (Jan. 27, 2017).  Plaintiffs filed this lawsuit challenging that Executive Order on January 30, 2017.  *See* Compl. ¶ 1 (ECF No. 1).  On February 3, 2017, this Court enjoined certain sections of that Executive Order.  *See* ECF No. 52.  Specifically, the Court clarified that the phrase "Executive Order" referred to the January 27, 2017 Executive Order, *see id*. at 2, and then enjoined defendants from the following:

    (a)      Enforcing Section 3(c) of the Executive Order;

    (b)      Enforcing Section 5(a) of the Executive Order;

    (c)      Enforcing Section 5(b) of the Executive Order or proceeding with any action that prioritizes the refugee claims of certain religious minorities;

    (d)      Enforcing Section 5(c) of the Executive Order;

    (e)      Enforcing Section 5(e) of the Executive Order to the extent Section 5(e) purports to prioritize refugee claims of certain religious minorities.

*Id*. at 5 ¶ 1.

The Government appealed this Court's injunction to the United States Court of Appeals for the Ninth Circuit, and also sought a stay of this Court's injunction.  *See Washington v. Trump*, Case No. 17-35105 (9th Cir. Feb. 4, 2017), ECF No. 14.  A panel of the Ninth Circuit denied the Government's motion to stay, and issued a written opinion declining to narrow the scope of this Court's February 3, 2017 Order.  *See Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017).  In doing so, the Ninth Circuit explained that it is "not our role to try, in effect, to rewrite the Executive Order" because "[t]he political branches are far better equipped to make appropriate distinctions."  *Id*. at 1167.  Following the Ninth Circuit's ruling and guidance, the President has now replaced Executive Order No. 13,769 with a new, substantially revised Executive Order that

also expressly revokes the prior Executive Order.  The New Executive Order clarifies and narrows the scope of Executive action regarding immigration, extinguishes the need for emergent consideration, and eliminates the potential constitutional concerns identified by the Ninth Circuit.

### SUMMARY OF KEY PROVISIONS OF THE NEW EXECUTIVE ORDER

Relevant to the issues before the Court, the New Executive Order (i) suspends entry for 90 days of certain foreign nationals from six of the seven countries designated in Executive Order No. 13,769 who do not hold valid visas; (ii) creates a case-by-case waiver process that is integrated into the visa application and admission processes; (iii) creates a 120-day suspension of certain aspects of the U.S. Refugee Admissions Program, which does not apply to refugee applicants who already have been formally scheduled for transit, and also allows for case-by-case waivers; and (iv) contains additional explanations in support of the promulgated policy.

Critically, the New Executive Order accounts for the concerns identified by this Court and the Ninth Circuit regarding the potential due process claims of individuals affected by the prior Executive Order.  *See Washington*, 847 F.3d at 1164-67 (identifying potential due process claims arising from Executive Order 13,769).  The New Executive Order's suspension of entry provision *does not apply to lawful permanent residents.  Nor does that provision apply to any person who holds a valid visa* on the date the New Executive Order takes effect or who held a valid visa as of 5:00 p.m. Eastern Standard Time on the date of issuance of Executive Order 13,769.  For example, the provision does not apply to nonimmigrant visaholders who have been in the United States but temporarily departed or wish to temporarily depart, or to visaholders who have never before set foot in the United States.  Further, the New Executive Order sets out waiver procedures for those without visas who may seek to come to the United States due to a relationship with a U.S. resident or an institution.

NOTICE OF FILING OF EXECUTIVE ORDER - 3
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1

2

**1.  The New Executive Order's 90-Day Suspension of Entry Applies to Aliens with No Material Connection to the United States.**

3

4

Like Executive Order No. 13,769, the New Executive Order temporarily suspends the

5

entry of foreign nationals from certain countries in order to allow the Government to review its

6

screening and vetting procedures.  *See* New Executive Order § 2(c).  Unlike the prior Executive

7

Order, however, the New Executive Order no longer suspends the entry of foreign nationals from

8

Iraq.  Moreover, for those countries to which the suspension does apply, the New Executive

9

Order is substantially narrower in scope and contains robust waiver provisions.

10

**a.  The Suspension of Entry No Longer Applies to Nationals of Iraq.**

11

Executive Order No. 13,769 suspended, for a period of 90 days from the effective date of

12

that Order, the entry of certain nationals of the seven countries referred to in Section 217(a)(12)

13

of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq.: Iran, Iraq, Libya,

14

Somalia, Sudan, Syria, and Yemen.  8 U.S.C. § 1187(a)(12).

15

16

Iraq, however, presents a "special case."  New Executive Order § 1(g).  Unlike the other

17

six countries, there exists a close cooperative relationship between the United States and the Iraqi

18

government, a strong United States diplomatic presence in Iraq, a significant presence of United

19

States forces in Iraq, and a commitment by Iraq to combat the Islamic State of Iraq and Syria

20

("ISIS").  *See id.*  And notably, since Executive Order No. 13,769 was issued, "the Iraqi

21

government has expressly undertaken steps to enhance travel documentation, information

22

sharing, and the return of Iraqi nationals subject to final orders of removal."  *Id.*  Accordingly,

23

24

the suspension of entry provisions no longer apply to Iraqi foreign nationals.  *See id.* §§ 1(f), (g).[1]

25

26

27

28

---

[1] Although the temporary suspension no longer applies to Iraqi foreign nationals, the New Executive Order states that Iraq is still host to an ongoing conflict that has impacted the Iraqi government's capacity to secure its borders and to identify fraudulent travel documents.  *See* New Executive Order § 1(g).  Accordingly, the New Executive Order notes that "[d]ecisions about issuance of visas or granting admission to Iraqi nationals should be subjected to additional scrutiny to determine if applicants have connections with ISIS or other terrorist organizations, or

NOTICE OF FILING OF EXECUTIVE ORDER - 4
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1

2

### b.   The Suspension of Entry Applies to Certain Nationals of Iran, Libya, Somalia, Sudan, Syria, and Yemen.

3

4

5

As to the six countries other than Iraq identified under Section 217(a)(12) of the INA—Iran, Libya, Somalia, Sudan, Syria, and Yemen—the suspension of entry provisions differ substantially from those contained in Executive Order No. 13,769.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

The New Executive Order's suspension of entry applies only to nationals of these six countries who are outside the United States on the New Executive Order's effective date of March 16, 2017, do not have a valid visa on that date, and did not have a valid visa as of 5:00 p.m. Eastern Standard Time on January 27, 2017.  *See* New Executive Order § 3(a).   The suspension of entry *excludes*: (1) lawful permanent residents; (2) any foreign national admitted to or paroled into the United States on or after the New Executive Order's effective date; (3) any individual who has a document other than a visa, valid on the effective date of the New Executive Order or issued anytime thereafter, that permits the individual to travel to the United States and seek entry or admission, such as an advance parole document; (4) any dual national traveling on a passport not issued by one of the six designated countries; (5) any foreign national traveling on diplomatic, diplomatic-type, or other specified visas; and (6) any foreign national who has been granted asylum, any refugee already admitted to the United States, or any individual granted withholding of removal, advance parole, or protection under the Convention Against Torture. *See id.* § 3(b).

22

23

24

25

26

These limits and exclusions accommodate concerns cited by the Ninth Circuit and the States to justify the temporary emergency relief issued with respect to the prior Executive Order. *See Washington*, 847 F.3d at 1166 (discussing potential due process rights of "persons who are

27

28

otherwise pose a risk to either national security or public safety."  *Id*.  Section 4 of the New Executive Order provides further guidance in that respect.

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

in the United States"); States' Stay Br. (ECF No. 28-1) at 10 (ECF No. 28-1) (9th Cir. 17-35105) (filed Feb. 6, 2017) ("This case, by contrast, involves longtime residents who are here and have constitutional rights.").  Indeed, the New Executive Order does not apply to groups the Ninth Circuit asserted may potentially have due process rights impacted by the prior Executive Order. The New Executive Order does not affect the ability of individuals—whether lawful permanent residents or nonimmigrant visaholders—who are lawfully in the United States on the effective date to leave the country to travel and later return.  *See Washington*, 847 F.3d at 1165-66.  Further, the New Executive Order will *not* result in the revocation or cancellation of valid visas or create an emergent situation whereby visaholders abroad are prevented from entering the United States based on the New Executive Order.  *See id*. at 1157.

### c.  The Suspension of Entry Is Subject to a Robust Waiver Provision.

The New Executive Order contains a robust and self-executing waiver provision that is integrated into the visa approval and admission processes, and provides an opportunity for individualized exceptions from the application of Section 2(c) of the Order in all cases.  *See* New Executive Order § 3(c).  Thus, foreign nationals of the six countries who do not possess a visa may still seek a waiver allowing the issuance of a visa or the permission of entry into the United States.  That case-by-case process plainly satisfies any possible due process requirements that would exist with respect to the interest of a U.S. citizen or entity in seeking the entry of a foreign national.  *See Kleindeinst v. Mandel*, 408 U.S. 753, 769 (1972) (in case asserting First Amendment right to have alien enter the United States, explaining that the "waiver decision has, properly, been placed in the hands of the Executive"); *cf. Washington*, 847 F.3d at 1166 (citing *Kleindeinst* and noting the "potential claims regarding possible due process rights" of "applicants

who have a relationship with a U.S. resident or an institution that might have rights of its own to assert").

The New Executive Order includes a nonexhaustive list of circumstances when waivers "could be appropriate," which will guide agencies in addressing circumstances where the national interest would be served by a waiver.  Waivers may be appropriate when:

(i)     the foreign national has previously been admitted to the United States for a continuous period of work, study, or other long-term activity, is outside the United States on the effective date of the Order, seeks to reenter the United States to resume that activity, and denial of reentry during the suspension period would impair that activity;

(ii)    the foreign national has previously established significant contacts with the United States but is outside the United States on the effective date of the Order for work, study, or other lawful activity;

(iii)   the foreign national seeks to enter the United States for significant business or professional obligations and the denial of entry during the suspension period would impair those obligations;

(iv)    the foreign national seeks to enter the United States to visit a close family member (e.g., a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa, and the denial of entry during the suspension period would cause undue hardship;

(v)     the foreign national is an infant, a young child or adoptee, an individual needing urgent medical care, or someone whose entry is otherwise justified by the special circumstances of the case;

(vi)    the foreign national has been employed by, or on behalf of, the United States Government (or is an eligible dependent of such an employee) and the employee can document that he or she has provided faithful and valuable service to the United States Government;

(vii)   the foreign national is traveling for purposes related to an international organization designated under the International Organizations Immunities Act (IOIA), 22 U.S.C. § 288 *et seq.*, traveling for purposes of conducting meetings or business with the United States Government, or traveling to conduct business on behalf of an international organization not designated under IOIA;

NOTICE OF FILING OF EXECUTIVE ORDER - 7
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

(viii)   the foreign national is a landed Canadian immigrant who applies for admission at a land border port of entry or a preclearance location located in Canada; or

(ix)   the foreign national is traveling as a United States Government-sponsored exchange visitor.

*See* New Executive Order § 3(c).  These circumstances for waivers ensure an appropriate process is provided—integrated into the normal visa and admission processes—even in circumstances where the law plainly creates no right of entry.  *See Washington*, 847 F.3d at 1169 (expressing concern that waiver process provide more guidance as to "how would the 'national interest' be determined, who would make that determination, and when").

### 2.   The New Executive Order Suspends Certain Refugee Operations for 120 Days.

Section 6 of the New Executive Order suspends travel into the United States under the U.S. Refugee Admission Program and decisions on applications for refugee status for a period of 120 days.  During the suspension period, the Government will review the refugee application and adjudication processes to determine what additional procedures should be used to ensure that individuals seeking admission as refugees do not pose a threat to the security and welfare of the United States, and to implement such additional procedures.  *See* New Executive Order § 6(a). The New Executive Order's suspension does not apply to refugee applicants who were formally scheduled for transit by the Department of State before the March 16, 2017 effective date of the New Executive Order.  *See id*.

Like the 90-day suspension, the 120-day suspension includes a waiver provision that allows the Secretaries of State and Homeland Security to admit refugees on a case-by-case basis. *See id*. § 6(c).  The New Executive Order identifies specific circumstances in which waivers may be warranted, including where the admission of the individual would allow the United States to

1 conform its conduct to a pre-existing international agreement or denying admission would cause

2 undue hardship. *See id*.

### 3. The New Executive Order Omits Two Provisions Included in Executive Order No. 13,769 Regarding Refugee Admissions.

#### a. The New Executive Order Does Not Prioritize Refugees Who Practice Minority Religions.

Executive Order No. 13,769 contained a provision that, upon the resumption of the U.S. Refugee Admission Program, would have prioritized refugee claims made by individuals on the basis of religious-based persecution if the individual practiced a minority religion in the individual's country of nationality. *See* Exec. Order No. 13,769 § 5(b). The prior Executive Order also provided for the possibility of a waiver of the temporary suspension provisions on a case-by-case basis including, but not limited to, circumstances where an individual refugee is a religious minority. *See id*. § 5(e). The New Executive Order advises that these provisions were not motivated by animus toward any religion; to the contrary, they would have applied to persecuted religious minority groups in any nation, including nations in which practitioners of Islam are a minority, and also to minority sects within a religion facing religious persecution. *See* New Executive Order § 1(b)(iv). Nonetheless, the New Executive Order no longer contains any provisions concerning refugees who practice minority religions.

#### b. The New Executive Order Contains No Provision Specific to Refugees from Syria.

Executive Order No. 13,769 contained a provision that suspended the entry of Syrian refugees until the President determined that sufficient changes were made to the U.S. Refugee Admission Program that would ensure that the admission of those refugees was consistent with the national interest. *See* Exec. Order No. 13,769 § 5(c). The New Executive Order does not contain any provision specifically affecting Syrian refugees.

NOTICE OF FILING OF EXECUTIVE ORDER - 9
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**4.   The New Executive Order Explains in Detail the Basis for the Policy It Announces.**

The New Executive Order provides a detailed explanation on the importance of improving vetting protocols and procedures associated with the visa-issuance process and the U.S. Refugee Admission Program, including the necessity of temporarily suspending narrow aspects of both of those programs while a review of those vetting protocols and procedures takes place.

As explained in the New Executive Order, the six countries that are subject to its suspension of entry (and were also subject to Executive Order No. 13,769) were selected because they "had already been identified as presenting heightened concerns about terrorism and travel to the United States" and had been referred to in, or designated under, Section 217(a)(12) of the INA, 8 U.S.C. § 1187(a)(12).   *See* New Executive Order § 1(b)(i).   Specifically, Syria is identified in the statutory text of the INA; Iran, Syria, and Sudan have been identified as state sponsors of terrorism for purposes of applying the INA; and Libya, Somalia, and Yemen have been designated as countries of concern by the Secretary of Homeland Security, in consultation with the Secretary of State and the Director of National Intelligence, for purposes of applying the INA, based on consideration of three statutory factors related to terrorism and national security. *See id.* (citing 8 U.S.C. § 1187(a)(12)).   The New Executive Order also makes clear that the President exercised his statutory and constitutional authority after having "determined that, for a brief period of 90 days, while existing screening and vetting procedures were under review, the entry into the United States of certain aliens from [these countries] -- each afflicted by terrorism in a manner that compromised the ability of the United States to rely on normal decision-making procedures about travel to the United States -- would be detrimental to the interests of the United States." *Id.* § 1(b)(ii).

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

More specifically, the New Executive Order explains that, currently, the entry of nationals from these countries "warrant[s] additional scrutiny in connection with our immigration policies because the conditions in these countries present heightened threats." *Id.* § 1(d). "Each of these countries is a state sponsor of terrorism, has been significantly compromised by terrorist organizations, or contains active conflict zones." *Id.* "Any of these circumstances diminishes the foreign government's willingness or ability to share or validate important information about individuals seeking to travel to the United States." *Id.* Moreover, the "significant presence" of terrorist organizations in these countries "increases the chance that conditions will be exploited to enable terrorist operatives or sympathizers to travel to the United States." *Id.* "[O]nce foreign nationals from these countries are admitted to the United States, it is often difficult to remove them, because many of these countries typically delay issuing, or refuse to issue, travel documents." *Id.*

The New Executive Order also addresses some of the specific risks presented by each of the six countries, *see* New Executive Order § 1(e):

- Iran has been designated as a state sponsor of terrorism since 1984 and does not cooperate with the United States in counterterrorism efforts. *Id.* § 1(e)(i). Iran continues to support terrorist groups, and has been linked to support for al-Qa'ida. *Id.*

- Libya is an active combat zone wherein security and law enforcement functions are provided in many parts of the country by armed militias rather than state institutions; violent extremist groups, including ISIS, have exploited these conditions to expand their presence in the country. *Id.* § 1(e)(ii). Moreover, the Libyan government is unable to secure thousands of miles of its land and maritime borders, enabling the

NOTICE OF FILING OF EXECUTIVE ORDER - 11
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

illicit flow of weapons and foreign terrorist fighters, and the United States Embassy in Libya suspended its operations in 2014.  *Id.*

- Portions of Somalia have been a "terrorist safe haven," and the country lacks the capacity to investigate suspected terrorists.  *Id.* § 1(e)(iii).  The country "has porous borders, and most countries do not recognize Somali identity documents."  *Id.*

- Sudan has been designated as a state sponsor of terrorism, has provided safe havens for al-Qa'ida and other terrorist groups, and continues to have terrorist groups (including elements of al-Qa'ida and ISIS) active in the country.  *Id.* § 1(e)(iv).

- The Syrian government is engaged in an ongoing conflict with ISIS (which uses Syria as its base) for control of portions of the country and supports other terrorist groups, including permitting travel of extremists through its territory to enter Iraq.  *Id.* § 1(e)(v).  The United States Embassy in Damascus suspended its operations in 2012, and Syria does not cooperate with the United States' counterterrorism efforts.  *Id.*

- In Yemen, both ISIS and al-Qa'ida in the Arabian Peninsula are active, and have carried out hundreds of attacks.  *Id.* § 1(e)(vi).  Yemen has porous borders susceptible to weapons smuggling.  *Id.*  The Department of State suspended embassy operations and embassy staff were relocated out of the country in 2015, and Yemen has been unable to cooperate fully with the United States' counterterrorism efforts.  *Id.*

In view of these conditions, the President concluded that, "until the assessment of current screening and vetting procedures required by" the New Executive Order is completed, "the risk of erroneously permitting entry of a national of one of these countries who intends to commit terrorist acts or otherwise harm the national security of the United States is unacceptably high," and a "temporary pause" on such entry is therefore necessary.  *See id.* § 1(f).

NOTICE OF FILING OF EXECUTIVE ORDER - 12
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

As for the suspension of certain refugee operations for 120 days, the New Executive Order explains that "[t]errorist groups have sought to infiltrate several nations through refugee programs," and that "some of those who have entered the United States through our immigration system"—including "individuals who first entered the country as refugees"—"have proved to be threats to our national security."  *Id*. § 1(b)(iii), (h).  The New Executive Order cites specific examples and notes a report that "more than 300 persons who entered the United States as refugees are currently the subjects of counterterrorism investigations by the Federal Bureau of Investigation."  *Id*. § 1(h).  Accordingly, the New Executive Order explains that the 120-day pause in certain refugee operations will permit the United States "to determine what additional procedures should be used to ensure that individuals seeking admission as refugees do not pose a threat to the security and welfare of the United States," and to implement such procedures.  *Id*. § 6(a).

## IMPLEMENTATION OF THE NEW EXECUTIVE ORDER

"[T]he entry into the United States of foreign nationals who may commit, aid, or support acts of terrorism remains a matter of grave concern."  *Id*. § 1(i).  To help address this concern, the President replaced Executive Order No. 13,769 with the New Executive Order "[i]n light of the Ninth Circuit's observation that the political branches are better suited to determine the appropriate scope of any suspensions than are the courts, and in order to avoid spending additional time pursuing litigation[.]"  *Id*.  To achieve the objective of reducing the risk of terrorism posed by foreign nationals entering the United States, the Government intends to begin enforcing the New Executive Order on its effective date of March 16, 2017.  *See* New Executive Order § 14.

NOTICE OF FILING OF EXECUTIVE ORDER - 13
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Court's injunctive order does not limit the Government's ability to immediately begin enforcing the New Executive Order.  In entering the injunctive order, this Court noted that the "narrow question" before it concerned "certain actions taken by the Executive in the context of this specific lawsuit," stating that "[t]he work of the court is not to create policy or judge the wisdom of any particular policy."  Injunctive Order at 6, 7 (ECF No. 52).  Accordingly, the Court's injunctive order, by its terms, applied only to specific sections of Executive Order No. 13,769.  *See id.* at 2 (describing Executive Order of January 27, 2017); *id.* at 5-6 (enjoining specific sections of Executive Order No. 13,769).  Those sections have been substantially changed or removed altogether.

The New Executive Order likewise complies with the Ninth Circuit's decision reviewing this Court's entry of temporary injunctive relief.  The Ninth Circuit invited the Executive Branch to promulgate a new order to address the concerns highlighted by the courts because the "political branches are far better equipped to make appropriate distinctions."  *Washington*, 847 F.3d at 1167.  The Executive Branch has now revoked Executive Order No. 13,769 and promulgated a new and substantially different policy that addresses those concerns and falls outside of the scope of this Court's injunction.  *See Fusari v. Steinberg*, 419 U.S. 379, 387-90 (1975); *Diffenderfer v. Central Baptist Church of Miami, Inc.*, 404 U.S. 412, 414-415 (1972) (per curiam).  To the extent plaintiffs wish to challenge the New Executive Order, the Government is prepared to confer regarding an appropriate schedule for amendment of the complaint and/or any other appropriate proceedings.

Finally, the New Executive Order does not present a need for emergency litigation.  Indeed, the concerns relied upon by the States in bringing this action are no longer at issue.  The New Executive Order does not apply to legal permanent residents or to holders of valid visas (for

NOTICE OF FILING OF EXECUTIVE ORDER - 14
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

example, professors or students at State universities) whether in the United States or abroad. Nor does the New Executive Order authorize the revocation of visas issued before its effective date. *See* New Executive Order § 12(c). As a result, no one who has been approved for travel into the United States will be denied entry by the New Executive Order.

Rather, the Order applies only to those who are overseas and without a visa. That grouping presents the highest concern with respect to the adequacy of visa screening procedures, circumstances for which the courts afford "considerable deference to the President's policy determinations." *Washington*, 847 F.3d at 1164. Nor is there any immediate harm presented to that grouping. They do not have visas and do not have an entitlement to one. Indeed, even if there were some legal right, there is no imminent harm from a temporary suspension where visa applicants normally must wait a period of months or longer to apply and/or be issued a visa or travel document if found eligible. *See* Declaration of Emily Chiang ¶ 13 (ECF No. 8) ("The process of getting a visa for her mother who lives in Iran was long and arduous. It took six months to get an appointment with the embassy. Her appointment was in August and she finally received her visa in early January."). The New Executive Order, moreover, provides robust waiver authority under which such individuals may seek relief if they wish to travel to the United States during the suspension period.

In sum, there is no basis for emergency relief. Any relief sought by the States should be assessed in a traditional manner, allowing this Court a more complete opportunity to assess the provisions of the New Executive Order, should the States assert a challenge to them.

NOTICE OF FILING OF EXECUTIVE ORDER - 15
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

1    DATED: March 6, 2017                    Respectfully submitted,

2                                            CHAD A. READLER
3                                            Acting Assistant Attorney General

4
5                                            JENNIFER RICKETTS
                                             Director, Federal Programs Branch
6
7                                            JOHN R. TYLER
                                             Assistant Director, Federal Programs Branch
8                                            _/s/ Michelle R. Bennett_____
9                                            MICHELLE R. BENNETT
                                             DANIEL SCHWEI
10                                           ARJUN GARG
                                             BRAD P. ROSENBERG
11                                           Trial Attorneys
12                                           U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
13                                           20 Massachusetts Avenue, NW
                                             Washington, DC 20530
14                                           Tel: (202) 305-8902
                                             Fax: (202) 616-8470
15                                           Email: michelle.bennett@usdoj.gov
                                                        arjun.garg@usdoj.gov
16
17                                           *Attorneys for Defendants*

18
19
20
21
22
23
24
25
26
27
28

NOTICE OF FILING OF EXECUTIVE ORDER - 16
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2017, I electronically filed the foregoing Notice of Filing of Executive Order using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.


Dated: March 6, 2017                                   */s/  Michelle R. Bennett*
                                                        MICHELLE R. BENNETT

NOTICE OF FILING OF EXECUTIVE ORDER
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)