THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, and STATE OF MINNESOTA,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the Department of Homeland Security; REX W. TILLERSON, in his official capacity as Secretary of State; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Civil Action No. 2:17-cv-00141-JLR<br><br>RESPONSE TO DEFENDANTS' NOTICE OF FILING OF EXECUTIVE ORDER |

### I.  INTRODUCTION

When a court enjoins a defendant from implementing policies, the defendant cannot evade that injunction simply by reissuing the same basic policies in a new form. Courts do not issue injunctive relief in a game of whack-a-mole, forced to start anew at a defendant's whim. *See, e.g.*, *Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642, 647 (1961) ("[N]either the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided."). Of course, a defendant need not be bound forever by an

injunction, and can request its modification or termination under well-settled rules, but it is the court—not the defendant—that decides whether modification is warranted.

President Trump here seeks to evade these fundamental principles. On February 3, this Court enjoined key provisions of Executive Order No. 13769 (First Executive Order). The Ninth Circuit unequivocally rejected President Trump's request to stay or narrow this Court's injunction. Nonetheless, on March 6, President Trump signed a new Executive Order (Second Executive Order) that, in the words of his own senior advisers, adopts "the same basic policy" as the first: "the goal is obviously to maintain the way that we did it the first time." In particular, the policy purports to reinstate two provisions of the prior order that this Court enjoined: (1) a 90-day ban on entry of persons from several Muslim-majority countries, and (2) a 120-day suspension of the U.S. Refugee Admissions Program. *See* First Executive Order §§ 3(c), 5(a) (imposing these bans), *and* ECF No. 52, at 5 (enjoining §§ 3(c), 5(a)), *and* Second Executive Order §§ 2(c), 6(a) (reinstating these bans).

Although seeking to reinstate the "same basic policy" this Court already enjoined, President Trump did not first ask this Court to modify or dissolve its injunction. Instead, in a "Notice" filed with the Court on Monday, the President simply asserted that "[t]his Court's injunctive order does not limit [his] ability to immediately begin enforcing the [Second Executive Order]." ECF No. 108, at 14 (Notice of Filing). Saying it does not make it so. While this assertion may be in keeping with the President's position that courts are powerless to review his executive orders related to immigration, it is utterly inconsistent with basic legal principles. It is the judicial branch, not the President, that decides whether actions are lawful, and this Court should confirm that its injunction applies to these reissued provisions. The burden is on Defendants to show that modification or termination of the injunction as to these provisions is warranted, a burden they have not met. This Court should confirm that its injunction applies to reinstated provisions 2(c) and 6(a) in the Second Executive Order and direct Defendants to file a motion for modification if they wish to enforce those provisions.

RESPONSE TO DEFENDANTS' NOTICE OF
FILING OF EXECUTIVE ORDER

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## II.     FACTUAL AND PROCEDURAL BACKGROUND

**A.    This Court and Other Courts Enjoined Key Provisions of the First Executive Order on Multiple Grounds**

President Trump campaigned on the promise of "a total and complete shutdown of Muslims entering the United States."[1] First Amended Complaint ¶¶ 42-43, Ex. 1, ECF No. 18 (Am. Compl.). Although he was repeatedly asked to reconsider this campaign promise, he refused. *See* Am. Compl. ¶¶ 46-47, Exs. 4-5 (refusing to "pull-back" the Muslim ban; instead, referring to "extreme vetting" as "an expansion" of his position); Declaration of Noah G. Purcell in Support of Response to Defendants' Notice of Filing of Executive Order (Purcell Decl.) ¶ 3, Ex. A (declining to "re-think" his position in the Republican primary debate); ¶ 4, Ex. B (responding to a question about his position on Muslims after being elected: "You know my plans. All along, I've been proven to be right"); *see also* Am. Compl. ¶ 43, Ex. 1 (noting President Trump's call for a Muslim ban, to date, remains available on his campaign website). Put simply, "[t]he 'Muslim ban' was a centerpiece of the president's campaign for months[.]" *Aziz v. Trump*, No. 1:17-cv-1116-LMB/TCB, 2017 WL 580855, at *8 (E.D. Va. Feb. 13, 2017).

One week after his inauguration, President Trump acted on his campaign promise by issuing the First Executive Order. Am. Compl. ¶ 49, Ex. 7. President Trump confirmed that the First Executive Order was meant to "follow[ ] through" on his campaign promise. *See* Purcell Decl. ¶ 5, Ex. C ("I'm here following through on what I pledged to do. That's all I'm doing."); *see also id.* ("I keep my campaign promises."). President Trump's advisors confirmed that the First Executive Order was meant to fulfill the campaign promise. *See, e.g.*, Am. Compl. ¶ 61, Ex. 17 (citing cybersecurity advisor's statement that the executive order was designed to be a "legal" ban on Muslims).

---

[1] On or before March 15, 2017, a motion for leave to file a Second Amended Complaint, to include allegations related to the Second Executive Order, shall be filed with the Court. It is anticipated that other states may join as plaintiffs at that time.

On February 3, following a week of chaos and confusion at airports across the country, this Court enjoined five sections of the First Executive Order. ECF No. 52, at IV(1)(a)-(e). The Court found that the States had established: (1) both proprietary and *parens patriae* standing; (2) that they were "likely to succeed on the merits of the claims that would entitle them to relief"; (3) that they were likely to suffer irreparable harm absent an injunction; and (4) that the equities and public interest tipped in their favor. ECF 52, at 4-5. Defendants sought an emergency stay, but the Ninth Circuit declined to stay the injunction or alter it in any respect. *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017). In particular, the Ninth Circuit refused Defendants' request to narrow the injunction to cover only lawful permanent residents and other previously admitted aliens who wished to travel. *Id*. at 1166. Defendants have since abandoned their preliminary injunction appeal and it has been dismissed. 9th Cir. ECF Nos. 186-87.

Many other courts agreed with this Court and the Ninth Circuit that the First Executive Order was likely unconstitutional.[2] In particular, the district court for the Eastern District of Virginia issued a detailed opinion reviewing the history of the President's statements regarding the order and holding that the plaintiff State of Virginia was "likely to succeed on an Establishment Clause claim." *See Aziz,* 2017 WL 580855, at *8.

**B.    The Second Executive Order Adopts "the Same Basic Policy" as the First and Retains Two Key Provisions Already Enjoined by this Court**

After being restrained from implementing the First Executive Order, President Trump issued a second. According to his senior staff, the revisions in the Second Executive Order are intended to address only "very technical issues" and achieve "the same basic policy outcome" as the first. Purcell Decl. ¶ 6, Ex. D (statements of Senior Policy Advisor Stephen Miller); *see*

---

[2] In addition to this Court's preliminary injunction, federal courts in the following cases have enjoined parts or all of the travel ban: *Arab Am. Civil Rights League v. Trump*, No. 2:17-cv-10310, ECF 8 (E.D. Mich. Feb. 2, 2017) (order granting permanent injunction, in part); *Darweesh v. Trump*, No. 1:17-cv-00480, ECF 8 (E.D.N.Y. Jan. 28, 2017) (order granting stay of removal and TRO); *Vayeghan v. Kelly*, No. 2:17-cv-00702, ECF 5 (C.D. Cal. Jan. 29, 2017) (granting TRO); *Mohammed v. United States*, No. 2:17-cv-00786, ECF 7 (C.D. Cal. Jan. 31, 2017) (granting TRO).

*also id.* ¶ 7, Ex. E (statement of White House Press Secretary Sean Spicer on March 6, that "if you think about it, the principles of the executive order remain the same"). In the words of the President's spokesman: "the goal is obviously to maintain the way that we did it the first time." *Id.* ¶ 8, Ex. F. President Trump likewise tied the Second Executive Order to his previous campaign promises, sending a fundraising email the day that he signed the Second Executive Order citing it as an example of keeping a campaign promise and again emphasizing its focus on "radical" Muslims. *Id.* ¶ 9, Ex. G.

The Second Executive Order purports to reinstate two key provisions that have already been enjoined by this Court. While the provisions differ slightly from their original incarnations, the differences do not remove them from the ambit of this Court's injunction.

The first reinstated provision is the bar on entry of individuals based on their national origin. Enjoined section 3(c) of the First Executive Order barred entry of individuals for 90 days from seven Muslim-majority countries: Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen. The Second Executive Order retains this unconstitutional provision. Section (2)(c) of the Second Executive Order bars entry of individuals for 90 days from the same Muslim-majority countries, with the exception of Iraq. While section 3 of the Second Executive Order differs from the original in that it excludes lawful permanent residents, visa-holders, and refugees living in the United States from its travel ban, it bars entry for virtually all other aliens from the listed countries, including: relatives of U.S. citizens from the listed countries; students who have been admitted to state universities but not yet received visas; prospective employees of state universities or private businesses who have been offered positions but not yet obtained visas; students and employees who may need to renew their visas; and many other individuals protected by this Court's order. The Ninth Circuit explicitly rejected Defendants' request to narrow the injunction to exclude these categories of individuals. *Washington*, 847 F.3d at 1166.

The second reinstated provision is the 120-day suspension of the U.S. Refugee Admissions Program. Section 6(a) of the Second Executive Order is almost identical to its

RESPONSE TO DEFENDANTS' NOTICE OF
FILING OF EXECUTIVE ORDER

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1 predecessor—enjoined section 5(a)—and differs only cosmetically, such as by modifying the
2 refugee suspension to exclude those already scheduled for travel. While the Second Executive
3 Order removes other provisions related to refugees enjoined by this Court (particularly section
4 5(c), which indefinitely suspended entry of Syrian refugees, and section 5(e)'s explicit
5 preference based on religious minority status), removal of those provisions does not alter the
6 virtually complete overlap between new section 6(a) and enjoined section 5(a).

As with the First Executive Order, the Second Executive Order states that the six-country and refugee bans are subject to possible waivers. For the six-country ban, the Second Executive Order provides that "case-by-case waivers could be appropriate." Second Executive Order § 3(c). This parallels the "national interest" waivers following "case-by-case determinations" available under section 3(g) of the First Executive Order. Likewise, the refugee ban remains subject to waivers on the same terms as the First Executive Order: "[O]n a case-by-case basis, in their discretion, but only so long as [the Secretaries of State and Homeland Security] determine" that the refugee's admission (1) "is in the national interest," and (2) does not pose a threat "to the security or welfare of the United States." First Executive Order § 5(e); Second Executive Order § 6(c).

In short, with the retention of these provisions, it remains apparent that President Trump is not backing down from his campaign promise. Like their predecessors, new sections 2(c) and 6(a) have the same effect as sections of the First Executive Order that have already been enjoined: they broadly ban aliens from listed majority-Muslim countries and suspend the U.S. Refugee Admissions Program.

### III.   ARGUMENT

The President cannot unilaterally declare himself free of this Court's injunction and reinstate policies that this Court already enjoined. Rather, President Trump bears the burden of showing that the factual or legal background has changed significantly enough to warrant a modification of this Court's injunction. He has not met and cannot meet this burden.

RESPONSE TO DEFENDANTS' NOTICE OF
FILING OF EXECUTIVE ORDER

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# A. Defendants Must Show a Significant Change in Fact or Law, and that Inequity Will Result if the Status Quo Remains in Place

"A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). This standard applies to motions to dissolve preliminary injunctions. *Alto v. Black*, 738 F.3d 1111, 1118 (9th Cir. 2013). Modification may be appropriate where a significant change "threaten[s] to convert a previously proper injunction 'into an instrument of wrong,'" such that "judicial intervention may be necessary to prevent inequities." *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (quoting *Salazar v. Buono*, 559 U.S. 700, 714-15 (2010)).

In considering a motion to modify or dissolve a preliminary injunction, the Court does not revisit its underlying order, but limits its consideration to "new material presented with respect to the motion to dissolve." *Sharp*, 233 F.3d at 1170; *see also Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) ("[A] motion to modify a preliminary injunction is meant only to relieve inequities that arise *after* the original order." (emphasis added) (quoting *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993))). Finally, the moving party must show that its proposed modification is "suitably tailored to the changed circumstance." *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 393 (1992)).

# B. Defendants Are Not Excused From Proving the Modification Requirements

Here, Defendants do not even attempt the required showing, apparently assuming that the Second Executive Order exempts them from the normal rules.[3] They are mistaken.

---

[3] Despite baldly asserting that the Second Executive Order will operate free of the injunction, Defendants neglect to note their Notice of Filing as a motion, cite the Court to the applicable standard for modification or dissolution, or explain how maintaining the injunction results in inequity to them. Defendants' attempt to slip their request for relief into the Notice of Filing violates Federal Rule of Civil Procedure 7(b). Under that Rule, Defendants are required to "state with particularity the grounds" for relief and "state the relief sought." *Id.* 7(b)(1)(b)-(c). They do neither. If the Court is inclined to grant Defendants' motion, the undersigned respectfully request that the Court first set a hearing and consider argument on Defendants' claim that they may ignore the preliminary injunction. *See* LCR 7(b)(4).

1 | Under well-settled law, this Court's preliminary injunction remains in effect unless it is altered by this Court or an appellate court, or until a final judgment on the merits is rendered. *See* Order, ECF No. 78, at 4 ("[T]he Court agrees that the Ninth Circuit has construed the TRO as a preliminary injunction"); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) ("[T]he very purpose of a preliminary injunction . . . is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981))). "The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). "'Status quo ante litem' refers to 'the last uncontested status which preceded the pending controversy.'" *Boardman*, 822 F.3d at 1024 (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). Until then, "neither the plaintiff nor the court should be subjected to the unnecessary burden of re-establishing what has once been decided." *Sys. Fed'n No. 91, Ry. Emps.' Dep't*, 364 U.S. at 647.

It should go without saying that Defendants cannot evade this rule by unilaterally declaring that they have made sufficient changes to the enjoined policy to take it outside the scope of the prior injunction. *See, e.g.*, *Movers Conference of Am. v. United States*, 251 F. Supp. 882, 885 (S.D. Cal. 1966) (holding that federal government should have sought modification of injunction rather than simply adopting revised policy that purported to address court's prior holding); *McCarty Corp. v. Rice*, No. 89-2668-OG, 1989 WL 201077, at *1 (D.D.C. Dec. 22, 1989) (holding that "[d]efendants may not evade the legal effect of [the] preliminary injunction by circumventing normal legal channels," and enforcing preliminary injunction against Defendants' proposed actions that were "inconsistent with the injunctive order still in effect"); *see also id.* ("[D]efendants may not effectively remove from this Court jurisdiction and control over a case which is still pending before it."); *see also Innovation*

RESPONSE TO DEFENDANTS' NOTICE OF
FILING OF EXECUTIVE ORDER

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Ventures, LLC v. N2G Distrib., Inc.*, No. 08-CV-10983, 2013 WL 2145677, at *6 (E.D. Mich. May 15, 2013) (holding defendants in contempt for making only "minor changes" to enjoined conduct in an effort "to hide from and avoid [their] obligations under this Court's order"), *aff'd*, 763 F.3d 524 (6th Cir. 2014). Issuing a Second Executive Order that repeats two of the five enjoined provisions, while within the President's prerogative, does nothing to alter or dispose of this Court's injunction. Sections 2(c) and 6(a) of the Second Executive Order, which have "the same effect as the already-enjoined . . . policy," may not be implemented without this Court first agreeing to modify or terminate the injunction. *Potter v. District of Columbia*, Nos. 01-1189-JR, 05-1792-JR, 2007 WL 2892685, *2 (D.D.C. Sept. 28, 2007) (confirming that preliminary injunction of employer's "grooming policy," which required that firefighters who wear beards for religious reasons be clean-shaven, also enjoined subsequent "safety policy," which forbade certain workers to have facial hair); *see also Movers Conference of Am.*, 251 F. Supp. at 885; *McCarty Corp.*, 1989 WL 201077, at *1.

Defendants make only a passing argument to the contrary, citing *Fusari v. Steinberg*, 419 U.S. 379 (1975), and *Diffenderfer v. Central Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412 (1972), for the proposition that the Second Executive Order "falls outside of this Court's injunction" because it is substantially different from the now-revoked First Executive Order. Notice of Filing, ECF No. 108, at 14. But *Fusari* and *Diffenderfer* provide no authority for that proposition. In *Fusari*, a federal district court held that aspects of Connecticut's unemployment compensation scheme violated due process and enjoined the state from denying benefits under that scheme, but it stayed its injunction pending appeal. While the case was on appeal, the legislature "completely altered" the challenged system. *Fusari*, 419 U.S. at 379-80, 384-85. The Supreme Court expressed no opinion about the injunction, which was stayed in any event, and instead declined to rule in the first instance on the constitutionality of the "completely altered" scheme, remanding to the trial court for "reconsideration in light of the intervening changes in Connecticut law." *Fusari*, 419 U.S. at 389-90. The case is an example of appellate

1  restraint to avoid ruling in the first instance on a constitutional question where the underlying
2  law had changed dramatically; it says nothing about a district court's ability to enforce its own
3  injunction in the face of a defendant's attempt to reinstate enjoined policies. *Diffenderfer* is
4  even less relevant, as it did not involve an injunction at all and instead simply held that changes
5  to state law while the appeal was pending had rendered the case moot, an argument that
6  Defendants have not advanced and could not plausibly advance here. *Diffenderfer*, 404 U.S. at
7  414-15.

8        To the extent Defendants mean to imply that they have mooted the entire injunction by
9  revising some of the enjoined provisions, they are mistaken. *Compare* Second Executive Order
10 § 1(i) ("revoking" and "replacing" the First Executive Order), *with Ne. Fla. Chapter of*
11 *Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 660-62 (1993)
12 (concluding controversy was not moot where City "repealed" and "replaced" challenged
13 ordinance, though new ordinance differed in certain respects from the prior one, because it
14 disadvantaged complainants "in the same fundamental way"); *see also Rosenstiel v. Rodriguez*,
15 101 F.3d 1544, 1548 (8th Cir. 1996) ("The Supreme Court has held that where a new statute 'is
16 sufficiently similar to the repealed [statute] that it is permissible to say that the challenged
17 conduct continues' the controversy is not mooted by the change . . . ." (alteration in original)
18 (quoting *Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S. at 662 n.3)); *Smith v.*
19 *Exec. Dir. of Ind. War Mem'ls Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014) ("When a
20 challenged policy is repealed or amended mid-lawsuit—a 'recurring problem when injunctive
21 relief is sought'—the case is not moot if a substantially similar policy has been instituted or is
22 likely to be instituted." (quoting *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 724
23 F.3d 854, 864 (7th Cir. 2013))).

24       Simply put, Defendants cannot unilaterally declare that they are free to implement
25 Sections 2(c) or 6(a) of the Second Executive Order. Absent a successful motion to modify the
26 preliminary injunction, "such injunction will remain in force as applied to [the] amended

1  [Executive Order]." *See Mescall v. Rochford*, No. 75 C 3913, 1976 WL 1672, *2 (N.D. Ill.
2  May 3, 1976) (denying motion to vacate preliminary injunction issued against challenged rule
3  because "amended [rule] remains of questionable constitutionality").

### C. To the Extent Defendants' Notice Is Construed as a Motion, It Should Be Denied

Even assuming that Defendants' notice can be construed as a motion to modify the preliminary injunction with respect to the six-country or refugee bans, the Court should deny Defendants' request. Not only do the Second Executive Order's provisions share fundamental features with those enjoined in the First Executive Order, but, by Defendants' own admission, they were motivated by the same goals and designed to achieve the "same basic policy outcome." *See* Purcell Decl. ¶¶ 6-8, Exs. D-F.

First, the President admits that the Second Executive Order redeploys "critical provisions" of the First Executive Order. Second Executive Order § 1(c). Sections 2(c) and 6(a) have the same basic effects as sections of the First Executive Order that this Court already enjoined, namely sections 3(c) and 5(a). Although section 2(c) now exempts certain individuals covered by the prior section 3(c) (including green card holders and visa holders), the Ninth Circuit already rejected the idea that the prior injunction protected only these individuals. *Washington*, 847 F.3d at 1166. And although the revised order eliminates other provisions related to refugees that this Court enjoined, it makes no material change to section 5(a) in new section 6(a). The bottom line is that this Court already enjoined Defendants from suspending the U.S. Refugee Admissions Program and the entry of nationals from Iran, Libya, Somalia, Sudan, Syria, and Yemen. The President cannot unilaterally reinstate these provisions just by repackaging them.

To the extent Defendants seek to treat the Second Executive Order's waiver provisions as a get-out-of-jail free card, it is inappropriate because materially identical waiver provisions applied to the First Executive Order. *Compare* First Executive Order §§ 3(g), 5(e), *with* Second Executive Order §§ 3(c), 6(a). As before, waivers, if any, will be granted exclusively at

1  Defendants' discretion. *See* Second Executive Order § 3(c) (identifying circumstances where a
2  case-by-case waiver "*could be* appropriate") (emphasis added). And, unlike almost all other
3  provisions in the Second Executive Order—which instruct federal agencies to submit detailed
4  reports on their progress, implement "uniform screening and vetting standards," and issue
5  appropriate "directives,"—the waiver provisions carry no such procedural requirements.
6  *Cf.* Second Executive Order § 2(b) (report on worldwide review); § 2(e) (submission of
7  recommendations); § 2(g) (joint report); § 5(a) ("implement a program"); § 5(b) (reports at 60,
8  100, and 200 days of the order); § 6(a) (review and implement procedures); § 7 (reconsider
9  certain authority, directives, and guidance); § 8(b) (periodic reports at 100, 180, 200, and 365
10 days); § 11(a)-(b) (collect and publish information every 180 days). In light of Defendants'
11 alleged motivations in issuing the Second Executive Order, the lack of any implementing
12 provisions suggests the waivers may be nothing more than an empty promise. *See also*
13 *Washington*, 847 F.3d at 1169 (rejecting argument that "waiver provisions are a sufficient
14 safety valve").

15    Second, Defendants have not shown and cannot show that the unlawful, discriminatory
16 motives that played a part in the adoption of the First Executive Order somehow disappeared in
17 adopting nearly identical provisions of the Second Executive Order. *See Aziz*, 2017 WL
18 580855, at *8 ("the world is not made brand new every morning" (quoting *McCreary Cty. v.
19 ACLU*, 545 U.S. 844, 866 (2005)). This Court, the Ninth Circuit, and other courts have all
20 found that states' Establishment Clause and equal protection claims based on improper
21 religious intent are quite strong. *See, e.g.*, ECF 52, at 4; *Washington*, 847 F.3d at 1168 ("The
22 States' [Establishment Clause and Equal Protection] claims raise serious allegations and
23 present significant constitutional questions."); *Aziz*, 2017 WL 580855, at *8 (same). Thus,
24 Defendants are simply incorrect to claim that "the concerns relied upon by the States in
25 bringing this action are no longer at issue." Notice of Filing, ECF No. 108, at 14.

26

RESPONSE TO DEFENDANTS' NOTICE OF
FILING OF EXECUTIVE ORDER

12

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Indeed, senior Administration officials have reiterated that Defendants' current motivations are no different than the first time around. *See* Purcell Decl. ¶ 6, Ex. D; (Second Executive Order designed to achieve "the same basic policy outcome"); *see also id.* ¶ 7, Ex. E ("[I]f you think about it, the principles of the executive order remain the same."); *Peacock v. Duval*, 694 F.2d 644, 646 (9th Cir. 1982) (holding "*post hoc* rationalizations" cannot prevent a "searching inquiry" into the motives behind alleged constitutional violations). And the evidence that has appeared since the Court's initial injunction only further highlights that Defendants' purported national security motivations for issuing the executive orders are pretextual. *See* Purcell Decl. ¶ 10, Ex. H at 1 ("Key Finding[ ]" by Department of Homeland Security Office of Intelligence and Analysis that "country of citizenship is unlikely to be a reliable indicator of potential terrorist activity"); *id.* ¶ 11, Ex. I at 1 ("Key Judgment[ ]" of same office that "most foreign-born, US-based extremists likely radicalized several years after their entry to the United States, limiting the ability of screening and vetting officials to prevent their entry because of national security concerns"). The Administration's rejection of intelligence reports that conflict with its preferred outcome only adds to the mountain of motive evidence already present in this case. *See* Purcell Decl. ¶ 12, Ex. J (lamentation by senior Administration official that "[t]his is not the intelligence assessment the president asked for").

Finally, Defendants point to no evidence that inequity will result from maintaining the status quo until the merits are determined. *Cf. Credit Suisse First Boston Corp.*, 400 F.3d at 1124 ("[A] motion to modify a preliminary injunction is meant only to relieve inequities that arise after the original order."). Instead, equity favors "preserv[ing] the status quo and the rights of the parties until a final judgment issues[.]" *U.S. Philips Corp.*, 590 F.3d at 1094. As the Ninth Circuit held in rejecting Defendants' claim that they would suffer irreparable harm absent a stay of this Court's injunction, "the Government submitted no evidence to rebut the States' argument that the district court's order merely returned the nation temporarily to the position it has occupied for many previous years." *Washington*, 847 F.3d at 1168; *accord Aziz*,

2017 WL 580855, at *10 (finding that Defendants had shown no harm from enjoining the First Executive Order by presenting no "evidence of harm they or the nation will suffer" beyond "bare assertions that the [Executive Order] is necessary for national security"). That analysis remains correct. Defendants will suffer no inequity from leaving the status quo in place until the merits are settled.

In summary, Defendants show no significant change in fact, law, or equity that would warrant modification of this Court's preliminary injunction. Sections 2(c) and 6(a) of the Second Executive Order are materially indistinguishable from provisions this Court already enjoined, and are motivated by the same religious animus as the First Executive Order. Absent modification by this Court following a properly noted motion and opportunity to be heard, the injunction applies and restrains Defendants from implementing these provisions.

## IV.   CONCLUSION

Defendants unilaterally declare that "[t]his Court's injunctive order does not limit the Government's ability to immediately begin enforcing the New Executive Order." Notice of Filing, ECF No. 108, at 14. Defendants are incorrect. This Court should confirm that its preliminary injunction continues to restrain Defendants from implementing sections 2(c) and 6(a) of the Second Executive Order, which purport to reinstate provisions of the First Executive Order already enjoined by the Court.

1     RESPECTFULLY SUBMITTED this 9th day of March 2017.

ROBERT W. FERGUSON
Washington Attorney General

*s/ Robert W. Ferguson*
ROBERT W. FERGUSON, WSBA #26004

NOAH G. PURCELL, WSBA #43492
Solicitor General

COLLEEN M. MELODY, WSBA #42275
Civil Rights Unit Chief

ANNE E. EGELER, WSBA #20258
Deputy Solicitor General

MARSHA CHIEN, WSBA #47020
PATRICIO A. MARQUEZ, WSBA #47693
Assistant Attorneys General

Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
Noahp@atg.wa.gov

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

March 9, 2017        s/ Noah G. Purcell
                    NOAH G. PURCELL, WSBA 43492