THE HONORABLE JAMES L. ROBART

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON and STATE OF MINNESOTA, | |
| Plaintiffs, | Civil Action No. 2:17-cv-00141-JLR |
| v. | EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION |
| DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the Department of Homeland Security; REX W. TILLERSON, in his official capacity as Secretary of State; and the UNITED STATES OF AMERICA, | ORAL ARGUMENT REQUESTED Motion Noted: March 14, 2017 |
| Defendants. | |
| STATE OF OREGON, | |
| Intervenor-Plaintiff, | |
| v. | |
| DONALD TRUMP, et al., | |
| Intervenor-Defendants. | |

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...............................2

     A.    After President Trump Issued the First Executive Order, this Court and Other Courts Enjoined Key Provisions on Multiple Grounds ........................2

     B.    The Second Executive Order Adopts "The Same Basic Policy" as the First and Retains Two Key Provisions Enjoined by this Court ........................3

III.   ARGUMENT ....................................................................................5

     A.    This Court's Preliminary Injunction Remains In Effect ....................................5

     B.    This Court Has Broad Authority to Enforce Its Injunction ..............................5

     C.    Sections 6(a) and 2(c) of the Second Executive Order Are Covered by This Court's Prior Injunction ................................................................6

         1.    Sections 6(a) and 2(c) implement again conduct that this Court enjoined ..........................................................................................6

         2.    Defendants' cursory justifications for reinstating these policies in the face of the Court's injunction fail.........................................................7

             a.    Renumbering a policy does not allow enjoined conduct ...................8

             b.    Exempting permanent residents and visa-holders does not remove the enjoined provisions from the scope of the injunction ..................................................................................8

             c.    Possible waivers do not exempt the Second Executive Order from the injunction..........................................................................10

             d.    Defendants' cited cases do not allow them to ignore the injunction ..................................................................................11

IV.   CONCLUSION ................................................................................12

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

i

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.     INTRODUCTION

Injunctions are not suggestions. When a court enjoins a defendant from enforcing policies, the defendant cannot evade the injunction by announcing that it will continue only some of the illegal policies. Yet that is what Defendants attempt here. The Court should reject this attempt to evade its authority and should exercise its broad power to enforce its injunction.

On February 3, this Court enjoined Defendants from enforcing five policies contained in Executive Order 13769 (First Executive Order). Despite Defendants' attacks, the Ninth Circuit refused to modify the injunction in any way. Yet on March 6, President Trump signed Executive Order 13780 (Second Executive Order), reinstating two of the enjoined policies.

Specifically, although this Court enjoined Section 5(a) of the First Executive Order, which suspended the U.S. Refugee Admissions Program, the Second Executive Order reinstates a materially identical provision in Section 6(a). This Court also enjoined Section 3(c) of the First Executive Order, which barred entry of individuals for 90 days from seven Muslim-majority countries. Yet Section 2(c) of the Second Executive Order largely reinstates this ban. While the new section differs from the original by excluding Iraqis, lawful permanent residents, and visa-holders, it bars entry for virtually all other individuals from the listed countries, including: relatives of U.S. citizens, students who have been admitted to state universities, prospective employees of state universities and private businesses, and many others. This Court's original injunction protected these individuals and institutions, and the Ninth Circuit rejected Defendants' request to narrow the injunction to exclude them. *Washington v. Trump*, 847 F.3d 1151, 1166 (9th Cir. 2017).

Defendants have announced that on March 16 they intend to reinstate these policies that this Court enjoined. But if Defendants wish to implement policies that this Court enjoined, they must move to modify this Court's injunction under well-settled rules. Until they do so, they cannot escape the injunction and continue their illegal conduct. The Court should hear this motion at its earliest opportunity, enforce its injunction, and uphold the rule of law.

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## II.   FACTUAL AND PROCEDURAL BACKGROUND

**A.   After President Trump Issued the First Executive Order, this Court and Other Courts Enjoined Key Provisions on Multiple Grounds**

President Trump campaigned on the promise of "a total and complete shutdown of Muslims entering the United States." First Amended Complaint ¶¶ 42-43, Ex. 1, ECF No. 18 (Am. Compl.).[1] Although he was repeatedly asked to reconsider this promise, he refused.[2] Put simply, "[t]he 'Muslim ban' was a centerpiece of the president's campaign for months." *Aziz v. Trump*, No. 1:17-cv-116-LMB/TCB, 2017 WL 580855, at *8 (E.D. Va. Feb. 13, 2017).

One week after his inauguration, President Trump acted on his campaign promise by issuing the First Executive Order. Am. Compl. ¶ 49, Ex. 7. He confirmed that the First Executive Order was meant to "follow[ ] through" on his campaign promise. *See* ECF No. 113-4 at 9 ("I'm here following through on what I pledged to do. That's all I'm doing."); *see also id.* at 13 ("I keep my campaign promises."). His advisors confirmed that the First Executive Order was meant to fulfill the campaign promise. *See, e.g.*, Am. Compl. ¶ 61, Ex. 17 (citing advisor's statement that the executive order was designed to be a "legal" ban on Muslims).

On February 3, this Court enjoined five sections of the First Executive Order. ECF No. 52 at IV(1)(a)-(e). The Court found that the States had established: (1) both proprietary and *parens patriae* standing; (2) that they were "likely to succeed on the merits of the claims that would entitle them to relief"; (3) that they were likely to suffer irreparable harm absent an injunction; and (4) that the equities and public interest tipped in their favor. ECF No. 52 at 4-5. Defendants sought an emergency stay, but the Ninth Circuit declined to stay the injunction or alter it in any respect. *Washington v. Trump*, 847 F.3d 1151. In particular, the Ninth Circuit

---

[1] Filed concurrently with this motion is a motion seeking leave to file a Second Amended Complaint with additional allegations and parties. That motion has not been ruled upon, and all citations are therefore to the First Amended Complaint.

[2] *See* Am. Compl. ¶¶ 46-47, Exs. 4-5 (refusing to "pull-back" the Muslim ban; instead, referring to "extreme vetting" as "an expansion" of his position); ECF No. 113-2 at 18 (declining to "rethink" his position in the Republican primary debate); ECF No. 113-1 ¶ 4 (responding to a question about his position on Muslims after being elected: "You know my plans. All along, I've been proven to be right"); *see also* Am. Compl. ¶ 43, Ex. 1 (noting that President Trump's call for a Muslim ban remains available on his campaign website to this day).

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

refused Defendants' request to narrow the injunction to cover only lawful permanent residents and other previously admitted aliens who wished to travel. *Id*. at 1166. Defendants have since abandoned their appeal and it has been dismissed. 9th Cir. ECF Nos. 186-87.

Many other courts agreed with this Court and the Ninth Circuit that the First Executive Order was likely unconstitutional.[3] In particular, the district court for the Eastern District of Virginia issued a detailed opinion reviewing the history of the President's statements regarding the order and holding that the plaintiff State of Virginia was "likely to succeed on an Establishment Clause claim." *Aziz*, 2017 WL 580855, at *8.

**B.     The Second Executive Order Adopts "The Same Basic Policy" as the First and Retains Two Key Provisions Enjoined by this Court**

After being restrained from implementing the First Executive Order, President Trump issued a second. According to his senior staff, the revisions in the Second Executive Order are intended to address only "very technical issues" and achieve "the same basic policy outcome" as the first. ECF No. 113-5 at 3 (statements of Senior Policy Advisor Stephen Miller); *see also* ECF No. 113-6 at 16 (statement of White House Press Secretary Sean Spicer on March 6 that, "if you think about it, the principles of the executive order remain the same"). In the words of the President's spokesman: "the goal is obviously to maintain the way that we did it the first time." ECF No. 113-7 at 24. President Trump likewise tied the Second Executive Order to his previous campaign promises, sending a fundraising email the day that he signed the Second Executive Order citing it as an example of keeping a campaign promise and again emphasizing its focus on "radical" Muslims. *See* ECF No. 113-8 at 3.

The Second Executive Order reinstates two key provisions enjoined by this Court.

---

[3] Federal courts in the following other cases have enjoined  parts or all of the travel ban: *Arab Am. Civil Rights League v. Trump*, No. 2:17-cv-10310, ECF 8 (E.D. Mich. Feb. 2, 2017) (order granting permanent injunction, in part); *Darweesh v. Trump*, No. 1:17-cv-00480, ECF 8 (E.D.N.Y. Jan. 28, 2017) (order granting stay of removal and TRO); *Vayeghan v. Kelly*, No. 2:17-cv-00702, ECF 5 (C.D. Cal. Jan. 29, 2017) (granting TRO); *Mohammed v. United States*, No. 2:17-cv-00786, ECF 7 (C.D. Cal. Jan. 31, 2017) (granting TRO).

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  The first reinstated provision is the 120-day suspension of the U.S. Refugee

2  Admissions Program. Section 6(a) of the Second Executive Order is almost identical to its

3  predecessor—enjoined Section 5(a)—and differs only cosmetically, such as by modifying the

4  refugee suspension to exclude those already scheduled for travel. While the Second Executive

5  Order removes other provisions related to refugees enjoined by this Court (particularly Section

6  5(c), which indefinitely suspended entry of Syrian refugees, and the explicit preference based

7  on religious minority status in Sections 5(b) and (e)), removal of those provisions does not alter

8  the virtually complete overlap between new Section 6(a) and enjoined Section 5(a).

9  The second reinstated provision is the bar on entry of individuals based on their

10  national origin. Enjoined Section 3(c) of the First Executive Order barred entry of individuals

11  for 90 days from seven Muslim-majority countries: Iran, Iraq, Libya, Somalia, Sudan, Syria,

12  and Yemen. Section (2)(c) of the Second Executive Order bars entry of individuals for 90 days

13  from the same Muslim-majority countries, with the exception of Iraq. While the reinstated

14  section differs from the original by excluding lawful permanent residents and visa-holders

15  from its travel ban, it bars entry for virtually all others from the listed countries, including:

16  relatives of U.S. citizens from the listed countries; students who have been admitted to state

17  universities but not yet received visas; prospective employees of state universities and private

18  businesses who have been offered positions but not yet obtained visas; students and employees

19  who need to renew their visas; and many others protected by this Court's order.

20  As with the First Executive Order, the Second Executive Order states that the six-

21  country and refugee bans are subject to possible waivers. For the six-country ban, the Second

22  Executive Order provides that "case-by-case waivers could be appropriate." Second Executive

23  Order § 3(c). This parallels the "national interest" waivers following "case-by-case

24  determinations" available under Section 3(g) of the First Executive Order. Likewise, the

25  refugee ban remains subject to waivers on the same terms as the First Executive Order: "[O]n a

26  case-by-case basis, in their discretion, but only so long as [the Secretaries of State and

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Homeland Security] determine" that the refugee's admission (1) "is in the national interest,"

2   and (2) does not pose a threat "to the security or welfare of the United States." First Executive

3   Order § 5(e); Second Executive Order § 6(c).

4          In short, retaining these provisions makes clear that President Trump is not backing

5   down from his campaign pledge. Like their predecessors, new Sections 2(c) and 6(a) ban

6   people from listed majority-Muslim countries and suspend the Refugee Admissions Program.

7                                III.   ARGUMENT

8   **A.    This Court's Preliminary Injunction Remains In Effect**

9          Under settled law, this Court's preliminary injunction remains in effect unless it is

10  altered by this Court or an appellate court, or until a final judgment on the merits. *See* ECF

11  No. 78 at 4 ("[T]he Court agrees that the Ninth Circuit has construed the TRO as a preliminary

12  injunction."); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010)

13  ("[T]he very purpose of a preliminary injunction . . . is to preserve the status quo and the rights

14  of the parties until a final judgment issues." (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390,

15  395 (1981))). "The 'purpose of a preliminary injunction is to preserve the status quo ante litem

16  pending a determination of the action on the merits.' " *Boardman v. Pac. Seafood Grp.*, 822

17  F.3d 1011, 1024 (9th Cir. 2016) (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023

18  (9th Cir. 2009)). " 'Status quo ante litem' refers to 'the last uncontested status which preceded

19  the pending controversy.' " *Boardman*, 822 F.3d at 1024 (quoting *GoTo.com, Inc. v. Walt

20  Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). Until then, "neither the plaintiff nor the

21  court should be subjected to the unnecessary burden of re-establishing what has once been

22  decided." *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961).

23  **B.    This Court Has Broad Authority to Enforce Its Injunction**

24         "Courts possess the inherent authority to enforce their own injunctive decrees."

25  *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056

26  (1986) (citing *United States v. Hall*, 472 F.2d 261, 267 (5th Cir. 1972); *Berry v. Midtown Serv.*

*Corp.*, 104 F.2d 107, 110 (2d Cir. 1939)), *cited in Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). "[A]n injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *Sys. Fed'n No. 91*, 364 U.S. at 647.

"'In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded.'" *Inst. of Cetacean Research v. Sea Shepherd Conserv. Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014) (quoting *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942)). A defendant cannot escape the district court's power to enforce its injunction through procedural mechanisms designed to insulate its actions from review. *See, e.g.*, *Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 860 (9th Cir. 2007) ("[T]he VA cannot usurp the power of a district court to construe the provisions of an order it has issued or divest that court of its authority[.]"); *Movers Conference of Am. v. United States*, 251 F. Supp. 882, 885 (S.D. Cal. 1966) (holding that federal government should have sought modification of injunction rather than simply adopting revised policy that purported to address court's prior holding).

## C.  Sections 6(a) and 2(c) of the Second Executive Order Are Covered by This Court's Prior Injunction

The Second Executive Order seeks to reinstate two policies that this Court already enjoined. Defendants have offered little justification for their attempt to reinstate these policies without court approval. Their attempts at justification fail, and the Court should enforce its injunction against Defendants' attempt to renew their enjoined conduct.

### 1.  Sections 6(a) and 2(c) implement again conduct that this Court enjoined

When a court orders a defendant to stop certain conduct, the defendant cannot proceed by stopping only some of the enjoined conduct. That is what Defendants attempt here. *See,*

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *e.g.*, Second Executive Order § 1(c) (stating that it redeploys "critical provisions" of the First

2    Executive Order).

3        This Court enjoined Section 5(a) of the First Executive Order, which suspended the

4    U.S. Refugee Admissions Program for 120 days. Section 6(a) of the Second Executive Order

5    reinstates a materially identical suspension of the program. It is true that Defendants responded

6    to the Court's injunction by removing from the Second Executive Order three other refugee-

7    related provisions in the First Executive Order (section 5(c)'s indefinite suspension of entry of

8    Syrian refugees and the explicit religious preference in sections 5(b) and (e)). But removing

9    those provisions and halting some of their unlawful conduct does not exempt Defendants from

10   the injunction as to former Section 5(a).

11       Similarly, this Court enjoined Section 3(c) of the First Executive Order, which barred

12   entry of individuals for 90 days from seven Muslim-majority countries. The Second Executive

13   Order reprises this unconstitutional provision in Section (2)(c). While the Second Executive

14   Order now excludes Iraqis, lawful permanent residents, and visa-holders from its travel ban, it

15   bars entry for virtually all other individuals from the listed countries, including: relatives of

16   U.S. citizens; students who have been admitted to state universities but not yet received visas;

17   prospective employees of state universities or private businesses who have been offered

18   positions but not yet obtained visas; and students and employees who may need to renew their

19   visas. All of these individuals (and the institutions that wish to admit or hire them) are

20   protected by this Court's injunction, but are nonetheless targeted and harmed by the Second

21   Executive Order.

22       **2.**    **Defendants' cursory justifications for reinstating these policies in the face of the Court's injunction fail**

23

24       Defendants offer little explanation for their claim that "[t]his Court's injunctive order

25   does not limit the Government's ability to immediately begin enforcing the [Second] Executive

    Order." ECF No. 108 at 14. But the bare-bones justifications they do offer fail entirely.

26

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### a.      Renumbering a policy does not allow enjoined conduct

Defendants first point out that this "Court's injunctive order, by its terms, applied only to specific sections of Executive Order No. 13,769." ECF No. 108 at 14. But injunctions operate against actions and policies, not against numbers on a page; a defendant cannot evade the force of an injunction by renumbering the policy enjoined. *See, e.g.*, *Inst. of Cetacean Research*, 774 F.3d at 949; *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-CV-10983, 2013 WL 2145677, at *6 (E.D. Mich. May 15, 2013) (holding defendants in contempt for making only "minor changes" to enjoined conduct in an effort "to hide from and avoid [their] obligations under this Court's order"), *aff'd*, 763 F.3d 524 (6th Cir. 2014); *Potter v. Dist. of Columbia*, Nos. 01-1189-JR, 05-1792-JR, 2007 WL 2892685, *2 (D.D.C. Sept. 28, 2007) (confirming that preliminary injunction of employer's "grooming policy," which required firefighters to be clean-shaven, also enjoined subsequent "safety policy," which forbade certain workers to have facial hair); *McCarty Corp. v. Rice*, No. 89-2668-OG, 1989 WL 201077, at *1 (D.D.C. Dec. 22, 1989) (enforcing preliminary injunction against Defendants' proposed actions that were "inconsistent with the injunctive order still in effect"). The key question is whether some of the enjoined policies or conduct continue, and here they plainly do.

### b.      Exempting permanent residents and visa-holders does not remove the enjoined provisions from the scope of the injunction

Defendants next point out that the Second Executive Order "does not apply to legal permanent residents or to holders of valid visas," unlike the first order. ECF No. 108 at 14. Defendants seem to be asserting that this change undermines the holdings of this Court and the Ninth Circuit as to due process and standing. This argument fails for at least three reasons.

First, as to due process, the Ninth Circuit explicitly rejected Defendants' argument that due process protected only lawful permanent residents and visa-holders. *Washington*, 847 F.3d at 1166 (noting that even if these groups were excluded from the First Executive Order, "the States would continue to have potential claims regarding possible due process rights of"

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

others, including visa "applicants who have a relationship with a U.S. resident or an institution that might have rights of its own to assert"). And even if the Ninth Circuit had not made that clear, Defendants cannot now attack the scope of this Court's injunction given that a motion to enforce an injunction "does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed." *Sheet Metal Workers v. EEOC*, 478 U.S. 421, 441 n.21 (1986).

Second, even if these revisions did undermine the due process claims, those claims were not the only substantial basis for the injunction. This Court, the Ninth Circuit, and other courts have all found that states' Establishment Clause and equal protection claims based on improper religious intent are quite strong. *See, e.g.*, ECF No. 52 at 4; *Washington*, 847 F.3d at 1168 ("The States' [Establishment Clause and Equal Protection] claims raise serious allegations and present significant constitutional questions."); *Aziz*, 2017 WL 580855, at *8 (same). And Defendants have not shown that the discriminatory motives that played a part in the First Executive Order somehow disappeared in adopting nearly identical provisions of the Second Executive Order. *See Aziz*, 2017 WL 580855, at *8 ("the world is not made brand new every morning") (quoting *McCreary Cty. v. ACLU*, 545 U.S. 844, 866 (2005)). Indeed, senior Administration officials have reiterated that Defendants' current motivations are no different than the first time around.[4] And the evidence that has appeared since the Court's initial injunction only further demonstrates that Defendants' purported national security motivations for issuing the executive orders are pretextual.[5]

---

[4] *See* ECF No. 113-5 at 3 (Second Executive Order designed to achieve "the same basic policy outcome"); *see also* ECF No. 113-6 at 16 ("[I]f you think about it, the principles of the executive order remain the same."); *Peacock v. Duval*, 694 F.2d 644, 646 (9th Cir. 1982) (holding "*post hoc* rationalizations" cannot prevent a "searching inquiry" into the motives behind alleged constitutional violations).

[5] *See* ECF No. 113-9 at 1 ("Key Finding[ ]" by Department of Homeland Security Office of Intelligence and Analysis that "country of citizenship is unlikely to be a reliable indicator of potential terrorist activity"); ECF No. 113-10 at 1 ("Key Judgment[ ]" of same office that "most foreign-born, US-based extremists likely radicalized several years after their entry to the United States, limiting the ability of screening and vetting officials to prevent their entry because of national security concerns"). The Administration's rejection of intelligence reports that conflict with its preferred outcome only adds to the mountain of motive evidence already present in

9

Third, as to standing, state standing to enforce the injunction is plain for multiple reasons: (a) "A party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." *Salazar v. Buono*, 559 U.S. 700, 712, (2010) (plurality opinion) (citing *Allen v. Wright*, 468 U.S. 737, 763 (1984)). (b) Neither this Court nor the Ninth Circuit found that the States had standing solely to address the claims of lawful permanent residents or visaholders—both courts found broader standing than that. *See* ECF No. 52 at 4-5 (citing "injury to the States' operations, tax bases, and public funds," to "their public universities," and to the States' "residents" without reference to their immigration status); *Washington*, 847 F.3d at 1159-61 (finding that the States had at least proprietary standing because "(1) the Executive Order prevents nationals of seven countries from entering [the States]; (2) as a result, some of these people will not enter state universities, some will not join those universities as faculty, some will be prevented from performing research, and some will not be permitted to return if they leave," all of which remains true). (c) Finally, even if a new standing inquiry were appropriate, the proposed Second Amended Complaint and roughly fifty new declarations document substantial harms from the Second Executive Order to states' proprietary, *parens patriae*, and sovereign interests. States would thus plainly have standing to challenge the Second Executive Order even if this Court had not already enjoined the provisions at issue.

c.    **Possible waivers do not exempt the Second Executive Order from the injunction**

Defendants also seek to treat the Second Executive Order's waiver provisions as a get-out-of-jail free card, but materially identical waiver provisions applied to the First Executive Order. *Compare* First Executive Order §§ 3(g), 5(e), *with* Second Executive Order §§ 3(c), 6(a). As before, waivers, if any, will be granted exclusively at Defendants' discretion. *See* Second Executive Order § 3(c) (identifying circumstances where a case-by-case waiver "*could*

---

this case. *See* ECF No. 113-11 at 2 (lamentation by senior Administration official that "[t]his is not the intelligence assessment the president asked for").

1   *be* appropriate") (emphasis added). And, unlike almost all other provisions in the Second

2   Executive Order—which instruct federal agencies to submit detailed reports on their progress,

3   implement "uniform screening and vetting standards," and issue appropriate "directives"—the

4   waiver provisions carry no such procedural requirements.[6] Given the overlap between the

5   waiver provisions in the First and Second orders, there is no basis to revisit the Ninth Circuit's

6   rejection of Defendants' argument that the "waiver provisions are a sufficient safety valve."

7   *Washington*, 847 F.3d at 1169.

8   ### d.   Defendants' cited cases do not allow them to ignore the injunction

9   Defendants cite *Fusari v. Steinberg*, 419 U.S. 379 (1975), and *Diffenderfer v. Central*

10   *Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412 (1972), for the proposition that the Second

11   Executive Order "falls outside of this Court's injunction" because it is substantially different

12   from the now-revoked First Executive Order. ECF No. 108 at 14. But *Fusari* and *Diffenderfer*

13   provide no authority for that proposition.

14   In *Fusari*, a district court held that aspects of Connecticut's unemployment

15   compensation scheme violated due process and enjoined the state from denying benefits under

16   that scheme, but it stayed its injunction pending appeal. While the case was on appeal, the

17   legislature "completely altered" the challenged system. *Fusari*, 419 U.S. at 379-80, 384-85.

18   The Supreme Court expressed no opinion about the injunction, which was stayed in any event.

19   Instead it declined to rule in the first instance on the constitutionality of the "completely

20   altered" scheme, remanding to the trial court for "reconsideration in light of the intervening

21   changes in Connecticut law." *Id.* at 389-90. The case is an example of appellate restraint; it

22   says nothing about a district court's ability to enforce its own injunction in the face of a

23   defendant's attempt to reinstate enjoined policies.

24   
25         [6] *Cf.* Second Executive Order § 2(b) (report on worldwide review); § 2(e) (recommendations); § 2(g) (joint report); § 5(a) ("implement a program"); § 5(b) (reports at 60, 100, and 200 days of the order); § 6(a) (review and implement procedures); § 7 (reconsider certain authority, directives, and guidance); § 8(b) (periodic
26   reports at 100, 180, 200, and 365 days); § 11(a)-(b) (collect and publish information every 180 days).

EMERGENCY MOTION TO ENFORCE
PRELIMINARY INJUNCTION

11

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1        *Diffenderfer* is even less relevant. It did not involve an injunction at all and simply held

2    that changes to state law while the appeal was pending rendered the case moot, an argument

3    that Defendants have not advanced and could not plausibly advance here. 404 U.S. at 414-15.[7]

4        In short, none of the rationales that Defendants have offered show that Sections 2(c)

5    and 6(a) of the Second Executive Order should be allowed to evade this Court's injunction.

## IV.    CONCLUSION

7        Defendants unilaterally declare that "[t]his Court's injunctive order does not limit the

8    Government's ability to immediately begin enforcing the New Executive Order." ECF No. 108

9    at 14. Defendants are incorrect. The Court should enforce its preliminary injunction and

10   confirm that it restrains Defendants from implementing Sections 2(c) and 6(a) of the Second

11   Executive Order, which reinstate provisions of the First Executive Order already enjoined by

12   the Court. In light of Defendants' announced plan to implement the Second Executive Order

13   on March 16, the undersigned respectfully request that the Court order a response and set a

14   hearing for March 14.

---

[7] To the extent Defendants mean to imply that they have mooted the entire injunction by revising some of the enjoined provisions, they are mistaken. *Compare* Second Executive Order § 1(i) ("revoking" and "replacing" the First Executive Order), *with Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 660-62 (1993) (concluding controversy was not moot where City "repealed" and "replaced" challenged ordinance, though new ordinance differed in certain respects from the prior one, because it disadvantaged complainants "in the same fundamental way"); *see also Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1548 (8th Cir. 1996) ("The Supreme Court has held that where a new statute 'is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues' the controversy is not mooted by the change . . . .") (alteration in original) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors*, 508 U.S. at 662 n.3); *Smith v. Exec. Dir. of Ind. War Mem'ls Comm'n*, 742 F.3d 282, 287 (7th Cir. 2014) ("When a challenged policy is repealed or amended mid-lawsuit—a 'recurring problem when injunctive relief is sought'—the case is not moot if a substantially similar policy has been instituted or is likely to be instituted.") (quoting *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 724 F.3d 854, 864 (7th Cir. 2013)).

1        RESPECTFULLY SUBMITTED this 13th day of March 2017.

2

3                                      ROBERT W. FERGUSON
                                       Washington Attorney General

4                                       s/ Robert W. Ferguson
5                                      ROBERT W. FERGUSON, WSBA #26004

6                                      NOAH G. PURCELL, WSBA #43492
                                       Solicitor General

7                                      COLLEEN M. MELODY, WSBA #42275
                                       Civil Rights Unit Chief
8
                                       ANNE E. EGELER, WSBA #20258
9                                      Deputy Solicitor General

10                                     MARSHA CHIEN, WSBA #47020
                                       PATRICIO A. MARQUEZ, WSBA #47693
11                                     Assistant Attorneys General

12                                     Office of the Attorney General
                                       800 Fifth Avenue, Suite 2000
13                                     Seattle, WA  98104
                                       (206) 464-7744
14                                     Noahp@atg.wa.gov

15

16

17

18

19

20

21

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that the foregoing document was electronically filed with the United

3  States District Court using the CM/ECF system. I certify that all participants in the case are

4  registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5  system.

6

7  March 13, 2017                *s/ Noah G. Purcell*
                                NOAH G. PURCELL, WSBA 43492

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EMERGENCY MOTION TO ENFORCE      14      ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                         800 Fifth Avenue, Suite 2000
                                        Seattle, WA 98104-3188
                                        (206) 464-7744