The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

STATE OF WASHINGTON and
STATE OF MINNESOTA,

                Plaintiffs,

v.

DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the Department of Homeland Security; REX W. TILLERSON, in his official capacity as Secretary of State; and the UNITED STATES OF AMERICA,

                Defendants.

No. 2:17-cv-00141 (JLR)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ENFORCE PRELIMINARY INJUNCTION**

Noted For Consideration:
March 14, 2017

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

I.     The Court's Prior Order, By Its Own Terms, Does Not Apply to the New Executive Order. ............................................................................................................ 1

II.    Judicial Relief Entered As To an Old Policy Does Not Extend to a New Policy. ........................................................................................................................... 5

III.   The Policies in the New Executive Order are Substantially Different Than Those in the Old Executive Order. ............................................................................... 6

IV.   The New Executive Order Is Lawful. ...................................................................... 11

CONCLUSION ......................................................................................................................... 13

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - i
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

**INTRODUCTION**

Plaintiffs, the States of Washington and Minnesota, assert that this Court's existing preliminary injunction—prohibiting the enforcement of five particular sections of Executive Order No. 13,769—should be read as extending to the Government's new Executive Order, which was developed and promulgated following the Ninth Circuit's invitation for the Executive Branch to revise the prior Executive Order. *See Washington v. Trump*, 847 F.3d 1151, 1167 (9th Cir. 2017). Plaintiffs are wrong: this Court's order, by its plain terms, does not apply to the New Executive Order. And courts routinely hold that relief granted as to prior policies does not extend to new policies that are substantially different.

Here, the New Executive Order is undoubtedly substantially different, because it addresses *all* of the claims Plaintiffs raised in support of their motion for a temporary restraining order, as well as the concerns expressed by the Ninth Circuit. Thus, the Court's injunctive order does not, and should not, apply to the New Executive Order. Finally, to the extent there is even any doubt, the Court's prior order should not be construed as enjoining the New Executive Order given that the New Executive Order is a lawful exercise of the President's congressionally delegated authority.

**I.  THE COURT'S PRIOR ORDER, BY ITS OWN TERMS, DOES NOT APPLY TO THE NEW EXECUTIVE ORDER.**

Plaintiffs accuse the Government of seeking to evade this Court's injunction by issuing the New Executive Order. *See* Emergency Mot. to Enforce Prelim. Inj. ("Pls.' Mot."), at 1, ECF No. 119. Remarkably, however, Plaintiffs nowhere acknowledge the actual *text* of the Court's prior order, which is of course the starting point for determining its scope. *Cf. Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150–51 (2009) ("[A] court should enforce a court order, a public

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 1
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

governmental act, according to its unambiguous terms."); Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction and every restraining order must . . . state its terms specifically[.]").

The Court's injunctive order expressly applied only to Executive Order No. 13,769. The order defined the phrase "Executive Order" as referring to "the Executive Order of January 27, 2017, entitled 'Protecting the Nation from Foreign Terrorist Entry into the United States[.]'" ECF No. 52, at 2. The prohibitions on the Government's conduct were then expressly framed with reference to that particular Executive Order. *See id.* at 5 ("Federal Defendants . . . are hereby ENJOINED and RESTRAINED from . . . [e]nforcing Section 3(c) of *the Executive Order*[.]" (emphasis added)). The plain terms of the injunction thus prohibited only actions taken pursuant to that particular Executive Order, and the Government has complied fully with that prohibition. But the Court's injunction did not prohibit actions taken pursuant to other sources of authority, including any revised or replacement Executive Orders.

Notably, the Court's injunction did not purport to restrain any underlying activities or conduct. For example, the order did not state that the Government must continue processing refugee admissions, or that the Government cannot impose any type of temporary suspension on the entry of foreign nationals. Rather, the Court only enjoined those actions insofar as they were taken pursuant to particular sections of Executive Order No. 13,769. That stands in contrast to other injunctive orders entered by courts, which did purport to regulate the Government's primary conduct. *See, e.g.*, Decision & Order at 2, *Darweesh v. Trump*, No. 17-cv-480 (AMD) (E.D.N.Y. Jan. 28, 2017), ECF No. 8 (enjoining Government officials "from, in any manner or by any means, removing individuals with refugee applications approved . . . as part of the U.S. Refugee Admissions Program, holders of valid immigrant and non-immigrant visas, and other individuals

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 2
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530
Tel: (202) 305-8902

from Iraq, Syria, Iran, Sudan, Libya, Somalia, and Yemen legally authorized to enter the United States").

Plaintiffs are wrong, therefore, to frame the issue as "[w]hen a court orders a defendant to stop certain conduct, the defendant cannot proceed by stopping only some of the enjoined conduct." Pls.' Mot. at 6. Defendants do not dispute that a partial violation of an injunction is still a violation. But Plaintiffs' framing simply begs the question by assuming that the New Executive Order's provisions do, in fact, qualify as "enjoined conduct" under the terms of this Court's injunction. The scope of that injunction is the very issue that Plaintiffs ask this Court to decide. And based on its plain terms, that injunction prohibits only enforcement of certain sections of a particular Executive Order. The injunction does not prohibit any underlying conduct, nor does it prevent the Government from developing and enforcing a substantially different Executive Order. *Cf. Pratt v. Rowland*, 917 F.2d 566 (9th Cir. 1990) (table) (holding that an injunction requiring state to transfer inmate out of a prison did not restrict the state's ability to transfer the inmate to that prison again in the future).

Plaintiffs' motion argues that the scope of the Court's order must be interpreted not only by its "strict letter," but also according to "the spirit of the injunction[.]" Pls.' Mot. at 6 (quoting *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 949 (9th Cir. 2014)). As an initial matter, that gets the law exactly backwards when it comes to interpreting injunctions affecting Government policies. *See Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995) (holding that the district court abused its discretion in concluding that its prior injunction applied to a new state program, because "[w]hen the Department is expected to conform its behavior to the injunction . . . , that injunction must be clear enough on its face to give the Department notice that the behavior is forbidden").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 3
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

In any event, the "spirit" of the injunction here only confirms that this Court's injunction does not extend to the subsequently issued New Executive Order. The Ninth Circuit expressly invited the "political branches . . . to make appropriate distinctions" and revise the scope of the Executive Order. *Washington*, 847 F.3d at 1167. That invitation is wholly inconsistent with Plaintiffs' argument that, even after the Executive Branch substantially revised the Executive Order, the Government nonetheless remains enjoined from enforcing the New Executive Order. Moreover, this Court likewise made clear that its injunction was addressing only a "narrow question" about "whether it is appropriate to enter a TRO against *certain actions* taken by the Executive *in the context of this specific lawsuit*." ECF No. 52, at 7 (emphases added). Plainly the Court's injunction does not extend to the future Executive Order, which did not yet exist, much less was it part of "this specific lawsuit" at that time. *Id.*

Finally, the injunction's narrow scope is further confirmed by Plaintiffs' own actions and this Court's Order of March 10, 2017. *See* ECF No. 117. After reviewing Defendants' Notice of Filing of Executive Order (ECF No. 108) and Plaintiffs' Responses to that Notice (ECF Nos. 113, 114), the Court issued an order "declin[ing] to resolve the apparent dispute between the parties concerning the applicability of the court's injunctive order to the New Executive Order until such time as an amended complaint that addresses the New Executive Order is properly before the court." ECF No. 117, at 3. Plaintiffs thereafter sought leave to file a Second Amended Complaint challenging the New Executive Order. *See* ECF No. 118.

These events wholly undermine Plaintiffs' theory that the Court's injunction applies to the New Executive Order. As this Court already noted, up until yesterday Plaintiffs had not even filed a Complaint challenging the New Executive Order. *See* ECF No. 117, at 3. *A fortiori*, then, the Court's prior injunction cannot apply to the New Executive Order that did not yet exist and

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 4
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

was not yet being challenged in "this specific lawsuit." ECF No. 52, at 7; *see also John B. Hull, Inc. v. Waterbury Petrol. Prods., Inc.*, 588 F.2d 24, 30 (2d Cir. 1978) ("A decree cannot enjoin conduct about which there has been no complaint[.]" (modifications omitted) (quoting *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1180 (3d Cir. 1976))); *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 128 (4th Cir. 2011) (an injunction may "address only the circumstances of the case")). By its plain terms, therefore, this Court's prior injunction does not and cannot extend to the New Executive Order.

## II. JUDICIAL RELIEF ENTERED AS TO AN OLD POLICY DOES NOT EXTEND TO A NEW POLICY.

The limited scope of this Court's injunction is consistent with well-established case law holding that judicial relief entered as to an old government policy does not carry over to a new, substantially revised version of that policy. *See, e.g.*, *Fusari v. Steinberg*, 419 U.S. 379 (1975); *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412 (1972).

Plaintiffs seek to discount these cases through strained interpretations of them. With respect to *Fusari*, Plaintiffs assert that "[t]he case is an example of appellate restraint" in which the Supreme Court "declined to rule in the first instance" on a recently revised statutory scheme. Pls.' Mot. at 11. But the Supreme Court did not simply remand the case to the district court for additional proceedings regarding the new scheme; it also *vacated* the district court's judgment as to the old scheme. *See Fusari*, 419 U.S. at 390. Thus, the case squarely holds that when a new policy is enacted, judicial relief as to the old policy is no longer effective.

Similarly, the Court in *Diffenderfer* held that a judgment entered as to an old policy must be vacated once the policy challenged in the complaint has been replaced. *See* 404 U.S. at 414-15 ("The only relief sought in the complaint was a declaratory judgment that the now repealed [statute] is unconstitutional as applied to a church parking lot . . . and an injunction against its

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 5
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

application to said lot. This relief is, of course, inappropriate now that the statute has been repealed."). The Court vacated the judgment as to the old policy, notwithstanding the plaintiffs' potential desire to challenge the new policy through an amended complaint. *See id.* at 415. Again, that holding is directly applicable here. At the time this Court issued its injunction, Plaintiffs' operative complaint challenged only Executive Order No. 13,769. But that Executive Order is being revoked and replaced as of 12:01 a.m., eastern daylight time on March 16, 2017. Although Plaintiffs here seek to challenge the New Executive Order through their Second Amended Complaint, the Court's prior relief as to the Old Executive Order does not apply to the New Executive Order. *See id.* ("[W]e vacate the judgment of the District Court and remand the case to the District Court with leave to the appellants to amend their pleadings.").

In short, Plaintiffs' attempts to undermine these two cases are unpersuasive. These cases (and others) make clear that judicial relief entered against a prior policy does not apply to a new, substantially revised policy. *See also, e.g.*, *Chem. Producers & Distributors Ass'n v. Helliker*, 463 F.3d 871, 875 (9th Cir. 2006) ("Where the law has been 'sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided,' there is 'no basis for concluding that the challenged conduct is being repeated.'" (modifications omitted) (quoting *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993))). Here, as discussed below, the New Executive Order undoubtedly raises a distinct set of issues from the claims Plaintiffs sought to bring against the Old Executive Order.

### III. THE POLICIES IN THE NEW EXECUTIVE ORDER ARE SUBSTANTIALLY DIFFERENT THAN THOSE IN THE OLD EXECUTIVE ORDER.

Far from merely "renumbering the polic[ies] enjoined" in the Old Executive Order, Pls.' Mot. at 8, the New Executive Order explicitly revokes the Old Executive Order and replaces it

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 6
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

with substantially revised policies.  The changes made in the New Executive Order address *all* of the specific claims raised by Plaintiffs in their earlier effort to enjoin the Old Executive Order, as well as the concerns expressed by the Ninth Circuit in declining to stay this Court's injunction.  Because the New Executive Order is substantially different than the Old Executive Order, the Court's injunction does not extend to the New Executive Order and Defendants should not be prohibited from enforcing it on its effective date as planned.

In seeking a temporary restraining order against enforcement of the Old Executive Order, Plaintiffs challenged four discrete aspects of that Executive Order.  *See* ECF No. 19-1.  With respect to the 90-day suspension of entry for foreign nationals of the seven designated countries, Plaintiffs claimed, first, that the provision unlawfully discriminated against "green-card holders currently residing in the United States on the basis of national origin," *id*. at 6, and, second, that the provision violated the due process rights of "legal permanent residents," "visaholders," and individuals seeking asylum, *id*. at 14-18.  With respect to the Old Executive Order's refugee provisions, Plaintiffs claimed, first, that the Old Executive Order impermissibly "single[d] out refugees from Syria for differential treatment," *id*. at 7, and, second, that it discriminated based on religion by prioritizing religious-persecution claims where "the religion of the individual is a minority religion in the individual's country of nationality," *id*. at 7; *see id*. 12-13.

Plaintiffs reiterated the scope of these same claims in the Ninth Circuit.  *See* States' Resp. to Emergency Mot. Under Circuit Rule 27-3 for Admin. Stay & Mot. for Stay Pending Appeal ("Pls.' Appellate Br."), *Washington v. Trump*, No. 17-35105, ECF No. 28-1 (9th Cir. Feb. 6, 2017).  Plaintiffs invoked the due process rights of "lawful permanent residents" and "visaholders" in challenging the 90-day suspension of entry.  *Id*. at 14-16; *id*. at 10 ("This case . . . involves longtime residents who are here and have constitutional rights."); *see also*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 7
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

*Washington*, 847 F.3d at 1165 (summarizing plaintiffs' due process arguments as relating solely to "lawful permanent residents," "non-immigrant visaholders," and "refugees seeking asylum"). And, in challenging the Old Executive Order's refugee provisions, Plaintiffs attacked the instruction to prioritize religious-persecution claims of refugees that practice minority religions. Pls.' Appellate Br. at 20; *see id*. at 18 ("The Order's refugee provisions explicitly distinguish between members of religious faiths," "favor[ing] Christian refugees at the expense of Muslims."); *see also Washington*, 847 F.3d at 1167-68 (noting that Plaintiffs' challenge to "sections 5(b) and 5(e) of the [Old Executive] Order," which related to prioritizing religious-persecution claims of refugees that practice minority religions, "present[ed] significant constitutional questions").

Responding to the Ninth Circuit's invitation to "rewrite the Executive Order" to "make appropriate distinctions," *id*. at 1167—and at the joint urging of the Attorney General and Secretary of Homeland Security[1]—the President issued the New Executive Order. The New Executive Order contains substantially revised policies that address all of the claims Plaintiffs raised in support of their motion for a temporary restraining order, as well as the concerns expressed by the Ninth Circuit. The New Executive Order's 90-day suspension of entry does not apply to individuals whose alleged due process rights Plaintiffs previously asserted: lawful permanent residents, visaholders, and foreign nationals who are in the United States on the effective date of the New Executive Order. Order § 3(a)-(b). And the New Executive Order makes clear that it does not "limit the ability of an individual to seek asylum." *Id*. § 12(e). The New Executive Order also omits the refugee-related provisions of the Old Executive Order that

---

[1] Joint Ltr. to President (Mar. 6, 2017), https://www.dhs.gov/sites/default/files/publications/17_0306_S1_DHS-DOJ-POTUS-letter_0.pdf.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 8
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

Plaintiffs claimed were problematic. The New Executive Order does not contain a Syria-specific refugee provision, and it no longer instructs agencies to prioritize the religious-persecution claims of refugees practicing minority religions.[2]

Plaintiffs attempt to make much of the Ninth Circuit's statement that Plaintiffs "have *potential* claims regarding *possible* due process rights of . . . [visa] applicants who have a relationship with a U.S. resident or an institution that might have rights of its own to assert." Pls.' Mot. at 8-9 (emphasis added). Even assuming United States residents or institutions had due process rights in another's visa application, *but see Kerry v. Din*, 135 S. Ct. 2128, 2131 (2015) (plurality opinion) ("There is no such constitutional right."); *Santos v. Lynch,* 2016 WL 3549366, at *3-4 (E.D. Cal. June 29, 2016) (refusing to extend *Din* to relationship between parent and adult child); *L.H. v. Kerry,* No. 14-06212, slip op. at 3-4 (C.D. Cal. Jan. 26, 2017) (same for daughter, son-in-law, and grandson), the New Executive Order addresses this concern by providing a waiver process that is more robust and specific than that provided in the Old Executive Order, that is integrated into the visa application process, and that provides whatever process is due, *see* Order § 3(c).

The New Executive Order specifies that consular officers (and the U.S. Customs and Border Protection Commissioner) may grant case-by-case waivers where denying entry "would cause undue hardship" and "entry would not pose a threat to national security and would be in the national interest." *Id*. To guide consular officers' exercise of discretion, the New Executive Order provides a nonexhaustive list of circumstances where a waiver could be considered. *Id*.

---

[2] The New Executive Order contains additional substantive changes as well. Among other things, it removes Iraq from the list of countries whose nationals are covered by the 90-day suspension on entry, and it provides a detailed explanation of the risks it seeks to address. *See generally* Defs.' Notice of Filing of Executive Order, ECF No. 108.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 9
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

This list expands significantly on the Old Executive Order's waiver provisions. Finally, the New Executive Order makes clear that requests for waivers will be processed "as part of the visa issuance process," *id.*, such that "[a]n individual who wishes to apply for a waiver should apply for a visa and disclose during the visa interview any information that might qualify the individual for a waiver," U.S. Dep't of State, Executive Order on Visas (Mar. 6, 2017), https://travel.state.gov/content/travel/en/news/important-announcement.html.

Thus, contrary to Plaintiffs' assertion, the waiver provisions in the New Order are not "materially identical" to those in the Old Executive Order. Pls.' Mot. at 10. Indeed, the changes made in the New Executive Order eliminate the only potential shortcomings the Ninth Circuit identified in the Old Executive Order's waiver provisions. *See Washington*, 847 F.3d at 1169 (stating that the government had not explained how those provisions "would function in practice," including "who would make th[e] determination, and when"). And the new waiver provisions provide more than ample process for the "*potential* claims regarding *possible* due process rights of . . . [visa] applicants" about whom Plaintiffs have expressed concern—*i.e.*, those with a "relationship with a U.S. resident or an institution." *Washington*, 847 F.3d at 1166 (emphasis added); *see also* Pls. Mot. at 7.

In short, the policy changes in the New Executive Order are far from "minor." Pls.' Mot. at 8. They instead reflect substantial modifications that address *all* of the particular challenges Plaintiffs brought when seeking expedited relief against the Old Executive Order. *Cf. White v. Lee*, 227 F.3d 1214, 1243 (9th Cir. 2000) (holding that prior claim for injunctive relief was moot once defendant agency issued a new policy that "addresses all of the objectionable measures that [government] officials took against the plaintiffs in this case"). At the very least, the New Executive Order's revisions reflect that "the law has been 'sufficiently altered so as to present a

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 10
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

substantially different controversy from the one the District Court originally decided[.]'" *Helliker*, 463 F.3d at 875. This Court's injunction, therefore, does not prevent Defendants from enforcing the New Executive Order beginning on its effective date.

## IV. THE NEW EXECUTIVE ORDER IS LAWFUL.

In any event, the Court's injunction should not be extended to the New Executive Order because the New Executive Order is entirely lawful.

First, the New Executive Order does not violate the Due Process Clause. The only persons subject to the New Executive Order are foreign nationals outside the United States with no visa or other authorization to enter this country. Order § 3(a)-(b). The Supreme Court "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon*, 459 U.S. at 32; *see Mandel*, 408 U.S. at 762. Such aliens thus have no due-process rights regarding their potential entry. *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) (as amended).

As explained above, the Ninth Circuit noted that U.S. citizens who have an interest in the ability of aliens about to enter the United States have "*potential* claims regarding *possible* due process rights." *Washington*, 847 F.3d at 1166 (emphasis added). Even if the Due Process Clause applied to such persons, however, their claims would fail. Due process does not require notice or individualized hearings where, as here, the government acts through categorical judgments rather than individual adjudications. *See Bi Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 446 (1915); *Yassini v. Crosland*, 618 F.2d 1356, 1363 (9th Cir. 1980). Furthermore, even if some individualized process were required, the New Executive Order's substantially revised waiver provisions provide more process than the Constitution may require and is similar to the process provided in *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972).

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 11
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

Second, the New Executive Order does not discriminate on the basis of religion. As noted above, the only provision of the Old Executive Order that Plaintiffs challenged on religious discrimination grounds (*i.e.*, the instruction to prioritize religious-persecution claims of refugees that practice minority religions) has been removed. And, even if Plaintiffs raise a different or broader challenge to the New Executive Order, *see* ECF No. 118, it would fail. The New Executive Order does not convey any religious message; indeed, it does not reference religion at all. The New Executive Order's 120-day suspension of certain aspects of the Refugee Program applies to all refugees, and its 90-day suspension of entry applies to six countries that Congress and the prior Administration determined posed special risks to the United States. *See* Order §§ 2, 3, 6. Importantly, the provisions apply to all refugees and nationals of the relevant countries, regardless of their religion. *See id.*

Although the populations of the six countries to which the suspension of entry applies are majority Muslim, that fact does not establish that the suspension's object is to single out Islam. The six countries covered were previously selected by Congress and the Executive through a process that Plaintiffs have never contended was religiously motivated. In addition, those countries represent only a small fraction of the world's 50 Muslim-majority nations, and are home to less than 9% of the global Muslim population.[3] Even as to these individuals, the suspension has numerous exceptions and is subject to a comprehensive waiver provision. Finally, the suspension covers every national of those countries, including millions of non-Muslim individuals in those countries, if they meet the New Executive Order's criteria.

---

[3] *See* Pew-Templeton Global Religious Futures Project, Muslim Population by Country (2010), http://www.globalreligiousfutures.org/religions/muslims.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 12
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

Plaintiffs try to impugn the New Executive Order using campaign statements. *See* ECF No. 118-1, ¶¶ 141-153. But the Supreme Court has made clear that official action like that challenged here must be adjudged by its "'text, legislative history, and implementation of the statute or comparable official act[ion],'" not through "judicial psychoanalysis of a drafter's heart of hearts." *McCreary Cty. v. ACLU of Ky.*, 545 U.S. 844, 862 (2005) (quoting *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000)). Political candidates are not government actors, and statements of what they might attempt to achieve if elected, which are often simplified and imprecise, are not "official act[s]." *Id*.

In any event, even if such extrinsic evidence could be considered, none of it demonstrates that *this* New Executive Order—adopted after the President took office, and specifically addressing the concerns of the Ninth Circuit—was driven by religious animus. The New Executive Order responds to concerns about the Old Executive Order's aims by removing the provisions that purportedly drew religious distinctions—erasing any doubt that national security, not religion, is the focus. The New Executive Order also reflects the considered views of the Secretary of State, the Secretary of Homeland Security, and the Attorney General, who announced the New Executive Order and whose motives have not been impugned. Finally, it responds to the concerns expressed by the Judicial Branch in the Ninth Circuit ruling. In short, the President's efforts to accommodate courts' concerns while simultaneously fulfilling his constitutional duty to protect the Nation only confirms that the New Executive Order's intention most emphatically is not to discriminate along religious lines.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' emergency motion to enforce the preliminary injunction.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 13
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

| | |
|---|---|
| DATED: March 14, 2017 | Respectfully submitted, |
| | CHAD A. READLER<br>Acting Assistant Attorney General |
| | JENNIFER D. RICKETTS<br>Director, Federal Programs Branch |
| | JOHN R. TYLER<br>Assistant Director, Federal Programs Branch |
| | */s/ Michelle R. Bennett*<br>MICHELLE R. BENNETT<br>DANIEL SCHWEI<br>ARJUN GARG<br>BRAD P. ROSENBERG<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>20 Massachusetts Avenue, NW<br>Washington, DC 20530<br>Tel: (202) 305-8902<br>Fax: (202) 616-8470<br>Email: michelle.bennett@usdoj.gov<br>         arjun.garg@usdoj.gov |
| | *Attorneys for Defendants* |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION TO ENFORCE PRELIMIINARY INJUNCTION - 14
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2017, I electronically filed the foregoing Opposition to Plaintiffs' Emergency Motion to Enforce Preliminary Injunction using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

Dated: March 14, 2017             */s/ Michelle R. Bennett*
                                  MICHELLE R. BENNETT

DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ENFORCE PRELIMIINARY INJUNCTION
*State of Washington, et al. v. Trump, et al.*, No. 2:17-cv-00141 (JLR)

**U.S. DEPARTMENT OF JUSTICE**
**Civil Division, Federal Programs Branch**
**20 Massachusetts Ave., NW**
**Washington, DC 20530**
**Tel: (202) 305-8902**