1                                      THE HONORABLE JAMES L. ROBART

2

3

4

5

6

7                         **UNITED STATES DISTRICT COURT**
                **WESTERN DISTRICT OF WASHINGTON**

8

9   STATE OF WASHINGTON and
   STATE OF MINNESOTA,

10               Plaintiffs,

11          v.

12  DONALD TRUMP, in his official
   capacity as President of the United
13  States; U.S. DEPARTMENT OF
   HOMELAND SECURITY; JOHN
14  F. KELLY, in his official capacity as
   Secretary of the Department of
15  Homeland Security; REX W.
   TILLERSON, in his official capacity
16  as Secretary of State; and the
   UNITED STATES OF AMERICA,

17              Defendants.

18  —————————————————

19  STATE OF OREGON,

20            Intervenor-Plaintiff,

21          v.

22  DONALD TRUMP, et al.,

23           Intervenor-Defendants.

24

25

26

Civil Action No. 2:17-cv-00141-JLR

EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER

Motion Noted: March 15, 2017

Oral Argument Requested

EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER

# I.    INTRODUCTION

Washington, Oregon, and other States are faced with very real, very imminent harms if Executive Order 13780 is allowed to take effect as scheduled at midnight tonight. In the event the Court declines to grant or rule on the pending Emergency Motion to Enforce Preliminary Injunction before midnight, ECF 119, the States ask in the alternative that the Court grant a temporary restraining order against enforcement of Sections 2(c) and 6(a) of Executive Order 13780. To avoid any prejudice to Defendants, the States present no new substantive arguments in this motion, instead joining in full the arguments for emergency relief advanced by the plaintiffs in *Ali v. Trump*, No. 2:17-cv-135-JLR (W.D. Wash.), the related case in which Defendants have had an opportunity to respond in writing and this Court has scheduled a hearing at 2:00pm today. The States brief here only why the States have standing and will suffer irreparable injury absent a TRO.

# II.    RELEVANT PROCEDURAL HISTORY

On February 3, this Court enjoined portions of Executive Order 13769 that banned travel from seven Muslim-majority countries and suspended the U.S. Refugee Program. ECF 52 at 5-6. President Trump then issued Executive Order 13780, which bans travel from six Muslim-majority countries and again suspends the U.S. Refugee Admissions Program. ECF 108-1 §§ 2(c); 6(a). Washington filed a motion to enforce the February 3 injunction to block enforcement of two provisions of Executive Order 13780. ECF 119. That motion is pending. Also pending is a motion to amend the complaint to allow the states of California, Maryland, Massachusetts, and New York to become plaintiffs. ECF 118. This Court has already granted the State of Oregon's Motion to Intervene. ECF 112.[1]

---

[1] Because the Court has not yet ruled on the States' pending motion to amend their complaint, the States here rely in the body of their brief only on harms to the States currently admitted and proceeding as Plaintiffs: Washington and Oregon. But the States ask that before ruling on this motion, the Court grant the States' motion to amend to add the other plaintiff States; Defendants can show no prejudice from amending the complaint prior to their filing a responsive pleading, as detailed in the  motion to amend. ECF 118. Even if the Court does not rule immediately on the motion to amend, the States submit that the serious, immediate harms evidenced by the states of California, Maryland, Massachusetts, and New York are part of the record and properly considered for

1

This alternative motion requests temporary relief in the event the Court denies the motion to enforce the injunction or intends to defer a ruling until after 12:01am EDT on March 16. The relief requested here is for no more than 14 days until the Court may rule on a motion for a preliminary injunction. See Fed. R. Civ. P. 65(b). Pursuant to Local Civil Rule 65(b)(1), Washington notified Defendants of its intent to file this motion and Defendants stated that they oppose the motion. Decl. of N. Purcell ¶ 3.[2]

## III.   ARGUMENT

### A.   Standard for Relief and Scope of Argument

Temporary relief preserves the status quo. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). To obtain a temporary restraining order, the States must establish 1) a likelihood of success on the merits, 2) that irreparable harm is likely in the absence of preliminary relief, and 3) that the balance of equities and public interest favor injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.SS. 7, 20 (2008); Fed. R. Civ. P. 65(b). That standard is met. To avoid overburdening the Court or prejudicing Defendants, the States join the arguments of the plaintiffs in *Ali v. Trump* as to the balance of equities and public interest and likelihood of success on the merits, briefing here only the States' standing (as it relates to likelihood of success) and irreparable injuries.

### B.   The States Have Standing to Challenge Executive Order 13780 and Will Suffer Irreparable Injuries if it Takes Effect

This Court and the Ninth Circuit previously concluded that the States had standing to challenge Executive Order 13769 and that the Order would cause the States irreparable injury. The reasoning of those opinions, applied to the evidence and allegations the States have presented here, demonstrate that the States have standing to challenge Executive Order 13780

---

purposes of temporary relief. See ECF 118-4 to 118-50 (evidence of harm to residents, educational institutions, businesses, state economies, health care, and religious organizations). In an abundance of caution and for clarity, the States have cited harms alleged by these States only in the footnotes in this brief.

[2] Defendants provide the following contact information for purposes of Local Civil Rule 65(b)(1): Michelle Bennett, (202) 305-8902, Michelle.Bennett@usdoj.gov.

and that it will cause them irreparable injury. This conclusion is especially clear given the standard applied at this early stage of the case. *See, e.g.*, *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) ("At this very preliminary stage of the litigation, the States may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their TRO motion to meet their burden."); *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).

In granting the States' prior request for emergency relief, this Court held that: "Executive Order [13769] adversely affects the States' residents in areas of employment, education, business, family relations, and freedom to travel. These harms extend to the States by virtue of their roles as *parens patriae* of the residents living within their borders. In addition, the States themselves are harmed by virtue of the damage that implementation of the Executive Order has inflicted upon the operations and missions of their public universities and other institutions of higher learning, as well as injury to the States' operations, tax bases, and public funds." ECF 52 at 4-5.

The Ninth Circuit also found that the States had standing, though it focused solely on proprietary standing and saw no need to reach the States' *parens patriae* standing. The Ninth Circuit "conclude[d] that the States have alleged harms to their proprietary interests traceable to the Executive Order." *Washington v. Trump*, 847 F.3d 1151, 1161 (9th Cir. 2017). "The necessary connection can be drawn in at most two logical steps: (1) the Executive Order prevents nationals of seven countries from entering [the States]; (2) as a result, some of these people will not enter state universities, some will not join those universities as faculty, some will be prevented from performing research, and some will not be permitted to return if they leave." *Id.*

The harms that prompted this Court and the Ninth Circuit to find State standing to challenge Executive Order 13769 all remain as to Executive Order 13780. Specifically, it is undisputed that "the Executive Order prevents nationals of [six] countries from entering [the

EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER

3

States].ʺ *Id.* And the States have alleged and offered extensive evidence that Executive Order 13780 will thereby prevent the States from enrolling promising students in their public universities (costing the States lost tuition dollars) and from hiring promising faculty and staff, and will prevent some already enrolled students and already employed faculty from traveling for research or to visit family. *See, e.g.*, ECF 118-17 (2d Decl. of R. Branon) ¶¶ 7-10, 14 (explaining that at least five students from the listed countries have been admitted to the UW Continuum College for spring or summer quarter and have not yet received visas; UW will lose the fees these students have paid to attend); ECF 118-19 (Decl. of D. Eaton) ¶¶ 3-4 (explaining that UW's Graduate School has received 374 applications for upcoming spring, summer, and fall academic quarters from students from the six listed countries, and that UW is concerned about offering admission to students who will be unable to come, thus leaving spots unfilled or filled with less talented applicants); ECF 118-18 (4th Decl. of A. Chaudhry) ¶¶ 5-7, 9-11 (similar concerns for WSU and explaining that WSU has 157 students currently enrolled from the listed countries, many of whom are on single-entry visas and thus will be unable to leave the country for research, work, or personal reasons under Executive Order 13780); ECF 118-25 (3d Decl. of J. Riedinger) ¶ 3 (citing specific examples of faculty and staff UW has hired who will be unable to come because they or their families will be unable to obtain visas); ECF 118-26 (Decl. of V. Shah) ¶¶ 5-7 (explaining that many students and employees at UW from the six countries are on single entry visas and will be unable to travel for research, work, or to visit family); ECF 101 (Decl. of M. Everett) (detailing similar harms in Oregon).[3] The States' colleges and universities are thus losing money, talented students, and talented staff, establishing clear proprietary standing under the Ninth Circuit's prior holding.

---

[3] *See also* ECF 118-22 (Decl. of R. Lewin) ¶¶ 4-8, 10-11; ECF 118-5 (Decl. of S. Amin) ¶¶ 4-8; ECF 118-21 (Decl. of S. Hemmati) ¶¶ 2-8; ECF 118-24 (Decl. of V. Rabinowitz) ¶¶ 10-22; ECF 118-30 (Decl. of N. Zimpher) ¶¶ 8-14; ECF 18-20 (Decl. of D. Heatwole) ¶¶ 7, 9-15, 17-19; D. Mass. ECF 52-2, *Louhghalam v. Trump*, Case No. 17.cv-101154-NMG (D. Mass.) (Decl.of M. Collins) ¶¶ 6-10.

The States' proprietary injuries extend beyond just their institutions of higher education. For example, the States will lose substantial tax revenue if travelers from the banned countries cannot visit. *See* ECF 118-39 (Decl. of D. Soike) ¶ 11 (in 2016, more than 6,000 passengers traveled between Washington and the six banned countries); ECF 17-1 (Decl. of K. Oline) ¶¶ 3-7 (in 2015, travelers from the Middle East spent $96 million in Washington, generating more than $9 million in state and local tax revenue); ECF 118-1 (2d Am. Compl.) ¶ 125 (Oregon received 670,000 international travelers in 2016).[4] *See also City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir. 2004) (holding that lost property and sales tax revenues established standing); *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992) (direct injury to state from loss of specified tax revenues adequate to establish proprietary standing).

The States also have *parens patriae* standing to challenge Executive Order 13780. The Executive Order is preventing many State residents—including U.S. citizens—from reuniting with immediate family members, including their spouses and children. *See, e.g.*, ECF 118-15 (Decl. of A. Shayegan) ¶¶ 2-12 (Washington resident, a U.S. citizen, is separated from new wife and elderly parents who live in Iran and are awaiting green cards); ECF 118-13 (Decl. of S. Parsian) ¶¶ 4-11 (Washington resident, a dual U.S./Iranian citizen, is separated from elderly parents who live in Iran and are awaiting green card for father); ECF 118-6 (Decl. of B. Callaghan) ¶¶ 3-7 (Washington resident is separated from parents and sister who live in Iran and are awaiting green cards and visa); ECF 118-14 (Decl. of Z. Rasouli) ¶¶ 2, 7-8 (Washington resident, a lawful permanent resident, is separated from sister who is waiting for visa); ECF 118-9 (Decl. of N. Fallah) ¶ 11 (Washington resident, a U.S. citizen, is separated from mother-in-law who lives in Iran and does not have visa); ECF 118-10 (Decl. of H.

---

[4] *See also* ECF 118-1 (2d Amend. Compl.) ¶¶ 63-64 (in 2015, California received 286,000 visitors from the Middle East who spent approximately $681,000,000, including $49,372,500 in tax revenue); *id.* ¶ 66 (tourism is particularly critical to the economy of California, supporting more than 500,000 jobs in Los Angeles alone); ECF 118-34 (Decl. of A. Lavine) ¶ 17 (would-be foreign tourists have canceled plans to attend events in New York because of executive orders).

EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER

5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Ghasemzadeh) Ex. A (several students at Washington State University on single-entry visas and separated from families).[5] It is difficult to imagine more tangible, immediate harms.

Executive Order 13780 will also harm State residents by threatening the jobs of many who work for nonprofit religious organizations that help refugees and by harming the financial wellbeing of nonprofits and businesses. *See, e.g.*, ECF 118-49 (Decl. of D. Duea) ¶ 9 (Lutheran Community Services Northwest will be forced to terminate half of its refugee assistance staff if refugee resettlement is halted for 120 days); ECF 97 (Decl. of H. Kenyon) ¶¶ 7-8 (Ecumenical Ministries of Oregon will lose funding and have to terminate entire refugee resettlement staff); ECF 102 (Decl. of R. Birkel) ¶¶ 5-8 (Catholic Charities of Oregon will lose $310,000 of government funding during the 120 day period and may terminate seven employees); ECF 118-37 (Decl. of M. Saunders) (describing harms to Washington business Redfin).[6] Executive Order 13780 will also harm State residents' access to health care and public health, especially in already underserved areas, by preventing recruitment of medical professionals from the banned countries. *See, e.g.*, ECF 118-32 (Decl. of R. Fullerton) ¶¶ 5-7, 14-19; ECF 100 (Decl. of M. Overbeck) ¶¶ 3-7; ECF 118-1 (2d Amend. Compl.) ¶¶ 60-61.[7]

In short, the States have demonstrated a substantial likelihood of success in establishing standing, thus satisfying their standing burden at this stage of the case. *See, e.g.*, *Washington*, 847 F.3d at 1159; *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

Just as this Court and the Ninth Circuit found standing based on the States' harms under Executive Order 13769, both courts likewise found irreparable injury on the same grounds. ECF 52 at 4-5; *Washington*, 847 F.3d at 1169 (describing the States' harms as "substantial injuries and even irreparable harms"). The Court should do the same here.

---

[5] *See also, e.g.*, ECF 118-8 (Decl. of A. Elfgeeh) ¶¶ 1, 4-9 (New York resident, a U.S. citizen, is separated from his wife and four children who are stranded in Yemen).

[6] *See also* ECF 118-50 (Decl. of L. Warren) ¶¶ 17-18 (Catholic Family Center of Rochester, New York, may have to terminate employees); ECF 118-36 (Decl. of M. Rosenn) (harms to NY business Kickstarter); ECF 118-41 (Decl. of J. Truppman) (harms to NY business Casper Sleep, Inc.).

[7] *See also* ECF 118-43 (Decl. of M. Akhtari) ¶¶ 13, 16-17.

1    As detailed above, Executive Order 13780 will prevent State residents from seeing their

2    families, will prevent students and faculty at state universities from traveling for research or to

3    visit family, will prevent state colleges and universities from enrolling talented students or

4    hiring qualified faculty and staff, and will cause nonprofits and businesses in the States to lose

5    funds they will be unable to recover. These are all irreparable injuries. *Washington*, 847 F.3d at

6    1169. Of course, Executive order 13780 also violates the Constitution, including the

7    Establishment Clause, which independently suffices to show irreparable harm. *See, e.g.*,

8    *Washington*, 847 F.3d at 1169 ("'It is well established that the deprivation of constitutional

9    rights unquestionably constitutes irreparable injury.'") (quoting *Melendres v. Arpaio*, 695 F.3d

10   990, 1002 (9th Cir. 2012)); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303

11   (D.C. Cir. 2006) (if a movant demonstrates a likelihood of success on an Establishment Clause

12   claim, "this is sufficient, without more, to satisfy the irreparable harm prong"); *Farris v.

13   Seabrook*, 677 F.3d 858, 868 (9th Cir. 2012) (adopting same rule for First Amendment claims

14   generally).

## IV.    CONCLUSION

16   Because of the grave harms the States and their residents will begin suffering at

17   midnight tonight if Executive Order 13780 takes effect, the States ask that if this Court is going

18   to deny or postpone ruling on the pending motion to enforce the injunction, it grant this motion

19   for temporary restraining order.

20   RESPECTFULLY SUBMITTED this 15th day of March 2017.

22   ROBERT W. FERGUSON
     Washington Attorney General

24    *s/ Robert W. Ferguson*
     ROBERT W. FERGUSON, WSBA #26004

25   NOAH G. PURCELL, WSBA #43492
     Solicitor General

EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER

7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

COLLEEN M. MELODY, WSBA #42275
Civil Rights Unit Chief

2

3

ANNE E. EGELER, WSBA #20258
Deputy Solicitor General

4

MARSHA CHIEN, WSBA #47020
PATRICIO A. MARQUEZ, WSBA #47693
Assistant Attorneys General

5

6

Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744
Noahp@atg.wa.gov

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER

8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

## CERTIFICATE OF SERVICE

2        I hereby certify that the foregoing document was electronically filed with the United

3  States District Court using the CM/ECF system. I certify that all participants in the case are

4  registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5  system.

6

7  March 15, 2017                          s/ Noah G. Purcell
                                     NOAH G. PURCELL, WSBA 43492

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EMERGENCY MOTION FOR TEMPORARY
RESTRAINING ORDER

9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744