UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, et al.,<br><br>                    Plaintiffs,<br>      v.<br><br>DONALD J. TRUMP, et al.,<br><br>                    Defendants. | CASE NO. C17-0141JLR<br><br>ORDER DENYING WASHINGTON'S EMERGENCY MOTION TO ENFORCE THE PRELIMINARY INJUNCTION |

## I.      INTRODUCTION

Before the court is Plaintiff State of Washington's ("Washington") emergency motion to enforce the court's February 3, 2017, preliminary injunction.[1]  (*See* Em. Mot. (Dkt. # 119); *see also* Order (Dkt. # 52).)  Defendants oppose the motion.  (Resp. (Dkt. # 146).)  The court has considered the filings of the parties, the relevant portions of the

---

[1] The State of Minnesota did not join in Washington's motion (*see* Em. Mot. at 15 (signed only by counsel for Washington).)  Indeed, Minnesota is no longer a party to this lawsuit. (*See* 2d Am. Compl. (Dkt. # 152) ¶¶ 8-135.)

record, and the applicable law.  In addition, the court has received a number of motions

for leave to file amicus curiae briefs both in support of and in opposition to Plaintiffs'

motion.  (*See* Dkt. ## 125, 127, 139, 144, 145, 147.)  The court hereby grants those

motions and has considered the amicus curiae briefs as well.[2]  Being fully advised,[3] the

court DENIES Washington's emergency motion.

## II.     BACKGROUND

On January 27, 2017, President Donald J. Trump signed Executive Order 13,769

("EO1"), entitled "Protecting the Nation from Foreign Terrorist Entry into the United

States."  82 Fed. Reg. 8977 (Feb. 1, 2017).   EO1 directed a series of changes to the

manner in which certain non-citizens may seek and obtain entry to the United States.  *See*

*generally id.*  Section 3(c) of EO1 proclaimed that the entry of immigrants and

nonimmigrants from countries referred to in Section 217(a)(12) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1187(a)(12), (i.e., Iran, Iraq, Libya, Somalia, Sudan,

Syria, and Yemen) "would be detrimental to the interests of the United States."  (EO1

§ 3(c).)  EO1 "suspend[ed] entry into the United States, as immigrants and

nonimmigrants, of such persons for 90 days from the date of this order."  (*Id.*)  Sections

5(a)-(b) of EO1 suspended the U.S. Refugee Admissions Program in its entirety for 120

days and then directed the Secretary of State to prioritize refugees who claim religious-

---

[2] The court denies Victor Williams's motion for leave to file an amicus curiae brief because the motion is unsigned (*see* Williams Mot. (Dkt. # 156) at 7) and also appears to be filed in violation of the court's order regarding the filing of amicus curiae briefs (A.M. Order (Dkt. # 84)).

[3] Plaintiffs requested oral argument (Em. Mot. at 1), but the court does not consider oral argument necessary for its disposition of this motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1    based persecution when the program resumed, "provided that the religion of the

2    individual is a minority religion in the individual's country of nationality." (*Id.* § 5(a)-

3    (b).)  Section 5(c) of EO1 proclaimed that entry of Syrian refugees is "detrimental to the

4    interests of the United States" and suspended their entry indefinitely. (*Id.* § 5(c).)

5         On January 27, 2017, Department of State ("DOS") Deputy Assistant Secretary,

6    Bureau of Consular Affairs, issued a cable stating that, upon the request of the

7    Department of Homeland Security and pursuant to EO1, he was "provisionally revoking"

8    all valid immigrant and nonimmigrant visas of nationals from the seven targeted

9    countries, with limited exceptions. (*See* 2d Am. Compl. ¶ 161, Ex. 18 (attaching cable).)

10   Also on that day, U.S. Department of State and some U.S. embassies and consulates

11   abroad posted notices advising that immigrant visa applications and visa issuance had

12   been suspended and visa interviews were cancelled. (*See id.* ¶ 162, Exs. 19, 20.)

13        EO1 went into effect as soon as President Trump signed it, and its impact "was

14   immediate and widespread." *Washington v. Trump*, 847 F.3d 1151, 1157 (9th Cir. 2017).

15   "It was reported that thousands of visas were immediately canceled, hundreds of

16   travelers with such visas were prevented from boarding airplanes bound for the United

17   States or denied entry on arrival, and some travelers were detained." *Id.*

18        On January 30, 2017, Washington filed this lawsuit challenging Sections 3(c),

19   5(a)-(c), and 5(e) of EO1. (*See generally* Compl. (Dkt. # 1).)  Washington asked the

20   court to declare these provisions of EO1 unconstitutional and to enjoin their enforcement

21   nationwide. (TRO Mot. (Dkt. # 3); Am. TRO Mot. (Dkt. # 19).)  On February 1, 2017,

22   the State of Minnesota joined Washington's suit and its request for a temporary

ORDER - 3

1   restraining order.  (*See* Am. Compl.; Am. TRO Mot.)  On February 3, 2017, the court

2   granted the States' motion and enjoined enforcement of Sections 3(c), 5(a)-(c), and 5(e)

3   of EO1 nationwide.  (*See* Order.)  On February 7, 2017, the court issued a briefing

4   schedule concerning Plaintiffs' motion for a preliminary injunction.  (PI Sched. Order

5   (Dkt. # 57).)

6          Defendants immediately appealed the court's temporary restraining order.  (Notice

7   of Appeal (Dkt. # 53).)  On appeal, the Ninth Circuit denied Defendants' motion for an

8   emergency stay of this court's temporary restraining order.  *See Washington*, 847 F.3d at

9   1169.  In so ruling, however, the Ninth Circuit interpreted the court's temporary

10  restraining order as "possess[ing] the qualities of an appealable preliminary injunction."

11  *Id.* at 1158.  Accordingly, the court vacated the briefing schedule on Plaintiffs' motion

12  for a preliminary injunction because the Ninth Circuit had interpreted this court's order as

13  already granting Plaintiffs preliminary injunctive relief.  (*See* 2/14/17 Order (Dkt. # 78).)

14         On March 6, 2017, Defendants filed a notice informing the court that President

15  Trump had signed a new Executive Order, also entitled "Protecting the Nation from

16  Foreign Terrorist Entry into the United States" ("EO2"), and that EO2 revoked EO1.

17  (Notice (Dkt. # 108).)  Defendants also informed the court that they intended to begin

18  enforcing EO2 on its March 16, 2017, effective date.[4]  (*Id*. at 1, 13.)

19

20

---

21         [4] Defendants also withdrew their appeal of the court's preliminary injunction with respect
    to EO1.  (*See* 3/8/17 Order of USCA (Dkt. # 111); *see also* 3/15/17 Order of USCA (Dkt. # 151)
22  (denying vacatur of the Ninth Circuit's previous order denying a stay of this court's preliminary
    injunction).)

1    There are notable distinctions between EO1 and EO2.  Unlike EO1, EO2 did not

2    go into immediate effect.  Although President Trump signed EO2 on March 6, 2017, EO2

3    states that it becomes effective at 12:01 a.m., eastern daylight, time, on March 16, 2017.

4    *See* EO2 § 14.  Whereas Section 3(c) of EO1 suspended entry into the United States for

5    90 days for nationals from seven Muslim-majority countries, Section 2(c) of EO2

6    contains the same ban found in Section 3(c) of EO1, with the exception of nationals from

7    Iraq.  *Compare* EO1 § 3(c), *with* EO2 § 2(c).  Although Section 6(a) of EO2 contains

8    substantially the same 120-day suspension of the U.S. Refugee Admissions Program as

9    Section 5(a) of EO1, unlike EO1, EO2 eliminates the indefinite suspension of refugees

10   from Syria that was in EO1 and contains no preference for religious-persecution claims

11   of religious minorities.  *Compare* EO1 §§ 5(b), 5(c), 5(e), *with generally* EO2.

12   In addition to these substantive distinctions, the scope of EO2's application is

13   narrower than EO1.  Unlike EO1, EO2 expressly does not apply to lawful permanent

14   residents of the United States, to foreign nationals who are admitted or paroled into the

15   United States on or after the effective date of this order, dual nationals of one of the

16   six-designated countries listed under Section 2 of EO2, any foreign nationals traveling on

17   a diplomatic visa, foreign nationals who have been granted asylum, refugees who have

18   already been admitted into the United States, and other individuals who have been

19   granted withholding from removal, advance parole, or protection under the Convention

20   Against Torture.  *See* EO2 § 3(b).  Further, EO2 also does not "limit the ability of an

21   individual to seek asylum."  *Id.* § 12(e).

22

1    EO2 also offers a rationale for its implementation that is distinct from the rationale

2    offered in EO1.  Whereas EO1 largely relied upon the specter of the tragic events

3    surrounding September 11, 2001, to justify its implementation, EO2 offers a specific

4    analysis of the conditions in each of the six-listed countries.  *See id.* § 1(e).

5        Although the States filed responses to Defendants' notice concerning EO2 on

6    March 9, 2017, (Wash. Resp. (Dkt. # 113); Minn. Resp. (Dkt. # 114)), Washington did

7    not file its emergency motion to enforce the court's preliminary injunction against certain

8    provisions contained in EO2 until March 13, 2017 (*see* Em. Mot.).  In it motion,

9    Washington contends that Sections 2(c) and 6(a) of EO2 call for conduct that the court

10   enjoined in Sections 3(c) and 5(a) of EO1, and that this court should therefore extend its

11   existing preliminary injunction to Sections 2(c) and 6(a) of EO2.  (*See generally id.*)

12   Defendants oppose Washington's motion.  (Resp. (Dkt. # 146).)  Defendants argue that

13   EO2 is substantially different from EO1 and addresses all of the claims Plaintiffs raised

14   in support of their original motion a temporary restraining order.  (*See generally id.*)  The

15   court now addresses Washington's motion.

16                        **III.    ANALYSIS**

17       Washington asserts that EO2 seeks to reinstate two policies that the court already

18   enjoined, and that Defendants are attempting to evade "the district court's power to

19   enforce its injunction through procedural mechanisms designed to insulate [their] actions

20   from review."  (Em. Mot. at 6 (citing cases).)  Washington asserts that the court's

21   preliminary injunction operates against actions and policies, "not against numbers on a

22

1    page." (*Id.* at 8.)  Washington argues that Defendants cannot dodge the court's injunction

2    "by renumbering the policy enjoined." (*Id.*)

3        The court understands Washington's position and also endeavors to zealously

4    protect its own authority.  Nevertheless, in this instance, the court agrees with Defendants

5    that the court's preliminary injunction should not automatically extend to EO2.  First,

6    Defendants are correct that the court's preliminary injunction expressly applies only to

7    EO1.  (*See* Order at 2.)  The court granted the States' motion and largely adopted the

8    operative language in its preliminary injunction from the States' proposed order.

9    (*Compare* Order at 5-6 *with* Plf. Prop. Order  (Dkt. # 3-1) at 3.)  That language

10   specifically enjoined Defendants from "[e]nforcing" specifically listed sections contained

11   in EO1.  (*See* Order at 5 (enjoining the enforcement of Sections 3(c), 5(a), 5(b), 5(c), and

12   5(e)).  The court also specifically enjoined was "any action that prioritizes the refugee

13   claims of certain religious minorities." *Id.*  However, EO2 eliminates EO1's preference

14   for religious minorities.  Thus, the only relevant portions of the court's preliminary

15   injunction prohibit Defendants from enacting provisions of EO1, but do not prohibit

16   actions taken pursuant to other sources of authority.

17       Obviously, Defendants could not simply reissue EO1 under a new name and

18   number and implement it without violating the court's preliminary injunction.  But that is

19   not what they did here.  The court agrees with Defendants that the Ninth Circuit

20   implicitly invited Defendants to attempt to "rewrite" EO1 "to make appropriate

21   distinctions" and "eliminate constitutional defects." *See Washington*, 847 F.3d at 1167

22   (citing *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 479 (1995)).  The

1   court makes no ruling as to whether Defendants accomplished that goal; the court only

2   notes that this apparent effort resulted in substantial distinctions between EO1 and EO2

3   both in the manner in which EO2 is implemented and the rational EO2 gives for its

4   implementation.

5          The court agrees with Defendants that the limited scope of the court's prior

6   injunction does not carry over to EO2.  (*See* Resp. at 5 (citing *Fusari v. Steinberg*, 419

7   U.S. 379 (1975); *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc*., 404 U.S. 412

8   (1972)).)  The court cannot conclude that the policy changes in EO2 are minor or that

9   EO2 represents nothing more than a "renumbering" of policies that the court has already

10  enjoined.  Accordingly, the court declines to apply its preliminary injunction concerning

11  EO1 to provisions contained in EO2.

12         The court does not say, however, that Plaintiffs are not entitled to a temporary

13  restraining order or preliminary injunction with respect to certain aspects of EO2.  The

14  court makes no ruling on that issue, and notes that Plaintiffs have now filed a motion for

15  a temporary restraining order with respect to EO2.  (2d TRO Mot. (Dkt. # 148).)  That

16  motion is currently pending before the court, and the court will issue a separate order

17  with respect to that motion.  For now, the court only denies Washington's motion to

18  apply the court's existing preliminary injunction to Sections 2(c) and 6(a) of EO2.

19                          **IV.    CONCLUSION**

20         Based on the foregoing analysis, the court DENIES Washington's emergency

21  motion to enforce the court's preliminary injunction concerning EO1 against Sections

22  2(c) and 6(a) of EO2 (Dkt. # 119).  In addition, the court GRANTS the various motions

to file amicus curiae briefs (Dkt. ## 125, 127, 139, 144, 145, 147), but DENIES one such

motion (Dkt. # 156) for the reasons stated in footnote one of this order.

      Dated this 16th day of March, 2017.

JAMES L. ROBART
United States District Judge