UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

              Plaintiff,

   v.

DONALD J. TRUMP, et al.,

              Defendant.

CASE NO. C17-0141JLR

ORDER STAYING PLAINTIFFS'
MOTION FOR A TEMPORARY
RESTRAINING ORDER

Before the court is Plaintiffs' motion for a temporary restraining order ("TRO").[1]
(TRO Mot. (Dkt. # 148).)  Plaintiffs seek an injunction of certain provisions Executive
Order No. 13,780, entitled "Protecting the Nation from Foreign Terrorist Entry into the
United States" ("EO2").  (*See id.*)  Specifically, Plaintiffs seek to enjoin those provisions
of EO2 that suspend (1) entry into the United States for a minimum of 90 days for

---

[1] Plaintiffs include the following states:  Washington, Oregon, California, Maryland, and
New York.  (SAC (Dkt. # 152) ¶¶ 8-88, 102-135.)  In addition, the Commonwealth of
Massachusetts is also a plaintiff.  (*Id.* ¶¶ 89-101.)  Minnesota is no longer a plaintiff to this
lawsuit.  (*Compare* FAC (Dkt. # 18), *with* SAC.)

1    nationals of Iran, Libya, Somalia, Sudan, Syria, and Yemen, and (2) the United States'

2    Refugee Admissions Program.  (*See id.* at 1 (asking for a TRO against enforcement of

3    Sections 2(c) and 6(a) of EO2).)  Defendants have not yet filed a response to Plaintiffs'

4    motion.[2]  (*See generally* Dkt.)  On March 15, 2017, the court conducted a hearing during

5    which the court granted Plaintiffs' motion to file a second amended complaint (Dkt.

6    # 118) and heard from counsel concerning the scheduling of Defendants' response to

7    Plaintiffs' TRO motion.  (3/15/17 Min. Entry (Dkt. # 150).)

8         Immediately following the March 15, 2017, hearing, the court learned that the

9    United States District Court for the District of Hawai'i entered a temporary restraining

10   order in *Hawai'i v. Trump*, No. 17-00050 DKW-KSC (D. Haw.), restraining similar

11   federal defendants from enforcing Sections 2 and 6 of EO2.  *See id.*, Dkt. # 219.  In

12   addition, on March 16, 2017, the United States District Court for the District of Maryland

13   entered a preliminary injunction in *International Refugee Assistance Project v. Trump*,

14   No. 8:170cv-00361-TDC (D. Md.), enjoining similar federal defendants from enforcing

15   Section 2(c) of EO2.  *See id.*, Dkt. ## 149-50.

16        The court has considered Plaintiffs' motion, the relevant portions of the record,

17   and the applicable law.  In addition, the court has considered the recent developments in

18

19   ───────────────

20   [2] Defendants are President Donald J. Trump, Secretary of State Rex W. Tillerson, the United States Department of Homeland Security ("DHS"), Secretary of DHS John F. Kelly, United States Customs and Border Protection ("CBP"), and the United States of America, including all government agencies and departments responsible for the implementation of the Immigration and Naturalization Act ("INA") and for the admission, detention, removal of non-citizens who are traveling to or returning to the States via air, land, and sea port across the United States.  (SAC ¶¶ 136-40.)

1   the District Courts of Hawai'i and Maryland.  Being fully advised, the court stays

2   Plaintiffs' TRO motion as discussed below.

3                              **II.  BACKGROUND**

4          This lawsuit arises out of President Donald J. Trump's recent execution of two

5   Executive Orders regarding immigration.  Indeed, numerous suits involving the

6   President's Executive Orders have been filed around the country, and the progression of

7   those suits has become intertwined.

8          On January 27, 2017, President Trump signed Executive Order 13,769,

9   "Protecting the Nation from Foreign Terrorist Entry into the United States," 82 Fed. Reg.

10  8977 (Feb. 1, 2017) ("EO1").  EO1 directed a series of changes to the manner in which

11  non-citizens may seek and obtain entry to the United States.  (*See generally id.*)  Section

12  3(c) of EO1 proclaimed that the continued entry of immigrants and nonimmigrants from

13  countries referred to in Section 217(a)(12) of the Immigration and Nationality Act

14  ("INA"), 8 U.S.C. § 1187(a)(12) (i.e., Iran, Iraq, Libya, Somalia, Sudan, Syria, and

15  Yemen) "would be detrimental to the interests of the United States."  EO1 § 3(c).  EO1

16  "suspend[ed] entry into the United States, as immigrants and nonimmigrants, of such

17  persons for 90 days from the date of th[e] order."  *Id.*  Sections 5(a)-(b) of EO1

18  suspended the United States Refugee Admissions Program in its entirety for 120 days and

19  then directed the Secretary of State to prioritize refugees who claim religious-based

20  persecution when the program resumed, "provided that the religion of the individual is a

21  minority religion in the individual's country of nationality."  *Id.* §§ 5(a)-(b).  Section 5(c)

22  //

1  of EO1 proclaimed that entry of Syrian refugees is "detrimental to the interests of the

2  United States" and suspended their entry indefinitely.  *Id.* § 5(c).

3         On January 27, 2017, the Department of State ("DOS") Deputy Assistant

4  Secretary, Bureau of Consular Affairs, issued a cable stating that, upon the request of the

5  DHS and pursuant to EO1, he was "provisionally revoking" all valid immigrant and

6  nonimmigrant visas of nationals from the seven targeted countries, with limited

7  exceptions.  (*See* SAC ¶ 161, Ex. 18 (attaching cable).)  Also on that day, the DOS and

8  some U.S. embassies and consulates abroad posted notices advising that immigrant visa

9  applications and visa issuance had been suspended and visa interviews were cancelled.

10  (*See id.* ¶ 162, Exs. 19, 20.)

11        EO1 went into effect as soon as President Trump signed it, and its impact was

12  "immediate and widespread."  *Washington v. Trump*, 847 F.3d 1151, 1157 (9th Cir.

13  2017).  "It was reported that thousands of visas were immediately canceled, hundreds of

14  travelers with such visas were prevented from boarding airplanes bound for the United

15  States or denied entry on arrival, and some travelers were detained."  *Id.*

16        On January 30, 2017, Washington filed this lawsuit challenging Sections 3(c),

17  5(a)-(c), and 5(e) of EO1.  (*See generally* Compl. (Dkt. # 1).)  Washington asked the

18  court to declare these provisions of EO1 unconstitutional and to enjoin their enforcement

19  nationwide.  (TRO Mot. (Dkt. # 3); Am. TRO Mot. (Dkt. # 19).)  On February 1, 2017,

20  the State of Minnesota joined Washington's suit and its request for a temporary

21  restraining order.  (*See* Am. Compl.; Am. TRO Mot.)  On February 3, 2017, the court

22  //

ORDER - 4

1  granted the States' motion and enjoined enforcement of Sections 3(c), 5(a)-(c), and 5(e)

2  of EO1 nationwide.  (*See* Order.)

3        On February 4, 2017, Defendants appealed the TRO to the Ninth Circuit, and

4  moved to stay this court's order.  *Id.*, Dkt. # 53.  The Ninth Circuit construed this court's

5  TRO as a preliminary injunction and declined to stay the preliminary injunction pending

6  Defendants' appeal of the order in the Ninth Circuit.  *See Washington*, 847 F.3d at 1158,

7  1169.  On February 9, 2017, the federal district court in Hawaiʻi stayed proceedings in

8  *Hawaiʻi v. Trump* while this court's preliminary injunction of EO1 remained in place and

9  pending resolution of the appeal in  *Washington v. Trump*.  *See Hawaiʻi v. Trump*, Dkt. #

10 32.

11       On March 6, 2017, President Trump issued EO2, which expressly revokes EO1.

12 *See* EO2 § 13.  In addition, Defendants withdrew their appeal of this court's injunction

13 with respect to EO1.  *See Washington v. Trump*, Dkt. # 111 (Ninth Circuit order granting

14 the defendants' unopposed motion to voluntarily dismiss appeal).  Whereas EO1

15 suspended the entry into the United States of nationals from seven predominantly Muslim

16 countries, EO2 omits Iraq, but continues to suspend the entry of nationals from Iran,

17 Libya, Somalia, Sudan, Syria, and Yemen.  *Compare* EO2 § 2(c), *with* EO1 § 3(c).  In

18 addition, EO2 continues the 120-day suspension of the United States Refugee

19 Admissions Program, but eliminates the indefinite suspension of the program for Syrian

20 nationals.  *Compare* EO2 § 6(a), *with* EO1 §§ 5(a)-(c).

21       Meanwhile, the federal district court in Hawaiʻi lifted its stay, and the plaintiffs in

22 that action filed (1) an amended complaint adding allegations concerning EO2, and (2) a

1   TRO motion seeking to enjoin certain aspects of EO2.  *Hawai'i v. Trump*, Dkt. ## 59-1,

2   60-1, 64, 65.  The federal district court in Hawai'i enjoined the enforcement of Sections 2

3   and 6 of EO2 on March 15, 2017—shortly after this court conducted its hearing

4   concerning Plaintiffs' TRO motion concerning EO2.  *See id.* Dkt. ## 219, 220.  On

5   March 16, 2017, the federal district court in Maryland followed the federal district court

6   in Hawai'i with its own order enjoining Section 2(c) of EO2.  *See International Refugee*

7   *Assistance Project v. Trump*, Dkt. ## 149-50.

8          On March 15, 2017, shortly after the federal district court in Hawai'i entered its

9   order, President Trump vowed in public remarks to appeal the Hawai'i federal district

10  court's order "as far as it needs to go, including all the way up to the Supreme Court."

11  Donald J. Trump, Remarks by the President at Make America Great Again Rally (Mar.

12  15, 2017), https://www.whitehouse.gov/the-press-office/2017/03/15/remarks-president-

13  make-america-great-again-rally (last visited Mar. 17, 2017).  In addition, on March 16,

14  2017, the President's Press Secretary, Sean Spicer, stated that the President intends to

15  appeal the rulings in *Hawai'i v. Trump* and *International Refugee Assistance Program v.*

16  *Trump* soon.  Press Briefing by Press Secretary Sean Spicer, 3/16/17, # 25 (Mar. 16,

17  2017), https://www.whitehouse.gov/the-press-office/2017/03/16/press-briefing-press-

18  secretary-sean-spicer-3162017-25 (last visited Mar. 17, 2017).

19         This court now finds itself in virtually the same position as the federal distirct

20  court in Hawai'i when that court stayed proceedings while this court's preliminary

21  injunction concerning EO1 was on appeal in the Ninth Circuit.  Accordingly, the court

22  *sua sponte* considers whether to stay Plaintiffs' pending TRO motion so long as the

ORDER - 6

nationwide TRO entered in *Hawai'i v. Trump* or a preliminary injunction of equal scope

remains in effect.

### III.  ANALYSIS

#### A.  The Court's Authority to Issue a Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court

to control disposition of the cases on its docket with economy of time and effort for itself,

for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "The

exertion of this power calls for the exercise of sound discretion."  *CMAX, Inc. v. Hall*,

300 F.2d 265, 268 (9th Cir. 1962); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The

District Court has broad discretion to stay proceedings as an incident to its power to

control its own docket."); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005)

(citing *Landis*, 299 U.S. at 255, for the same).  Courts have the power to consider stays

*sua sponte*.  *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Kama*, No. 14-00137 ACK-KSC,

2016 WL 922780, at *8-9 (D. Haw. Mar. 9, 2016) (ordering a stay, *sua sponte*, of the

proceedings pending resolution of related cases before the Ninth Circuit because

resolution of those cases "w[ould] likely involve an analysis of" obscure issues, thereby

"provid[ing] further guidance" to the court with respect to the case in question); *see also*

*S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (noting that the district court can

enter an order staying discovery *sua sponte*).

The issues involved in the pending proceedings need not be "controlling of the

action before the court" for the court to issue a stay.  *Leyva*, 593 F.2d at 864.  Indeed,

where a stay is considered pending the resolution of another action, the court need not

1    find that two cases involve identical issues; a finding that the issues are substantially

2    similar is sufficient to support a stay.  *See Landis*, 299 U.S. at 254.

3    **B.  The Factors the Court Considers**

4          In determining whether to grant a motion to stay, "the competing interests which

5    will be affected by the granting or refusal to grant a stay must be weighed."  *Lockyer*, 398

6    F.3d  at 1110 (citing *CMAX*, 300 F.2d at 268).  Those interests include:  (1) "the possible

7    damage which may result from the granting of a stay," (2) "the hardship or inequity

8    which a party may suffer in being required to go forward," and (3) "the orderly course of

9    justice measured in terms of the simplifying or complicating of issues, proof, and

10   questions of law which could be expected to result from a stay."  *Id*.  Here, the court finds

11   that these factors weigh in favor of staying the resolution of Plaintiffs' TRO motion so

12   long as the nationwide TRO entered in *Hawai'i v. Trump* or a preliminary injunction of

13   equal scope remains in effect.

14   **1.  Possible Damage Resulting from a Stay**

15         Ordinarily, Plaintiffs would oppose a stay under these circumstances, and so the

16   court considers any damage that may result to Plaintiffs if the court imposes a stay.  *See*

17   *Lockyer,* 389 F.3d at 1110.  In light of the state of the proceedings in the federal district

18   court in Hawai'i, the court finds that any prejudice caused by a delay in the court's

19   resolution of Plaintiffs' motion will be minimal—if there is any at all.  The federal

20   district court of Hawai'i's nationwide injunction already provides Plaintiffs the relief they

21   seek in their TRO motion.  *See Hawai'i v. Trump*, Dkt. ## 219, 220.  Accordingly,

22   Plaintiffs will not suffer the type of damage described in *Landis.* 299 U.S. at 255.

1    Further, if circumstances change, such as lifting the TRO or narrowing the scope of the

2    TRO or a subsequent preliminary injunction, Plaintiffs can seek to lift the stay.  Based on

3    the speed with which the Ninth Circuit proceeded in the previous appeal in this case, the

4    court also does not anticipate that a stay will last long.  If, however, this assumption

5    proves wrong, and the delay causes harm, then again Plaintiffs can seek to lift the stay.

6        **2.    Possible Hardship or Inequity Resulting from Going Forward**

7            Ordinarily Defendants would benefit from a stay under these circumstances, and

8    so the court considers any hardship or inequity that might result to them from going

9    forward.  *See Lockyer*, 398 F.3d at 1110.  Here, there is little possibility of hardship or

10   inequity for Defendants if the court were to require them to go forward.  Defendants

11   would be required to respond to Plaintiffs' motion, but "being required to defend a suit,

12   without more, does not constitute a clear case of hardship or inequity" for purposes of a

13   stay.  *Lockyer*, 398 F.3d at 1112 (internal quotations omitted).  Thus, the court considers

14   this factor to be primarily neutral.  However, "hardship or inequity may result to both

15   parties if the [c]ourt does not pause to consider issues . . . [that will be on appeal in the

16   Ninth Circuit] because of the potential for inconsistent rulings and resulting confusion to

17   law enforcement agencies and the public."  *Hawai'i v. Trump*, No.

18   CV 17-00050 DKW-KJM, 2017 WL 536826, at *3 (D. Haw. Feb. 9, 2017).  Thus, in

19   these circumstances, this factor is either primarily neutral or tips somewhat in favor of the

20   stay.

21   //

22   //

ORDER - 9

### 3.   The Orderly Course of Justice

Last, the court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay." *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254–55). Given the significant overlap of issues between this case and *Hawai'i v. Trump*, granting the stay of Plaintiffs' TRO motion while the nationwide injunction remains in place in the court in Hawai'i and pending the outcome of appellate proceedings in that case would facilitate the orderly course of justice.  Thus, the Ninth Circuit's rulings on EO2 in *Hawai'i v. Trump* will have likely have significant relevance to—and potentially control—the court's subsequent ruling here.

The Ninth Circuit's opinion in this case does not obviate the benefit of waiting for further rulings in *Hawai'i v. Trump*.  The issues involved in *Hawai'i v. Trump* are related to issues in *Washington v. Trump*, but they are not identical.  As this court has previously found, there are significant differences between the provisions, scope, and articulated purposes of EO1 and EO2.  (*See* 3/16/17 Order (Dkt. # 163) at 5-6.)  The Ninth Circuit's ruling on Defendants' motion to stay the court's preliminary injunction with respect to EO1 does not preordain how the Ninth Circuit will rule in *Hawai'i v. Trump* with respect to EO2.  Further, because Defendants dismissed their appeal of the court's preliminary injunction on EO1 (*see* 3/8/16 Order of USCA (Dkt. # 111)), all of the Ninth Circuit's rulings arose in the context of Defendants' motion to stay this court's preliminary injunction.  *See Washington*, 847 F.3d at 1156.  The Ninth Circuit never ruled on the direct appeal of the preliminary injunction.

1    Because many of the legal arguments Plaintiffs raise in their TRO motion are

2    likely to be before the Ninth Circuit in *Hawai'i v. Trump*, the court finds that it would

3    waste judicial resources to decide these issues here when guidance from the Ninth Circuit

4    is likely to be available soon.  The more efficient course is to wait for a decision from the

5    Ninth Circuit in *Hawai'i v. Trump*, which may resolve the primary issues.  *See, e.g.*,

6    *Landis*, 299 U.S. at 256 (explaining that even if a decision of the pending case "may not

7    settle every question of fact and law" in suits in other states, "in all likelihood it will

8    settle many and simplify them all.").  The court can then resolve any remaining issues in

9    this case with the benefit of the Ninth Circuit's analysis.

10    Finally, as the Hawai'i federal district court noted when it earlier stayed its

11    proceedings, granting a stay will "also reduce the risk of inconsistent rulings that the

12    appellate courts might then need to disentangle."  *Hawai'i*, 2017 WL 536826, at *5.

13    "[W]here significant litigation is likely to take place during the pendency of an appeal,"

14    granting a stay is a "means of conserving judicial resources."  *Id.*  Considerable judicial

15    resources may be wasted "if the appellate court's controlling decision changes the

16    applicable law or the relevant landscape of facts that need to be developed."  *Id.*

17    **4.  Summary of the Factors**

18    The court's evaluation of the relevant factors weighs in favor of imposing a

19    limited stay of these proceedings.  Accordingly, the court, in its discretion, will stay its

20    consideration of Plaintiffs' TRO motion.  The court, however, does not stay any other

21    aspect of this litigation.  The stay on Plaintiffs' TRO motion will remain in place so long

22    as the nationwide TRO or a preliminary injunction of identical scope remains in place in

1   *Hawai'i v. Trump.*  This stay will permit the court to conserve its resources and to benefit

2   from any Ninth Circuit rulings in *Hawai'i v. Trump* regarding EO2.  Further, "[t]he risk

3   of inconsistent rulings and duplicative litigation" warrants the imposition of the limited

4   stay here, "particularly where  . . . there is an absence of significant harm [or hardship]

5   from granting a stay." *Hawai'i*, 2017 WL 536826, at *5.

6               **IV.    CONCLUSION**

7       Based on the foregoing analysis, the court hereby STAYS its determination of

8   Plaintiffs' TRO motion (Dkt. # 148).  The court DIRECTS the Clerk to remove this

9   motion from its calendar.  Should circumstances change such that lifting the stay is

10  warranted, either party may move to lift the stay.  If the stay is lifted, the court will then

11  rule on Plaintiffs' TRO motion, if appropriate, as soon as practicable.

12      Dated this 17th day of March, 2017.

13

14

15                          JAMES L. ROBART
                            United States District Judge

16

17

18

19

20

21

22

ORDER - 12