1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  STATE OF WASHINGTON, et al.,                   CASE NO. C17-0141JLR

11                              Plaintiffs,        ORDER STAYING DECISION OF
                                                   PLAINTIFFS' THIRD MOTION
            v.                                     FOR A TEMPORARY
12                                                 RESTRAINING ORDER
13  DONALD J. TRUMP, et al.,

14                              Defendants.

15                      **I.   INTRODUCTION**

16          Before the court are (1) Plaintiffs State of Washington, State of California, State of

17  Maryland, Commonwealth of Massachusetts, State of New York, and State of Oregon's

18  (collectively, "Plaintiff States") motion for a temporary restraining order ("TRO") (3d

19  TRO Mot. (Dkt. # 195)) prohibiting the enforcement of certain provisions of the

20  Presidential Proclamation entitled "Enhancing Vetting Capabilities and Processes for

21  Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety

22  Threats," 82 Fed. Reg. 45,161 (Sept. 27, 2017) ("EO3"); and (2) Plaintiff States' October

17, 2017, letter to the court (Letter (Dkt. # 200)) asking the court to rule on their motion for a TRO despite the entry of a worldwide TRO concerning EO3 by the federal district court for the District of Hawaii in *Hawaii v. Trump*, --- F. Supp. 3d ----, 2017 WL 4639560 (D. Haw. Oct. 17, 2017).  The court has considered Plaintiff States' motion for a TRO and their October 17, 2017, letter, Defendants Donald J. Trump, United States Department of Homeland Security, Elaine C. Duke, Rex Tillerson, and United States of America's (collectively, "Defendants") response to Plaintiff States' motion for a TRO (Resp. (Dkt. # 205)),[1] Plaintiff States' reply in support of their motion (Reply (Dkt. # 208)), the relevant portions of the record, and the applicable law.  Being fully advised, the court stays its consideration of Plaintiff States' TRO motion as described below.

## II.   BACKGROUND

Plaintiff States' lawsuit has now addressed two Executive Orders and one Presidential Proclamation concerning immigration.  (*See* Compl. (Dkt. # 1); FAC (Dkt. #18); SAC (Dkt. # 152); TAC (Dkt. # 198).)  The court briefly recounts the history of this suit before analyzing Plaintiff States' arguments.

On January 27, 2017, President Trump signed Executive Order 13,769, entitled "Protecting the Nation from Foreign Terrorist Entry into the United States," 82 Fed. Reg. 8977 (Feb. 1, 2017) ("EO1").  EO1 directed a series of changes to the manner in which non-citizens may seek and obtain entry to the United States.  (*See generally id.*)  Section 3(c) of EO1 proclaimed that the continued entry of immigrants and nonimmigrants from

---

[1] Defendants did not file a response to Plaintiff States' October 17, 2017, letter.  (*See generally* Dkt.)

1    countries referred to in Section 217(a)(12) of the Immigration and Nationality Act

2    ("INA"), 8 U.S.C. § 1187(a)(12) (i.e., Iran, Iraq, Libya, Somalia, Sudan, Syria, and

3    Yemen) "would be detrimental to the interests of the United States." EO1 § 3(c).  EO1

4    "suspend[ed] entry into the United States, as immigrants and nonimmigrants, of such

5    persons for 90 days from the date of th[e] order."  *Id.*  Sections 5(a)-(b) of EO1

6    suspended the United States Refugee Admissions Program in its entirety for 120 days and

7    then directed the Secretary of State to prioritize refugees who claim religious-based

8    persecution when the program resumed, "provided that the religion of the individual is a

9    minority religion in the individual's country of nationality."  *Id.* §§ 5(a)-(b).  Section 5(c)

10   of EO1 proclaimed that entry of Syrian refugees is "detrimental to the interests of the

11   United States" and suspended their entry indefinitely.  *Id.* § 5(c).

12        EO1 went into effect as soon as President Trump signed it, and its impact was

13   "immediate and widespread."  *Washington v. Trump*, 847 F.3d 1151, 1157 (9th Cir.

14   2017).  "It was reported that thousands of visas were immediately canceled, hundreds of

15   travelers with such visas were prevented from boarding airplanes bound for the United

16   States or denied entry on arrival, and some travelers were detained."  *Id.*

17        On January 30, 2017, the State of Washington filed this lawsuit challenging

18   Sections 3(c), 5(a)-(c), and 5(e) of EO1.[2]  (*See generally* Compl.)  Washington asked the

19   court to declare these provisions of EO1 unconstitutional and to enjoin their enforcement

20   nationwide.  (TRO Mot. (Dkt. # 3); Am. TRO Mot. (Dkt. # 19).)  On February 3, 2017,

21

22        [2] On February 1, 2017, the State of Minnesota joined Washington's suit and its request
     for a TRO.  (*See* FAC; Am. TRO Mot. (Dkt. # 19).)

ORDER - 3

1    the court granted the States' motion and enjoined enforcement of Sections 3(c), 5(a)-(c),

2    and 5(e) of EO1 nationwide.  (*See* TRO (Dkt. # 52).)

3          On February 4, 2017, Defendants appealed the TRO to the Ninth Circuit, and

4    moved to stay this court's order.  (Not. of App. (Dkt. # 53).)  The Ninth Circuit construed

5    this court's TRO as a preliminary injunction and declined to stay the preliminary

6    injunction pending Defendants' appeal of the order in the Ninth Circuit.  *See Washington*,

7    847 F.3d at 1158, 1169.  Meanwhile, a lawsuit challenging EO1 was also pending in the

8    federal district court for the District of Hawaii.  *See Hawaii v. Trump*, No. 1:17-00050

9    DKW-KSC (D. Haw.).  On February 9, 2017, the federal district court in Hawaii stayed

10   the proceedings in *Hawaii v. Trump* while this court's preliminary injunction of EO1

11   remained in place and pending resolution of the appeal in *Washington v. Trump*.  *See id.*,

12   Dkt. # 32.

13         On March 6, 2017, President Trump issued Executive Order No. 13,780, which

14   was also entitled "Protecting the Nation from Foreign Terrorist Entry into the United

15   States," 82 Fed. Reg. 13209 (Mar. 6, 2017) ("EO2"), and expressly revoked EO1.  *See*

16   EO2 § 13.  In addition, Defendants voluntarily dismissed their appeal of this court's

17   injunction with respect to EO1.  (*See* 9th Cir. Order (Dkt. # 111) (granting Defendants'

18   unopposed motion to voluntarily dismiss appeal).)  Thus, EO1 exited the stage as EO2

19   entered.  Whereas EO1 suspended the entry into the United States of nationals from

20   seven predominantly Muslim countries, EO2 omitted Iraq, but continued to suspend the

21   entry of nationals from Iran, Libya, Somalia, Sudan, Syria, and Yemen.  *Compare* EO2

22   § 2(c), *with* EO1 § 3(c).  In addition, EO2 continued the 120-day suspension of the

1   United States Refugee Admissions Program, but eliminated the indefinite suspension of

2   the program for Syrian nationals.  *Compare* EO2 § 6(a), *with* EO1 §§ 5(a)-(c).

3          Plaintiff States filed a motion to amend their complaint to add allegations

4   concerning EO2 (MFL SAC (Dkt. 118)), which the court granted on March 15, 2017

5   (Min. Entry (Dkt. # 150); *see also* SAC (Dkt. # 152)).[3]  Plaintiff States also filed a

6   motion for a TRO concerning certain provisions of EO2.  (2d TRO Mot. (Dkt. # 148).)

7          After the President executed EO2, the federal district court in Hawaii lifted its

8   stay, and the plaintiffs in that action also filed (1) an amended complaint adding

9   allegations concerning EO2, and (2) a TRO motion seeking to enjoin certain aspects of

10  EO2.  *Hawaii v. Trump*, No. 1:17-00050 DKW-KSC (D. Haw.), Dkt. ## 59-1, 60-1, 64,

11  65.  On March 15, 2017, shortly after this court conducted a hearing on Plaintiff States'

12  TRO motion concerning EO2 (*see* Dkt. # 150), the federal district court in Hawaii

13  enjoined the enforcement of Sections 2 and 6 of EO2, *Hawaii v. Trump*, 241 F. Supp. 3d

14  1119 (D. Haw. 2017).  On March 16, 2017, the federal district court in Maryland

15  followed the federal district court in Hawaii with its own order enjoining Section 2(c) of

16  EO2.  *See Int'l Refugee Assistance Project v. Trump*, 241 F. Supp. 3d 539, 544 (D. Md.),

17  *aff'd in part and vacated in part*, 857 F.3d 554 (4th Cir. 2017), *as amended* (May 31,

18  2017), *as amended* (June 15, 2017), *cert. granted*, 137 S. Ct. 2080 (2017), *and vacated*

19  *and remanded*, No. 16-1436, 2017 WL 4518553 (U.S. Oct. 10, 2017).

20

21          [3] The second amended complaint also eliminated the State of Minnesota as a plaintiff and
    added the State of California, the State of Maryland, the Commonwealth of Massachusetts, the
22  State of New York, and the State of Oregon as plaintiffs.  (*See* SAC.)

1    By virtue of the orders issued out of the federal district courts in Hawaii and

2 Maryland, Plaintiff States in this action were accorded all of the relief they requested.

3 Accordingly, on March 17, 2017, this court stayed its consideration of Plaintiff States'

4 motion for a TRO with respect to EO2 so long as the nationwide TRO issued by the

5 Hawaii court or a preliminary injunction of equal scope remained in place.  (*See* 3/17/17

6 Order (Dkt. # 164).)  The court later granted Defendants' motion to stay the entire

7 proceedings.  (*See* 5/17/17 Order (Dkt. # 189).)

8    The saga of EO2 is now complete.  The district court decisions out of Hawaii and

9 Maryland were ultimately appealed to their respective Courts of Appeal and then to the

10 United States Supreme Court.  Because the provisions of EO2 have expired by their own

11 terms, the Supreme Court earlier this month vacated the judgments in the lower courts

12 and remanded "with instructions to dismiss as moot the challenge[s] to [EO2]."  *See*

13 *Trump v. Hawaii*, --- U.S. ---, 2017 WL 4782860, at \*1 (Oct. 24, 2017); *Trump v. Int'l*

14 *Refugee Assistance Project*, --- U.S. ---, 2017 WL 4518553, at \*1 (Oct. 10, 2017).

15    On September 24, 2017, President Trump issued EO3.  EO3 indefinitely suspends

16 immigration from Chad, Iran, Libya, North Korea, Syria, Yemen, and Somalia.  EO3

17 §§ 2(a)-(e), (g)-(h).  EO3 also suspends entry by classes of non-immigrants like students,

18 businesspeople, and tourists from the foregoing listed countries.  *See id.*  In addition, EO3

19 restricts certain government officials and their families from Venezuela from obtaining

20

21

22

1  certain tourist visas, but does not restrict the issuance of immigrant visas to these

2  individuals.[4]  *Id.* § 2(f)(ii).

3      On October 11, 2017, Plaintiff States moved to lift the stay of these proceedings

4  and for leave to file a third amended complaint to address EO3.  (Mot. to Lift Stay (Dkt.

5  # 193); Mot. for TAC (Dkt. # 194).)  Plaintiff States also moved for entry of a TRO

6  prohibiting implementation of certain Sections of EO3.  (3d TRO Mot.)  On October 12,

7  2017, the court granted Plaintiff States' unopposed motions to lift the stay and file a third

8  amended complaint.  (10/12/17 Order (Dkt. # 197).)  The court also set a briefing

9  schedule for the TRO motion and a hearing on October 30, 2017.  (*Id.* at 5.)

10      On October 17, 2017, two other courts entered nationwide injunctions with respect

11  to portions of EO3.  In *Hawaii v. Trump*, --- F. Supp. 3d ----, 2017 WL 4639560, at * 17

12  (D. Haw. Oct. 17, 2017), the federal district court for the District of Hawaii entered a

13  TRO enjoining the federal government "fully from enforcing or implementing" Sections

14  2(a)-(c), 2(e), and 2(g)-(h) of EO3.  The court prohibited "[e]nforcement of these

15  provisions in all places, including the United States, at all United States borders and ports

16  of entry, and in the issuance of visas."  *Id.*  On October 20, 2017, the parties in that case

17  stipulated to the conversion of the court's TRO to a preliminary injunction.  *See Hawaii*

18  *v. Trump*, No. 1:17-cv-00050-DKW-KSC (D. Haw.) Dkt. # 389.  Later that day, the

19

20        [4] Section 1(g) of EO3, entitled "Policy and Purpose," states that the "Secretary of

21  Homeland Security recommends . . . that nationals of Iraq . . . be subject to additional scrutiny to
determine if they pose risks to the national security or public safety of the United States."  *See*
EO3 § 1(g).  Iraqi nationals, however, are not among those subject to any suspension or

22  limitations on entry.  *See id.* § 2.

Hawaii federal district court entered a preliminary injunction of equal scope to its TRO.
*See id.*, Dkt. # 390.  On October 24, 2017, the federal defendants in that suit appealed the
Hawaii federal district court's ruling to the Ninth Circuit Court of Appeals.  *See id.*, Dkt.
# 391 (notice of appeal); *see also Hawaii v. Trump*, No. 17-17168 (9th Cir.).

In *International Refugee Assistance Project v. Trump*, --- F. Supp. 3d ----, 2017
WL 4674314, at *41 (D. Md. Oct. 17, 2017), the federal district court for the District of
Maryland entered a preliminary injunction that is somewhat narrower than the Hawaii
federal district court's TRO.  The preliminary injunction issued by the Maryland federal
district court prohibits enforcement of the same Sections of EO3, except with regard to
"[i]ndividuals lacking a credible claim of a bona fide relationship with a person or entity
in the United States."  *Id.*  Like the Hawaii federal district court, the Maryland federal
district court issued the preliminary injunction on a worldwide basis, enjoining the
defendants at "all places, including the United States, at all United States borders and
ports of entry, and in the issuance of visas."  *Id.*  Both sides appealed the Maryland
federal district court's ruling to the Fourth Circuit Court of Appeals.  *See Int'l Refugee
Assistance Project v. Trump*, Nos. 17-2231 (L), 17-2232, 17-2233, 17-2240 (4th Cir.)
(consolidated appeals and cross-appeal).

On October 17, 2017, after the Hawaii federal district court issued its TRO,
Plaintiff States filed a letter in this matter asking the court to (1) maintain the October 30,
2017, hearing date and issue a ruling on their motion for a TRO even though the Hawaii
federal district court had issued a TRO earlier that day, and (2) treat their motion for a
TRO as a motion for a preliminary injunction.  (Letter at 1.)  Plaintiff States ask the court

1   to render a decision on their motion, despite the preliminary relief already entered by

2   other courts, "because of the huge number of people [Plaintiff] States represent who are

3   harmed by EO3 and the relevance of those harms to any appellate consideration of both

4   standing and injunctive relief factors as to EO3, including irreparable harm, the public

5   interest, and the balancing of the equities." (*Id.* at 2.)

6       Defendants did not file a separate response to Plaintiff States' letter. (*See*

7   *generally* Dkt.)  Defendants argue in their response to Plaintiff States' TRO motion,

8   however, that the court need not enter a ruling because "[t]he relevant provisions of

9   [EO3] have already been enjoined nationwide" by both the Hawaii and Maryland federal

10  district courts.  (Resp. at 2 (citing the court's March 17, 2017, order staying consideration

11  of Plaintiff States' TRO motion concerning EO2).)  In their reply memorandum, Plaintiff

12  States reiterate the arguments of their March 17, 2017, letter urging the court to rule on

13  their present TRO motion.  (Reply at 1-3.)

14          **III.   ANALYSIS**

15      The court is now confronted with a situation that is similar to the one it faced

16  following the execution of EO2.  Following the President's execution of EO2, Plaintiff

17  States asked the court to enjoin enforcement of certain provisions of EO2 that the Hawaii

18  federal district court had already enjoined.  (*See* 3/17/17 Order.)  In light of that

19  development, the court weighed the relevant factors, and stayed its consideration of the

20  Plaintiff States' motion for a TRO on EO2.  (*See id.*)  Despite strikingly similar

21  circumstances with the President's execution of EO3 and the Hawaii federal district

22  court's entry of a preliminary injunction concerning EO3, Plaintiff States ask the court

1    "to take a different approach this time." (Letter at 2; *see also* Reply at 3 ("[T]he Court

2    should decide the motion . . . [and] treat it as one for preliminary injunction.").)  For the

3    reasons stated below, the court declines to do so.

4          "[T]he power to stay proceedings is incidental to the power inherent in every court

5    to control the disposition of the causes on its docket with economy of time and effort for

6    itself, for counsel, and for litigants."  *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936).

7    "The exertion of this power calls for the exercise of sound discretion."  *CMAX, Inc. v.

8    Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Clinton v. Jones*, 520 U.S. 681, 706 (1997)

9    ("The District Court has broad discretion to stay proceedings as an incident to its power

10   to control its own docket."); *Lockyer v. Mirant Corp*., 398 F.3d 1098, 1109 (9th Cir.

11   2005) (citing *Landis*, 299 U.S. at 255, for the same).  Courts have the power to consider

12   such stays *sua sponte*.  *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Kama*, No. 14-00137

13   ACK-KSC, 2016 WL 922780, at *8-9 (D. Haw. Mar. 9, 2016) (ordering a stay, *sua*

14   *sponte*, of the proceedings pending resolution of related cases before the Ninth Circuit

15   because resolution of those cases "w[ould] likely involve an analysis of" obscure issues,

16   thereby "provid[ing] further guidance" to the court with respect to the case in question);

17   *see also S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (noting that the district court

18   can enter an order staying discovery *sua sponte*).

19         In determining whether to issue a stay, "the competing interests which will be

20   affected by the . . . stay must be weighed."  *Lockyer*, 398 F.3d at 1110 (citing *CMAX*, 300

21   F.2d at 268); *Landis*, 299 U.S. at 254-55 (stating that entering a stay "calls for the

22   exercise of judgment, which must weigh competing interests and maintain an even

ORDER - 10

1    balance").  Those interests include:  (1) "the possible damage which may result from the

2    granting of a stay," (2) "the hardship or inequity which a party may suffer in being

3    required to go forward," and (3) "the orderly course of justice measured in terms of the

4    simplifying or complicating of issues, proof, and questions of law which could be

5    expected to result from a stay."[5]  *Id*.  With regard to EO2, the court found that these

6    factors weighed in favor of staying resolution of Plaintiff States' TRO motion so long as

7    the nationwide TRO concerning EO2 entered by the Hawaii federal district court or a

8    preliminary injunction of equal scope remained in effect.  (3/17/17 Order at 8, 11-12.)

9    Once again, the court's evaluation of these factors favors staying its consideration of

10   Plaintiff States' TRO motion so long as the preliminary injunction issued by the Hawaii

11   federal district court remains in effect.

12   **A.    Possible Damage Resulting from a Stay**

13          Plaintiff States ask the court to consider their motion for a TRO despite the ruling

14   of the federal district court in Hawaii, and so the court considers any damage that may

15   result to Plaintiff States if the court imposes a stay.  *See Lockyer,* 389 F.3d at 1110.

16   Plaintiff States assert that the more than 120 declarations they have submitted should be

17

18          [5] Plaintiff States do not expressly address these factors in their October 17, 2017, letter to
     the court or in their reply memorandum.  (*See generally* Letter; *see also* Reply at 1-3.)  In their
19   reply memorandum, Plaintiff States assert that the court retains the power to enjoin Defendants'
     behavior "even if the conduct challenged has stopped."  (Reply at 3 (citing *SEC v. Mgmt.*
20   *Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975)).)  The relevant issue, however, is not whether
     the court retains the power to rule on their motion.  It undoubtedly does.  The relevant issue is
21   whether the court should exercise this power while the Hawaii preliminary injunction remains in
     place and pending resolution of the appeal in that case to the Ninth Circuit.  After due
     consideration of the *Lockyer* factors, the court concludes that staying its determination of
22   Plaintiff States' motion is the better course.  *See infra* §§ III.A.-C.

1  before the appellate courts as those courts consider EO3.  (Letter at 2.)  They argue that

2  the harms asserted in these declarations "are different in both degree and kind from the

3  harms presented in other cases" and should be "considered in any ultimate ruling on

4  justiciability, harms, equities, and public interest impacts of EO3."  (*Id.* at 3.)

5      The court is mindful of the evidence Plaintiff States submit in support of their

6  motion.  (*See, e.g.*, Dkt. ## 194-18 through 194-69, 202-2 through 202-15.)  Although

7  Plaintiff States filed an extraordinary amount of evidence in support of their motion, the

8  court disagrees that the evidence they submit is substantially different "in kind" from the

9  evidence relied upon by the federal district court in Hawaii.  (*See* Letter at 3.)  Indeed, the

10  plaintiff state in *Hawaii v. Trump* asserted standing based on both its proprietary interests

11  and its quasi-sovereign interests.  *Hawaii*, 2017 WL 4639560, at *4.  Although the

12  Hawaii federal district court did not reach the state's standing argument based on the

13  state's quasi-sovereign interests, the court did find that the state, as the operator of the

14  state university system, would suffer proprietary injuries stemming from EO3.  *Id.*  The

15  Hawaii court also found irreparable harm based on the "constraints to recruiting and

16  retaining students and faculty members to foster diversity and quality within the

17  University community."  *Id.* at 13.  These are similar to the types of harm Plaintiff States

18  assert here both with respect to standing[6] and irreparable harm.[7]

19

20      [6] (*See* 3d TRO Mot. at 5 ("The States can establish standing based on two independent
    grounds: (1) harms to the States' proprietary interests, and (2) harms to the States'
21    quasi-sovereign interests.").)

22      [7] (*See id.* at 20-23 (asserting irreparable harm based on loss of current and future students
    to state universities, along with associated tuition revenue, loss of faculty members, along with

ORDER - 12

1    In any event, if the rulings on appeal in the Hawaii and Maryland federal cases do

2    not favor Plaintiff States, and Plaintiff States believe that their circumstances are

3    somehow distinguishable from those rulings based on the myriad evidence they have

4    submitted, they may ask the court to lift the stay and rule on their motion at that time.

5    Further, Plaintiff States have the ability to file an amicus curiae brief in the appeal before

6    the Ninth Circuit or to seek intervention.  *See* Fed. R. App. P. 29(a)(2) ("[A] state may

7    file an amicus curiae brief without the consent of the parties or leave of court."); *Bates v.*

8    *Jones*, 127 F.3d 870, 873 (9th Cir. 1997) (holding that intervention on appeal is governed

9    by Federal Rule of Civil Procedure 24 and may be granted only for "imperative

10   reasons").  Thus, there are avenues for Plaintiff States to be heard during the *Hawaii v.*

11   *Trump* appeal even if the court stays consideration of their present TRO motion.

12       Beyond this specific issue, the court finds that any prejudice to Plaintiff States by

13   a delay in the court's resolution of their TRO motion on EO3 will be minimal.  Plaintiff

14   States asked the court to enjoin Sections 1(g) and 2 of EO3.  The Hawaii federal district

15   court enjoined the enforcement of Sections 2(a)-(c), 2(e), and 2(g)-(h) of EO3 worldwide.

16   *Hawaii*, 2017 WL 4639560, at *14.  Thus, the Hawaii federal district court's injunction

17   already provides Plaintiff States with virtually all the relief they seek in their TRO

18   motion.

19

20

21   associated research grants and injury to the universities' reputations and educational programs,
     the loss of employees to state businesses, loss of tourism revenue, and harm to the Plaintiff

22   States' health care systems through the loss of physicians and students in the Plaintiff States'
     medical schools).)

1        The absence of Sections 1(g), 2(d), and 2(f) from the Hawaii federal district

2    court's preliminary injunction does not alter the court's calculus concerning prejudice.

3    Section 1(g) states that "[t]he Secretary of Homeland Security recommends . . . that

4    nationals of Iraq who seek to enter the United States be subject to additional scrutiny to

5    determine if they pose risks to the national security or public safety of the United States."

6    EO3 § 1(g).  EO3, however, does not say how this "recommendation" will be

7    implemented, and in fact, Iraq is not among those countries for whom the President

8    ordered additional entry restrictions.  *See id.* § 2.  Sections 2(d) and 2(f) provide

9    additional entry restrictions on North Koreans and certain government officials from

10   Venezuela and their families.  *See id.* §§ 2(d) (North Korea), 2(f) (Venezuela).  Yet,

11   Plaintiff States admit that "[i]mmigration from North Korea to the United States is . . .

12   virtually nonexistent and is restricted by separate sanctions orders not challenged here"

13   and thus, Section 2(d) "affects a vanishingly small number of people." (3d TRO Mot. at

14   18, 3 n.2.)  Further, the restrictions on certain Venezuelan government officials and their

15   families apply only to certain tourist and business visas and not to immigrant visas.  (*Id.*

16   at 18.)  Indeed, "[t]he North Korea and Venezuela additions [to EO3] will affect

17   exceedingly few people."  (Joint Decl. of Former Nat'l Sec. Officials (Dkt. # 194-18)

18   ¶ 3.)  Thus, the court does not find the disparity between the Hawaii federal district

19   court's TRO and the injunctive relief Plaintiff States' request will cause undue prejudice

20   or any significant harm to Plaintiff States.  The court, therefore, concludes that this factor

21   weighs in favor of staying the court's consideration of Plaintiff States' TRO motion.

22

**B.   Possible Hardship or Inequity Resulting from Going Forward**

The court also considers any hardship or inequity that might result to Defendants from going forward with Plaintiff States' TRO motion.  *See Lockyer*, 398 F.3d at 1110. Just as in its previous order, the court concludes that there is little possibility of hardship if the court were to require Defendants to go forward with Plaintiff States' TRO motion. (*See* 3/17/17 Order at 9.)  Indeed, in this instance, Defendants have already responded to Plaintiff States' motion.  (*See* Resp.)  Yet, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity" for purposes of a stay.  *Lockyer*, 398 F.3d at 1112 (internal quotations omitted).  Thus, as it did before, the court considers this factor to be primarily neutral.  (*See* 3/17/17 Order at 9.)

Nevertheless, "hardship or inequity may result to both parties if the [c]ourt does not pause to consider issues . . . [that will be on appeal in the Ninth Circuit] because of the potential for inconsistent rulings and resulting confusion to law enforcement agencies and the public."  *Hawaii v. Trump*, No. CV 17-00050 DKW-KJM, 2017 WL 536826, at *3 (D. Haw. Feb. 9, 2017).  Thus, in these circumstances, hardship may yet result if the court moves forward.  Overall then, the court concludes that this factor is either primarily neutral or tips somewhat in favor of a stay.

**C.   The Orderly Course of Justice**

Finally, the court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay."  *CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254–55).  Just as the court concluded in its prior order concerning Plaintiff States' TRO motion on EO2,

1  staying Plaintiff States' TRO motion on EO3 pending the outcome of appellate

2  proceedings in the *Hawaii v. Trump* case will facilitate the orderly course of justice.  (*See*

3  3/17/17 Order at 10-11.)  The Ninth Circuit's rulings on EO3 in *Hawaii v. Trump* will

4  likely have significant relevance to—and potentially control—the court's subsequent

5  ruling here.  *See, e.g.*, *Landis*, 299 U.S. at 256 (explaining that even if a decision of the

6  pending case "may not settle every question of fact and law" in suits in other states, "in

7  all likelihood it will settle many and simplify them all.").  In addition, staying the court's

8  resolution of Plaintiff States' TRO motion will "also reduce the risk of inconsistent

9  rulings that the appellate courts might then need to disentangle." *Hawaii v. Trump*, 233

10  F. Supp. 3d 850, 856 (D. Haw. 2017).  Indeed, "[c]onsiderable resources necessary for

11  litigating the State's Motion for TRO may be wasted if the appellate court's controlling

12  decision changes the applicable law or the relevant landscape of facts that need to be

13  developed." *Id.*  Thus, the court concludes that this factor weighs heavily in favor of

14  staying the court's resolution of Plaintiff States' TRO motion.

15  **D.  Summary of the Factors**

16        The court's evaluation of the relevant factors weighs in favor of imposing a

17  limited stay of these proceedings.  Accordingly, the court, in its discretion, will stay its

18  consideration of Plaintiffs' TRO motion concerning EO3.  The stay on Plaintiffs' TRO

19  motion will remain in place so long as the preliminary injunction in *Hawaii v. Trump*

20  concerning EO3 or a preliminary injunction of identical or broader scope remains in

21  place.  This stay will permit the court to conserve its resources and to benefit from any

22  Ninth Circuit rulings regarding EO3.

1

### IV.   CONCLUSION

2    Based on the foregoing analysis, the court hereby STAYS its determination of

3    Plaintiff States' TRO motion (Dkt. # 195).  The court DIRECTS the Clerk to remove the

4    motion from its calendar.  Should circumstances change such that lifting the stay is

5    warranted, either party may so move.  If the stay is lifted, the court will then rule on

6    Plaintiff States' TRO motion, if appropriate, as soon as practicable.

7    Dated this 27th day of October, 2017.

8

9    _____

10   JAMES L. ROBART
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 17